## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARTISTIC INDUSTRIES, LLC, KNIGHT DISTRIBUTING CO., D/B/A REGENCY COSMETICS, LONGSTEM ORGANIZERS INC. and EZ-STEP MOBILITY, INC., individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>         v.<br><br>WALMART, INC., WAL-MART.COM USA, LLC,   and THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "1"<br><br>                    Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiffs Artistic Industries, LLC, Knight Distributing Co., d/b/a Regency Cosmetics, Longstem Organizers Inc. and EZ-Step Mobility, Inc., (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this class action complaint against the Defendants Walmart, Inc. and Wal-Mart.com USA, LLC (collectively "Walmart"), and the Fraudulent Sellers (defined herein), alleging the following based upon personal knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by Plaintiffs' counsel.

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................9

II.   PARTIES ................................................................18

      A.  Plaintiffs ................................................................18

      B.    Defendants ................................................................21

            1.   *Walmart Defendants* ................................................21

            2.   *17 Fraudulent Seller Defendants* ................................21

                 a.   The 2006 Rodman Road Fraudulent Seller Defendants....................23

                 b.   The 11172 Amarillo Street Fraudulent Seller Defendants................36

                 c.   The 3608 Meadowlark Street Fraudulent Seller Defendants ............42

                 d.   The 19919 Talbot Road Fraudulent Seller Defendants....................45

                 e.   U.S. Return Address Presently Unknown Fraudulent Seller
                      Defendants ................................................................45

            3.  *Does 7-24 Fraudulent Seller Defendants* ................................50

            4.  *Does 25-35 Conspiratorial Defendants* ................................51

III.  NON-PARTY PERSONS AND ENTITIES ASSOCIATED WITH THE
      FRAUDULENT SELLERS ................................................52

      A.    2006 Rodman Rd, Wilmington, DE 19805....................52

      B.    11172 Amarillo St, Rancho Cucamonga, CA 91701 ....................54

      C.    19919 Talbot Rd, Renton, WA 98055 ................................55

      D.    3608 Meadowlark St, El Monte, CA 91732 ................................55

      E.    Great E-World Trading Limited ................................................56

IV.   JURISDICTION AND VENUE ................................................56

2

V.    GLOSSARY OF TERMS ......................................................................58

VI.   FACTUAL ALLEGATIONS ...............................................................63

    1.    The Walmart Marketplace ........................................................63

        A.    Walmart's Need and Motivation to Compete in the Online
            Retail Space ...............................................................63

        B.    The Walmart Marketplace -- Walmart's Third-Party
            eCommerce Platform ...................................................65

        C.    How Did Walmart Fuel the Growth of the Walmart
            Marketplace?...............................................................68

    2.    Walmart's Public Representations About its Third-Party Sellers Are
        Belied By Walmart's Systemic Failures in the Onboarding Process ...........70

    3.    Walmart Realizes Significant Financial Benefits From The ORC ...............76

    4.    How The Fraudulent Sellers and Conspiratorial Defendants Use and
        Operate on Walmart Marketplace ...............................................79

        A.    The Fraudulent, Deceptive, and Anticompetitive Postings
            and Offers to Sell .......................................................80

        B.    Each Fraudulent Seller Lists Hundreds of Unrelated Products
            on Walmart Marketplace................................................84

        C.    The Fraudulent Sellers Frequently Alter Their Product Offerings
            and Rotate Active StoreFronts .........................................85

        D.    The Fraudulent Sellers Use Fake Brands and Product IDs
            on Walmart Marketplace................................................86

        E.    The Fraudulent Sellers Use Walmart's Buy Box to Perpetuate
            the ORC ...................................................................88

        F.    The Fraudulent Sellers Use Tracking Information to Perpetuate
            the ORC ...................................................................89

        G.    Legitimate Walmart Customers are Exploited by Defendants .........90

5.      The Fraudulent Amazon Orders...............................................................91

6.      The Fraudulent Refund Requests.............................................................92

7.      The Fraudulent Product Returns..............................................................97

8.      The Plaintiffs Established the ORC's Operation .........................................99

        A.      Plaintiff Artistic Industries' Test Purchases & Verified
                Fraud Orders ..............................................................................100

                1.      Fraudulent Seller StoreFront Named "onenbary".................100

                2.      Second Fraudulent Amazon Order Through Fraudulent
                        Seller StoreFront Named "onenbary" .....................................104

                3.      Fraudulent Seller StoreFront Named
                        guangzhounuoqikemaoyiyouxiangongsi...............................106

                4.      Fraudulent Seller StoreFront Named Pengxichengqikeji ......110

                5.      Fraudulent Seller StoreFront Named Windy Suk
                        Co. Ltd ...................................................................................113

                6.      Fraudulent Seller StoreFront Named Coey Trading
                        Co. ltd.....................................................................................116

                7.      Fraudulent Seller StoreFront Named Joyfulmart.................119

                8.      Fraudulent Seller StoreFront Named Weilashi  ...................121

                9.      Fraudulent Seller StoreFront Named shengyang Zhou..........123

                10.     Fraudulent Seller StoreFront Named Judy OTTO ................126

                11.     Second Fraudulent Amazon Order Through Fraudulent
                        Seller StoreFront Named EasyHousewares ..........................130

B.    Plaintiff Regency Cosmetics' Unauthorized Product Listings,
      Fraudulent Refund Requests & Test Purchases ..............................133

      1.    The Unauthorized Product Listings ......................................133

      2.    The Fraudulent Refund Requests...........................................135

      3.    The Test Purchases ............................................................140

            (a)    Fraudulent Seller StoreFront Named Whimsy
                   Whirligig.......................................................................140

            (b)    Fraudulent Seller StoreFront Named
                   "xiangpiaopiaodedian"...................................................142

            (c)    Fraudulent Seller StoreFront Named
                   "LuckyJiang" .................................................................146

      4.    The Fraudulent Paid Returns ...............................................149


C.    Plaintiff Longstem Organizers' Unauthorized Product Listing,
      Fraudulent Refund Requests & Test Purchases ................................151

      1.    The Unauthorized Product Listings ......................................151

      2.    The Fraudulent Refund Requests...........................................154

      3.    The Test Purchases ............................................................156

            (a)    Fraudulent Seller StoreFront Named
                   Jinanhengyuanshangmao  ..........................................156

            (b)    Fraudulent Seller StoreFront Named
                   The Tech Loft ...........................................................158

            (c)    Fraudulent Seller StoreFront Named
                   XUNJie Jidian Co. Ltd..............................................159

      D.     Plaintiff EZ-Step Mobility, Inc.'s Unauthorized Product
Listings & Fraudulent Refund Requests ............................................161

           1.     The Unauthorized Product Listings ......................................161

           2.     The Fraudulent Refund Requests............................................162

9.     Other Amazon Merchants Confirm the ORC and Walmart's
Refusal to Take Necessary Steps to Prevent and Stop Walmart's
Participation in the Scheme. ........................................................................177

10.    The Delaware Bin Store Sells Walmart Returns Sent to 2006
Rodman Rd ..................................................................................................181

11.    Walmart Knows About the ORC, and Walmart has the Information
and Ability to Prevent, Respond to, and Stop the ORC Operating
on Walmart Marketplace..............................................................................184

      A.     The Named Plaintiffs Told Walmart about the ORC........................184

      B.     The ORC is Ascertainable and Knowable From the Information
in Walmart's Possession ..................................................................187

      C.     Technological Tools Are Not Being Sufficiently Accessed
And Used By Walmart To Address Rampant Fraud ........................193

      D.     Fraud on E-Commerce Retail Platforms is Not a New
Development ....................................................................................195

12.    The Fraudulent Sellers' Conduct Would Not be Financially Sustainable
or Viable Absent the Return Fraud Component of the ORC........................197

13.    Walmart Has No Immunity For the Claims Asserted...................................200

VII.   CLASS ACTION ALLEGATIONS ........................................................................202

        A.   Nationwide Class ........................................................................202

        B.   Florida Class ........................................................................202

        C.   New York Class ........................................................................202

        D.   North Carolina Class ........................................................................203

        E.   Utah Class ........................................................................203

VIII.   CAUSES OF ACTION ........................................................................207

        A.   Causes of Action Brought on Behalf of the Nationwide Class .....................207

            COUNT I:  Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ...................................................207

            COUNT II:  Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d) ...................................................221

            COUNT III:  Violation of the California Unfair Competition Law .........223

            COUNT IV:  Violation of the California Consumer Legal Remedies Act ........................................................................228

            COUNT V:  Violation of the California False Advertising Law .............233

            COUNT VI:  Violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a) ........................................................................237

        B.   Causes of Action Brought on Behalf of the State Classes ...........................242

            i.   Florida ........................................................................242

            COUNT VII:  Florida Deceptive and Unfair Trade Practices Act ........................................................................242

            COUNT VIII:  Violation of the Florida False Advertising Law ........................................................................246

            COUNT IX:  Common Law Fraud .................................................250

            COUNT X:  Unjust Enrichment ...................................................253

ii.      New York ...................................................................................255

        COUNT XI:  Violation of New York General
        Business Law § 349 ...............................................................255

        COUNT XII:  Violation of New York General
        Business Law § 350 ..............................................................258

        COUNT XIII:  Common Law Fraud ...........................................262

        COUNT XIV:  Unjust Enrichment .............................................266

iii.     North Carolina ........................................................................268

        COUNT XV:  Violation of the North Carolina Unfair
        & Deceptive Trade Practices Act ...........................................268

        COUNT XVI:  Common Law Fraud ...........................................271

        COUNT XVII:  Unjust Enrichment ............................................275

iv.      Utah ........................................................................................277

        COUNT XVIII:  Violation of the Utah Consumer
        Sales Practices Act ................................................................277

        COUNT XIX:  Violation of the Utah Truth in
        Advertising Law .....................................................................280

        COUNT XX:  Common Law Fraud ............................................284

        COUNT XXI:  Unjust Enrichment ............................................288

## I.    <u>INTRODUCTION</u>

1.      Walmart and a network of third-party fraudulent sellers and their co-conspirators ("Fraudulent Sellers") are engaging in an organized retail crime ("ORC") on and using Walmart Marketplace (*i.e.* Walmart's third-party U.S. eCommerce platform on Walmart.com and in the Walmart App).  In addition, Walmart has knowingly or recklessly enabled, profited from, and not taken steps to prevent and stop the ORC that is occurring on Walmart Marketplace. [1]

2.      The victims of Walmart's and the Fraudulent Sellers' deceptive, fraudulent, anti-competitive, and unfair business practices are Plaintiffs and members of the proposed Class who are legitimate Amazon merchants, who sell their products on Amazon and control the fulfillment of the orders that are placed with them on Amazon.com (*see infra* at ¶79(a), the "Amazon Merchants").

3.      The ORC is effectuated by Walmart and the Fraudulent Sellers as summarized in the following ¶¶ 4-14, and as further detailed and alleged herein.

4.      **<u>The Fraudulent Sellers effortlessly sign up as sellers on Walmart Marketplace</u>**. This component of the ORC is referred to herein as the "**Bogus Qualification Process**."

(a)      The Fraudulent Sellers become Walmart Marketplace sellers despite having no indicia of legitimacy, including no other internet retail or eCommerce history or presence, or proof of having any inventory to fulfill orders. *See infra* at ¶¶ 108, 117, 120.

---

[1] Walmart institutionally utilizes the term "Organized Retail Crime" to describe a team within its Global Investigations division which investigates (among other things) claims involving fraud "within stores, distribution centers, supply chains, and e-commerce platforms."  *See e.g.* LinkedIn page of Mr. Thrasher, the Global Investigator- Organized Retail Crime for Walmart from September 2017 through October 2023, and presently, Walmart's Director of Fraud Strategy, Asset Protection. https://www.linkedin.com/in/clay-thrasher-aa62a4211/ (last visited 9.10.2024)

(b)     Furthermore, they become Walmart Marketplace sellers despite an inability to have satisfied the most basic of purported new seller "minimum qualifications" that Walmart falsely and misleadingly represents it imposes (*infra* at ¶¶ 107, 113-116).

(c)     Ensuring that sellers on an eCommerce platform are real, can fulfill orders, are not engaging in fraud or scams, are selling real products (not stolen or counterfeit products), and are authorized to sell the listed products, among other things, are critical to fundamental notions of fair competition, the credibility of eCommerce businesses, and protecting consumers who utilize online retail marketplaces.[2] It is why a federal law– the Integrity, Notification, and Fairness in Online Retail Marketplaces for Consumers Act (the "INFORM Act") –imposes requirements on online retail marketplaces to "know their sellers" and imposes penalties for failure to do so. *See infra* at ¶ 111.

(d)     Yet, these standards and requirements are circumvented and not being used by Walmart when it comes to the Fraudulent Sellers.  Why? Having the Fraudulent Sellers operate on Walmart Marketplace derives significant monetary benefits and serves the following aims for Walmart: (i) competing with Amazon and other eCommerce platforms for market share, sellers, products to be sold; (ii) increased revenue, through accumulating more sellers and products being sold on Walmart Marketplace, which in turn leads to more

---

[2] *See e.g.* https://www.payoneer.com/resources/risk-compliance/  (last accessed 9.9.24) (Managing risks and compliance in online marketplaces); https://sell.amazon.com/blog/amazon-stats (last accessed 9.9.24)  ("In 2023, Amazon Brand Registry proactively blocked or removed 99% of listings suspected of counterfeiting or other forms of abuse."); https://www.ftc.gov/business-guidance/resources/what-third-party-sellers-need-know-about-inform-consumers-act (last accessed 9.9.24)  (FTC - What Third Party Sellers Need to Know About the INFORM Consumers Act (8/2023));  https://trolley.com/learning-center/inform-consumers-act-online-marketplaces/ (last accessed 9.9.24)  (The INFORM Consumers Act: What Online Marketplaces Need to Know).

commissions and advertising revenue for Walmart; and (iii) bolstering its share price. *See infra* at ¶¶ 13, 88-100, 125-131.

(e)     Indeed, over the span of just the past three years, the number of new sellers on Walmart Marketplace has increased exponentially, the majority of which (73% at the height) are sellers who have provided Walmart with business contact information, including an address and phone number, from China. *See infra* at ¶¶ 101-106.

5.     **The Fraudulent Sellers hijack, upload, and post for sale on Walmart Marketplace, products that are being concurrently sold by the legitimate Amazon Merchants on Amazon.com, for which the Fraudulent Sellers have no inventory nor any authorization to sell**. *See infra* at ¶¶ 133-140. This component of the ORC is referred to herein as the "**Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell**."

(a)     Walmart affords each Fraudulent Seller numerous web pages and locations on Walmart Marketplace to effectuate the ORC.  On Walmart Marketplace, the Fraudulent Sellers operate and use thousands of pages, including: (i) a "Seller StoreFront," which contains the Fraudulent Seller's business name, contact information, and a link to "Shop all seller items"; (ii) a "Seller Catalog" which contains a catalog of products being sold by the Fraudulent Seller, accessible through the "Shop all seller items link"; and (iii) a "Product Page," for each individual product, on which the hijacked and bogus product information appears and through which Walmart and the Fraudulent Seller offer and complete the sale of the products. *See infra* at ¶ 79(g)-(i), identifying examples of each.

(b)     The Fraudulent Sellers are purposeful in the Amazon Merchants they target. The victimized Amazon Merchants are small businesses who control the fulfillment of the orders placed with them on Amazon.com (*i.e.* they are "fulfilled by merchant" or "FBM"

Amazon Merchants, in contrast to Amazon merchants who use Amazon to fulfill their orders (*i.e.* "fulfilled by Amazon", or "FBA" merchants)). *See infra* at ¶ 136.

(c)     Likewise, the Fraudulent Sellers are purposeful in the products sold by the Amazon Merchant that they list for sale on Walmart Marketplace as part of the ORC. The products targeted are typically not major, widespread, or well-known brands or trademarked products, and typically created, manufactured, and/or sold by one or just a few authorized small business sellers. *See infra* at ¶¶ 137-38.  This keeps the ORC from being detected by large retailers and manufacturers who deploy their significant resources to identify fraudulent sales of their products on the internet.[3]

(d)     Walmart and the Fraudulent Sellers on Walmart Marketplace, hijack and use verbatim the pictures and narratives that are used by the Amazon Merchants to sell their products on Amazon.com.  *See infra* at ¶¶ 133-35.  The Amazon Merchants' content appears on Walmart Marketplace, including in the Seller StoreFront, the Seller Catalog, and the Product Page. *Id.* Indeed, Walmart facilitates bulk uploading of products and descriptions by Fraudulent Sellers to Walmart Marketplace. *See infra* at ¶¶ 141-44.

(e)     However, the Fraudulent Sellers do change the products' "brand" name, which is displayed in Walmart Marketplace as "Brand".  The Fraudulent Sellers upload and offer for sale thousands of unrelated products which they identify and link by a fake

---

[3] *See, e.g.,* https://businesslawtoday.org/2014/07/dealing-with-unauthorized-online-dealers-sales-of-genuine-products/ (last accessed 9.9.24)  ("The sale by unauthorized dealers of "genuine" goods poses the greatest legal challenge to makers of well-known brands."); https://grayfalkon.com/effective-strategies-for-removing-unauthorized-sellers-from-online-marketplaces/(last accessed 9.9.24); https://www.redpoints.com/blog/identify-and-stop-unauthorized-sellers/(last accessed 9.9.24)  ; Gray-Market Blues: How Businesses Can Prevent Unauthorized Product Sales: https://www.supplychainbrain.com/blogs/1-think-tank/post/35445-gray-market-blues-how-businesses-can-prevent-unauthorized-product-sales (last accessed 9.9.24)

Brand name. *See infra* at ¶¶ 145-49. This fake Brand name is a means to link products being sold on Walmart Marketplace by the Fraudulent Sellers.

(f)     This fraudulent, anticompetitive business practice using the Walmart Marketplace, *inter alia*: (i) causes the Amazon Merchants to not get the sale from the legitimate customers; (ii) is the "but for" step in effectuating the ORC, the fraudulent refund requests, and the stealing of the Amazon Merchants' products and money; and (iii) deceives legitimate consumers into purchasing from Fraudulent Sellers and purchasing products for which a fake (incorrect) Brand name is displayed, thereby deceptively and wrongly concealing and omitting material information from Walmart Marketplace customers about the products being sold on Walmart Marketplace.

6.     **Walmart and the Fraudulent Sellers then use unsuspecting, legitimate customers to effectuate the ORC and victimize the Amazon Merchants.** This component of the ORC is referred to herein as the "**Purchases by Legitimate Walmart Customers**."

(a)     Directed there by, among other things, Walmart's extensive internet advertising of the Walmart Marketplace, millions of customers use Walmart Marketplace to buy products, believing that Walmart Marketplace is credibly managed by Walmart (a long-standing brick-and-mortar and online eCommerce retailer).  Indeed, Walmart touts and represents that "only qualified businesses can sell on Walmart Marketplace" and that Walmart's "selection process looks at the seller's…Catalog...Operations…[and] Other business information."[4] Those representations, however, are impossibilities as they pertain to the Fraudulent Sellers, as alleged herein.

---

[4]*See* https://www.walmart.com/help/article/marketplace-sellers-on-walmart/33258c6228d94acbbcbdaf6b7b0b616b (last visited 9.9.2024)

(b)     To the contrary, the unsuspecting customers who buy products on Walmart Marketplace ("Legitimate Walmart Customers") from Fraudulent Sellers are transformed by Walmart and the Fraudulent Sellers into participants in the ORC.

(c)     The Legitimate Walmart Customer makes a purchase of one of the Fraudulent Sellers' products on Walmart Marketplace. When doing so, the unsuspecting Legitimate Walmart Customer provides: (i) Walmart with payment for the product, and (ii) Walmart and the Fraudulent Seller with their name and personal contact information (for shipping) which are then used by the Fraudulent Seller to place an order with the Amazon Merchants. *See infra* at ¶¶ 154-159; *see also* ¶¶ 199-542 (detailing Plaintiffs' experiences and test purchases).

7.     **The Fraudulent Seller places the fraudulent orders with the Amazon Merchants on Amazon.com.**     This component of the ORC is referred to herein as the "**Fraudulent Amazon Orders**."

(a)     After the unsuspecting Legitimate Walmart Customer places her order via the Products Page on Walmart Marketplace, the Fraudulent Seller (i) receives the order from Walmart *(see infra* at ¶ 160), and (ii) places an order for the same product with the Amazon Merchant who the Fraudulent Seller knows is selling the product on Amazon.com (*see infra* at ¶ 160; *see also* ¶¶ 199-542 (detailing Plaintiffs' experiences and test purchases)).

(b)     When the Fraudulent Seller places the order with the Amazon Merchant on Amazon.com, the Fraudulent Seller uses some or all of the Walmart customer's personal name and shipping information. *See infra* at ¶ 161.

(c)     Unbeknownst at that point to the Amazon Merchant that the order is part of the ORC, the Amazon Merchant fulfills the order, shipping the product to the Legitimate Walmart Customer. *See infra* at ¶ 162.

(d)     The Amazon Merchant provides the Fraudulent Seller with the tracking information for the products for each order. Walmart requires its sellers provide a tracking number for all orders placed on the Marketplace. Fraudulent Sellers provide such tracking numbers to Legitimate Walmart Customers, which Walmart accepts even when a tracking number is invalid. *See infra* at ¶¶ 152-153, 163-164.

8.     **The Fraudulent Seller then falsely states that product was not delivered and makes a fraudulent refund request with the Amazon Merchants on Amazon.com.** This component of the ORC is referred to herein as the "**Fraudulent Refund Request**." *See infra* ¶¶ 166-190.

(a)     Notwithstanding that the product was delivered to the Legitimate Walmart Customer (which fact is known to the Fraudulent Seller who provided the Amazon Merchant's tracking information to the Legitimate Walmart Seller via the Walmart Marketplace), the Fraudulent Seller (a) falsely states that the product was not delivered, and (b) requests a refund from the Amazon Merchant. *See infra* at ¶ 167.

(b)     The Fraudulent Sellers' notifications to the Amazon Merchants that "they" did not receive the products utilize substantively similar messaging. *See infra* at ¶ 171.

(c)     By targeting and victimizing FBM Amazon Merchants (*see infra* at ¶ 136), the Fraudulent Sellers exploit the Amazon A-to-z Guarantee and A-to-z Claim process (*see infra* at ¶¶ 168-169), whereby the FBM Amazon Merchants are required to: (i) refund buyers for reportedly undelivered items purchased directly from them on Amazon.com,

15

and/or (ii) incur costs related to the shipping and handling of the products.  *See infra* at ¶¶ 168-69; *see also* ¶¶ 199-542 (detailing Plaintiffs' experiences and test purchases).

9.      **If the Legitimate Walmart Customer returns the product, the Fraudulent Seller, not the Amazon Merchant, gets the product.**  This component of the ORC is referred to herein as the "**Fraudulent Product Return**."

(a)     A Legitimate Walmart Customer may seek to return the product purchased via Walmart Marketplace from the Fraudulent Seller.  If a Legitimate Walmart Customer returns the product, the product does not find its way back to the Amazon Merchant, notwithstanding that the product was supplied and shipped to the Legitimate Walmart Customer by the Amazon Merchant. *See infra* at ¶ 192.

(b)     Instead, the Fraudulent Sellers use at least four US-based return addresses, which are supplied by Walmart via the Walmart Marketplace to the Legitimate Walmart Customers when they request to return a product. *See infra* at ¶ 195.

(c)     When returned, the products are shipped to the Fraudulent Sellers, who directly or indirectly operate or associate with brick-and-mortar "overstock" or "bin stores" in which hundreds of the returned products are offered for resale. *See infra* at ¶¶ 198, 546-552.

10.     Walmart was made aware of the ORC by the Plaintiffs. *See infra* at ¶¶ 557-561.

11.     In addition, Walmart has had in its possession substantial public and non-public information that could be used by Walmart to identify the Fraudulent Sellers and stop the ORC and its operation on Walmart Marketplace. Such information includes (*see infra* at ¶¶ 562-569):

(i)      the fake Brands and bogus/non-existent UPCs posted on Walmart Marketplace;

(ii)     the Seller Pages displaying thousands of unrelated products under the same fake Brand;

(iii)    the lack of internet and eCommerce presence by the Fraudulent Sellers, including that they are not selling the products on any other eCommerce platform;

(iv)     the fact of the hijacked listings, which are readily identifiable as listings on Amazon by a merchant who is not the Fraudulent Seller;

(v)      the inability of the Fraudulent Sellers to provide valid proof of inventory or the legal right to sell the products;

(vi)     shipping information provided by the Fraudulent Sellers (including that their ship time is greater than 2 days and the tracking information); and

(vii)    business documentation and contact information for the Fraudulent Sellers that would identify associations and relationships among the Fraudulent Sellers and their co-conspirators.

Instead of doing so, Walmart intentionally or recklessly disregarded the ORC, the role of Walmart Marketplace in the ORC, and the various tactics utilized by the Fraudulent Sellers to effectuate the ORC on Walmart Marketplace, all of which are evident, or knowable, from information on the Walmart Marketplace and in Walmart's possession. Walmart was, at minimum, reckless in not taking steps to prevent, enjoin, and stop the ORC.

12.     The harm and financial loss to the Amazon Merchants from the ORC is substantial. For each ORC transaction, Walmart and the Fraudulent Sellers are deceptively and fraudulently taking from the Amazon Merchants substantial monetary sums. For each ORC transaction, the Amazon Merchant is out-of-pocket: (i) the product and (ii) the costs for shipping, handling, and processing the Fraudulent Amazon Orders.  In addition, because of the ORC and the Fraudulent,

Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, each Amazon Merchant was deprived of the sale of the product to a legitimate customer and the profit they would have received from that sale.  Furthermore, the Plaintiffs and Amazon Merchants have spent substantial time and resources taking measures to attempt to combat the Fraudulent Listings on Walmart Marketplace.

13.    The financial benefits of the ORC go directly to Walmart, the Fraudulent Sellers and their co-conspirators: Walmart gets a monetary commission, or a "referral fee", from the Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell and Purchases by Legitimate Walmart Customers that occurred on Walmart Marketplace (*see infra* at ¶¶ 126-27); and, the Fraudulent Seller gets the net cash from the Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell, the Purchases by Legitimate Walmart Customers, the Fraudulent Amazon Orders, and the Fraudulent Refund Request, and, if applicable, compensation for re-selling the product as part of the Fraudulent Product Return.

14.    The ORC, and Walmart's and the Fraudulent Sellers' conduct, individually and in concert: violate the Lanham Act, 15 U.S.C. § 1125(a) and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"); constitute actionable fraud, unfair and deceptive trade practices, and unfair competition; and, the Defendants were unjustly enriched thereby.

## II.    **PARTIES**

### A.    **Plaintiffs**

15.    **Plaintiff Artistic Industries, LLC**, is a family-owned small business established in 2019, with its principal office located at 44 S 1000 W, Provo, Utah 84601 ("Plaintiff Artistic Industries"). Founded and operated by husband-and-wife Michael and April Simister, the business

specializes in the sale of art supplies, including clay, glaze, paint, ceramic tools, plaster, and other raw materials, both online and in-store. Plaintiff Artistic Industries is, and has been since at least November 2018, an Amazon Merchant.   Plaintiff Artistic Industries sells, among others, the following brands and products:

        (a)       Laguna;

        (b)       USG;

        (c)       Mudtools;

        (d)       Coyote Clay and Glaze;

        (e)       Artistic Industries;

        (f)       Capital Ceramics;

        (g)       Mayco;

        (h)       Amaco;

        (i)       Wizard;

        (j)       Kemper;

        (k)       Giffin Grip;

        (l)       pottery clay;

        (m)       plaster and cement;

        (n)       pottery tools;

        (o)       raw materials; and,

        (p)       pottery tools.

16.   **Plaintiff Knight Distributing Co., d/b/a Regency Cosmetics**, is a veteran-owned small business established in 1968, with its principal office located at 185 Winning Way, Salisbury, North Carolina 28147 ("Plaintiff Regency Cosmetics"). Specializing in the retail sale

and distribution of beauty and health care products, Plaintiff Regency Cosmetics is owned by Gary Rice, with day-to-day operations managed by his daughter, Sabine Rice. Plaintiff Regency Cosmetics is, and has been since approximately February 11, 2015, an Amazon Merchant. Plaintiff Regency Cosmetics sells, among others, the following brands and products:

      (a)      My Secret Corrective Hair Enhancer Sprays;

      (b)      My Secret Correctives Hair Enhancing Fibers;

      (c)      My Secret Correctives Root Touch Up/Highlight Sprays;

      (d)      Jade East Colognes;

      (e)      Jade East Aftershaves;

      (f)      My Nik Is Sealed;

      (g)      Sealed With A Kiss;

      (h)      My Spots Are Concealed; and,

      (i)      My Secret Corrective Eye, Brow, & Lip Liner Pencils.

17.     **Plaintiff Longstem Organizers Inc.**, is a small business registered in New York and founded in 2006, with its principal office at 380 E Main Street Jefferson Valley, NY 10535 ("Plaintiff LO" or "Plaintiff Longstem"). Established, majority owned, and operated by Alison Albanese, Plaintiff LO specializes in the sale of its patented over-the-door jewelry and accessory storage organizer. Plaintiff LO is, and has been since November 2010, an Amazon Merchant. Plaintiff LO sells, among others, the following brands and products:

      (a)      Longstem Organizers;

      (b)      Over-the-door jewelry organizers;

      (c)      Over-the-door office organizers; and,

      (d)      Over-the-door accessory organizers.

18.     **Plaintiff EZ-Step Mobility, Inc.,** is a business registered in Florida and founded in 2017, with its principal office at 5418 Baytowne Place, Oveido, FL 32765 ("Plaintiff EZ-Step or "Plaintiff EZ-Step Mobility"). Established, owned, and operated by John Stocker, Plaintiff EZ-Step specializes in the sale of mobility assist devices for those with ambulatory issues. Plaintiff EZ-Step is, and has been since January 2017, an Amazon Merchant. Plaintiff EZ-Step sells the following brand and product: EZ-Step Stair Climbing Cane.

B.      **Defendants**

1.      ***Walmart Defendants***

19.     **Defendant Walmart Inc.** is a corporation organized and existing under the laws of the state of Delaware, is registered to do business in the state of California, and has an office and principal place of business located at 702 Southwest 8th Street, Bentonville, Arkansas 72716.

20.     **Defendant Wal-Mart.com USA, LLC** is a California limited liability company located at 850 Cherry Ace, San Bruno, California 94066.

21.     Walmart, Inc. and Wal-Mart.com USA, LLC operate and/or control walmart.com, which includes Walmart Marketplace. Walmart, Inc. and Wal-Mart.com USA, LLC establish and control the policies, procedures, and contracting with the Fraudulent Sellers.

22.     Walmart, Inc. is the ultimate parent company of subsidiary Wal-Mart.com USA, LLC.

23.     Defendants Walmart Inc. and Wal-Mart.com USA, LLC are collectively referred to herein as Walmart.

2.      ***17 Fraudulent Seller Defendants***

24.     The 17 Fraudulent Seller Defendants associate with, conduct business through, accept returns to, and provided Walmart with four U.S.-based business locations / addresses.  Such

information was discernable through publicly accessible information and Plaintiffs' and their Counsel's investigations. *See infra* ¶¶ 200-540.

25.     On information and belief, Walmart also possesses non-public information about each of the Fraudulent Sellers that identifies: (a) additional affiliations and associations among the Fraudulent Sellers; and (b) the affiliated and associated US-based operations, locations, and representatives of the Fraudulent Sellers.

26.     The 17 Fraudulent Seller Defendants own and/or operate one of more of the Seller StoreFronts, Seller Catalogs and Product Pages on Walmart Marketplace, using the names or aliases set forth in ¶¶ 30-47 and using other seller aliases on Walmart Marketplace not yet known to Plaintiffs.

27.     On information and belief, the 17 Fraudulent Seller Defendants; either individually or jointly, operate one of more of the Seller StoreFronts, Seller Catalogs and Product Pages on Walmart Marketplace set forth in ¶¶ 30-47.

28.     The Fraudulent Seller Defendants are grouped herein and associated by the following four U.S.-based business locations/addresses, which Walmart publicly identifies, conveys, and uses as the return address for each Fraudulent Seller:

> ➢ 2006 Rodman Rd, Wilmington, DE 19805 at ¶¶ 30-36;
>
> ➢ 11172 Amarillo St, Rancho Cucamonga, CA 91701 at ¶¶ 37-40;
>
> ➢ 3608 Meadowlark St, El Monte, CA 91732 at ¶41;
>
> ➢ 19919 Talbot Rd, Renton, WA 98055 at ¶¶ 42-43.

29.     Presently, the U.S.-based business location/address, which Walmart conveys and uses as the return address for three of the 17 Fraudulent Seller Defendants is unknown to Plaintiffs but is known to Walmart. *See infra* ¶¶ 44-47.

### a.      The 2006 Rodman Road Fraudulent Seller Defendants

30.      **Defendant TaiYuanHaoTingDianZiShangWuYouXianGongSi** is the business name identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront with the name **EasyHousewares.**[5] Walmart assigned Defendant TaiYuanHaoTingDianZiShangWuYouXianGongSi the Seller Number 101285417.

---

[5] https://www.walmart.com/seller/101285417 (last accessed 9.10.24). See screenshot below for EasyHousewares Walmart.com seller page as of 9.10.2024.



(a)    Walmart identified on Walmart Marketplace that this Defendant's business location is: ShanXiShengTaiYuanShi XiaoDianQuBeiGeZhenZhangHuaCunDongBeiJie29Hao, TaiYuanShi, SX 030000, CN.

(b)    For products purchased from "EasyHousewares" on Walmart Marketplace that are returned, Walmart provides the following return address: 2006 Rodman Rd, Wilmington, DE 19805.

(c)      Defendant TaiYuanHaoTingDianZiShangWuYouXianGongSi has listed or currently lists, and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.

(d)      On August 2, 2024, "EasyHousewares" had listed "1000+" items on its Seller Catalog on Walmart Marketplace, including products of plaintiff Artistic Industries, and 9,185 products with the brand name "Hetayc."

(e)      On August 5, 2024, "EasyHousewares" listed 9,171 "Hetayc," 559 "CodYinFI," and 554 "HTYSUPPLY" branded goods on its Seller Catalog on Walmart Marketplace.

(f)      As of August 12, 2024, "EasyHousewares" listed 9,189 "Hetayc," 557 "CodYinFI," and 555 "HTYSUPPLY" branded goods on its Seller Catalog on Walmart Marketplace.

(g)      As of September 10, 2024, "EasyHousewares" listed 8,522 "Hetayc," 537 "CodYinFI," and 520 "HTYSUPPLY" branded goods on its Seller Catalog on Walmart Marketplace.[6]

---

[6] https://www.walmart.com/global/seller/easyhousewares (last accessed 9.10.2024).



31.     Defendant **Haikoushanqingmengmaomiyouxiangongsi** is the business name

identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront

with the name "**Judy OTTO**."[7]

---

[7] https://www.walmart.com/seller/101644233 (last accessed 9.10.2024).



(a)     Walmart assigned Defendant

Haikoushanqingmengmaomiyouxiangongsi the Seller Number

101644233. https://www.walmart.com/global/seller/101644233 (last

visited 9.9.2024)

(b)     Walmart identified on Walmart Marketplace that this Defendant's

business location is: Room 384, No. 146 Changrong Village,

Longqiao Town, Longhua District, Haikou City, HI 570100, CN.

27

(c)     For products purchased from "Judy OTTO" on Walmart Marketplace that are returned, Walmart provides the following return address: 2006 Rodman Rd, Wilmington, DE 19805.

(d)     Defendant Haikoushanqingmengmaomiyouxiangongsi has listed or currently lists, and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.

(e)     On August 2, 2024, "Judy OTTO" listed "1000+" items for sale on its Seller Catalog on Walmart Marketplace, including products of Plaintiff Artistic Industries, and 5,374 products under the brand name "NIKOZQ."

(f)     As of September 2, 2024, "Judy OTTO" offers 7,299 "NIKOZQ" branded products on its Seller Catalog on Walmart Marketplace.

(g)     As of September 10, 2024, Judy OTTO" offers 7,179 "NIKOZQ" branded products on its Seller Catalog on Walmart Marketplace.[8]

---

[8] https://www.walmart.com/global/seller/101644233 (last visited 9.10.2024)



32.    **Defendant HAIKOUYANBIHONGKEJIYOUXIANGONGSI** is the business name identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront with the name "**Joyfulmart**" or "**JoyfulMart**."[9] Walmart assigned Defendant HAIKOUYANBIHONGKEJIYOUXIANGONGSI the Seller Number 101240662.

---

[9] See https://www.walmart.com/seller/101240662 (last visited 9.9.2024).



(a)    Walmart identified on Walmart Marketplace that this Defendant's business location is: Room 1503, Unit 2, Building 13, Mid-Hill Garden, Jinmao Middle Road Haikou City, HI 570100, CN

(b)    For products purchased from "Joyfulmart" on Walmart Marketplace that are returned, Walmart provides the following return address: 2006 Rodman Rd, Wilmington, DE 19805.

(c)    Defendant has listed and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.

(d)    As of September 5, 2024, the Seller Catalog for "JoyfulMart" on Walmart Marketplace identified 3,437 products listed under the Brand "YhbSmt".

(e)    As of September 10, 2024, the Seller Catalog for "JoyfulMart" on Walmart Marketplace identified 3,737 products listed under the Brand "YhbSmt".[10]

---

[10] https://www.walmart.com/global/seller/101240662 (last visited 9.10.2024).



33. **Defendant guangzhoucunbeimaoyiyouxiangongsi** is the business name identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront with the name **"Coey Trading Co. ltd."**[11] Walmart assigned Defendant guangzhoucunbeimaoyiyouxiangongsi the Seller Number 101224516.

---

[11] See https://www.walmart.com/seller/101224516 (last visited 9.9.2024).



(a)     Walmart identified on Walmart Marketplace that this Defendant's business location is:

guangzhoushinanshaqunanshajienanshashequnanwanyijie177hao, guangzhoushi, GD 510000, CN.

(b)     For products purchased from "Coey Trading Co. ltd" on Walmart Marketplace that are returned, Walmart provides the following return address: 2006 Rodman Rd, Wilmington, DE 19805.

(c)     Defendant guangzhoucunbeimaoyiyouxiangongsi has listed or currently lists, and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.

(d)     In an email sent through Walmart customer service to Plaintiff Artistic Industries, either a Walmart employee or representative of Coey Trading Co. ltd identified its warehouse address as: 2340 SouthEastern Avenue, Commerce, California, US 90040. No record of Defendant guangzhoucunbeimaoyiyouxiangongsi or a "Coey Trading Co. ltd" operating, owning or being associated with that address was found.

(e)     As of August 2, 2024, "Coey Trading Co. ltd" had 968 products listed on its Seller Catalog on Walmart Marketplace, including products of plaintiff Artistic Industries. 966 products were listed under the Brand "Cintbllter."

(f)     As of August 12, 2024, 1,130 products were listed under the Brand "Cintbllter".

33

(g)    As of August 28, 2024, the Seller Catalog for Coey Trading Co. ltd

on Walmart Marketplace identified 19,796 products listed under the

Brand "Cintbllter:" [12]





(h)    As of September 10, 2024, the Seller Catalog for Coey Trading Co.

ltd. On Walmart Marketplace identified 3054 products listed under

the Brand "Cintbllter." All items were listed as "out of stock." See

below for a search filtering Coey Trading Co. ltd's Seller Catalog by

items that are available for purchase.[13]

---

[12] https://www.walmart.com/global/seller/coey-trading-co-ltd?facet=brand%3ACintbllter (last visited 9.9.2024).
[13] https://www.walmart.com/global/seller/coey-trading-co-ltd?facet=exclude_oos%3AShow+available+items+only (last accessed 9.10.2024)



34.    **Defendant Doe 1** is the business name previously identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront with the name **"Pengxichengqikeji."** Defendant Doe 1 has listed, and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein. As of August 2, 2024, "Pengxichengqikeji" is no longer listed as a seller on Walmart Marketplace. For products purchased from "Pengxichengqikeji" on Walmart Marketplace that are returned, Walmart provides the following return address: 2006 Rodman Rd, Wilmington, DE 19805.

35.    **Defendant Doe 2** is the business name previously identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront with the name "Guangzhounuoqikemaoyiyouxiangongsi." Defendant Doe 2 has listed, and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein. As

of August 2, 2024, "Guangzhounuoqikemaoyiyouxiangongsi" is no longer listed as a seller on Walmart Marketplace. For products purchased from "Guangzhounuoqikemaoyiyouxiangongsi" on Walmart Marketplace that are returned, Walmart provides the following return address: 2006 Rodman Rd, Wilmington, DE 19805.

36.     **Defendant Doe 3** is the business name previously identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront with the name **"Onenbary."** Defendant Doe 3 has listed, and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.  As of August 2, 2024, "Onenbary" is no longer listed as a seller on Walmart Marketplace. For products purchased from "Onenbary" on Walmart Marketplace that are returned, Walmart provides the following return address: 2006 Rodman Rd, Wilmington, DE 19805.

**b.     The 11172 Amarillo Street Fraudulent Seller Defendants**

37.     **Defendant  GuangZhouXiaJiaMaoYiYouXianGongSi** is the business name identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront called "**Whimsy Whirligig**."

(a)     Walmart assigned Defendant GuangZhouXiaJiaMaoYiYouXianGongSi a Seller Number.

(b)     Walmart identified on Walmart Marketplace that this Defendant's business location is: GuangZhouShiTanHeQuZhongShanDaDao268Hao401FangZhiB410 -F093, GuangZhouShi, GD 510000, CN.

(c)     For products purchased from "Whimsy Whirligig" on Walmart Marketplace that are returned, Walmart provides the following return

address: 11172 Amarillo St, Rancho Cucamonga, CA 91701.

(d)      Defendant GuangZhouXiaJiaMaoYiYouXianGongSi has listed and sold one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.

(e)      As of August 2, 2024, "Whimsy Whirligig" stopped displaying as an active Seller StoreFront on Walmart Marketplace.

38.    **Defendant enshizhoujianshishuiyueshangmaoyouxiangongsi** is the business name identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront called "**xiangpiaopiaodedian**."[14]



(a)      Walmart assigned Defendant

enshizhoujianshishuiyueshangmaoyouxiangongsi the Seller Number

---

[14] https://www.walmart.com//seller/101564355 (last accessed 9.10.2024)

101564355. https://www.walmart.com/global/seller/101564355 (last visited 9.9.2024)

(b)     Walmart identified on Walmart Marketplace that this Defendant's business location is:

jianshixiangaopingzhensangyuanbashequyizu8haozizhushenbao, Enshi, HB 445305, CN.

(c)     For products purchased from "xiangpiaopiaodedian" on Walmart Marketplace that are returned, Walmart provides the following return address: 11172 Amarillo St, Rancho Cucamonga, CA 91701.

(d)     Defendant enshizhoujianshishuiyueshangmaoyouxiangongsi has listed and sold one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.

(e)     On August 5, 2024, "xiangpiaopiaodedian" listed "1000+" items for sale on the Walmart Seller StoreFront, including products of Plaintiff KDC, and of which 828 products were under the brand name "TeviRoom."

(f)     As of August 12, 2024, "xiangpiaopiaodedian" offered 1,113 "TeviRoom" branded products.

(g)     As of September 10, 2024, "xiangpiaopiaodedian" offered 706 "TeviRoom" branded products.[15]

---

[15] https://www.walmart.com/global/seller/101564355 (las accessed 9.10.2024)



39.     **Defendant shenzhenshinongjiayuancanyinyouxiangongsi** is the business name identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront called "**LuckyJiang**."

 (a) Walmart assigned Defendant shenzhenshinongjiayuancanyinyouxiangongsi a Seller Number.

 (b) Walmart identified on Walmart Marketplace that this Defendant's business location is: nanshanqutaoyuanjiedaotanglangshequtaoyuanjuedaobaonengcheng huayuan(xiqu)2dongbandixia133, shenzhenshi, GD, 518000, CN.

 (c) For products purchased from "LuckyJiang" on Walmart Marketplace that are returned, Walmart provides the following return address: 11172 Amarillo St, Rancho Cucamonga, CA 91701.

 (d) Defendant shenzhenshinongjiayuancanyinyouxiangongsi has listed

and sold one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.

(e)       As of September 10, 2024, LuckyJiang was no longer displaying as an active Seller StoreFront on Walmart Marketplace.

40.    **Defendant Taiyuantupankangwangluokejiyouxiangongsi** is the business name identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront called "**The     Tech     Loft**." Walmart     assigned     Defendant Taiyuantupankangwangluokejiyouxiangongsi the Seller Number 101662905.[16]



(a)       Walmart identified on Walmart Marketplace that this Defendant's business location is:

Shanxishengtaiyuanshixiaodianquqinxianbeijie79haomaoyetiandixia oqu5haolou13ceng1302hao, taiyuan, SX 030000, CN.

(b)       For products purchased from "The Tech Loft" on Walmart

---

[16] https://www.walmart.com/seller/101662905 (las accessed 9.10.2024).

Marketplace that are returned, Walmart provides the following return address: 11172 Amarillo St, Rancho Cucamonga, CA 91701.

(c)     Defendant Taiyuantupankangwangluokejiyouxiangongsi has listed and sold one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.

(d)     On August 2, 2024, "The Tech Loft" listed "1000+" items for sale on its Walmart Seller StoreFront, including products sold by Plaintiff Longstem Organizers, and which included 2,877 products listed under the Brand "TeviRoom."

(e)     As of September 6, 2024, the number of products listed in the Seller Catalog on Walmart Marketplace by "The Tech Loft" under the Brand "TeviRoom" was 1,322 products.

(f)     As of September 10, 2024, the number of probducts listed in the Seller Catalog on Walmart Marketplace by "The Tech Loft" under the Brand "TeviRoom" was 637.[17]

---

[17] https://www.walmart.com/global/seller/101662905 (last visited 9.9.2024)



c.    **The 3608 Meadowlark Street Fraudulent Seller Defendant**

41.    **Defendant guangzhouxunjiejidianyouxiangongsi** is the business name identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront called "**XUNJIE Jidian Co. Ltd**." Walmart assigned Defendant guangzhouxunjiejidianyouxiangongsi the Seller Number 101689158.[18]

---

[18] https://www.walmart.com/seller/101689158 (last accessed 9.10.2024)



(a)  Walmart identified on Walmart Marketplace that this Defendant's business location is:

guangzhoushipanyuqunancunzhenshixingonglubeiduan156hao1dong 506fangA002, Guangzhou, GD 510000, CN

(b)  For products purchased from "XUNJIE Jidian Co. Ltd." on Walmart Marketplace that are returned, Walmart provides the following return address: 3608 Meadowlark St, El Monte, CA 91732.

(c)  Defendant guangzhouxunjiejidianyouxiangongsi has listed and sold one or more of the Plaintiffs' and Class Members' products, including of Plaintiff Longstem, that were the subject of the ORC alleged herein.

(d)  On August 2, 2024, "XUNJIE Jidian Co. Ltd" listed "575" items for

43

sale on its Walmart Storefront, including products of Plaintiff LO. All products were under the brand name "XUNJIE."

(e)     As of September 10, 2024, "XUNJIE Jidian Co. Ltd" listed "2065" items for sale on its Walmart Storefront, including products of Plaintiff LO. All products were under the brand name "XUNJIE."[19]



---

### d.     The 19919 Talbot Road Fraudulent Seller Defendants

42.     **Defendant Doe 4** is the business name previously identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront called "**Windy Suk Co. Ltd**." Defendant Doe 4 has listed, and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein. As of August 2, 2024, "Windy Suk Co. Ltd" is no longer listed as a seller on Walmart Marketplace. For products purchased from "Windy Suk Co. Ltd" on Walmart Marketplace that are returned, Walmart provides the following return address: 19919 Talbot Rd, Renton, WA 98055.

43.     **Defendant Doe 5** is the business name previously identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront called "Chen heng Home Store" (Seller Number 101681904).  Defendant Doe 5 has listed, and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein. As of August 2, 2024, "Chen heng Home Store" is no longer listed as a seller on Walmart Marketplace. For products purchased from "Chen heng Home Store" on Walmart Marketplace that are returned, Walmart provides the following return address: 19919 Talbot Rd, Renton, WA 98055.

### e.     U.S. Return Address Presently Unknown Fraudulent Seller Defendant

44.     Presently, the U.S.-based business location/address, which Walmart conveys and uses as the return addresses for the following Fraudulent Seller Defendants is unknown to Plaintiffs, but known to Walmart.

45.   **Defendant   liaochengshengchinanbeidianzishangwuyouxiangongsi**   is   the business name identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront with the name "**shengyang Zhou**".[20]



(a)   Walmart assigned Defendant liaochengshengchinanbeidianzishangwuyouxiangongsi the Seller Number 101500292.

(b)   Walmart identified on Walmart Marketplace that this Defendant's business location is:

---

[20] https://www.walmart.com/seller/101500292  (last accessed 9.11.2024).

shandongshengliaochengjingjijishukaifaquxingmeichengshiguangch angyiqijiuhaolouerdanyuansancengxihu233shiliaocheng, SD 252000, CN.

(c)     Defendant has listed and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.

(d)     As of September 11, 2024, the Seller Catalog for "shengyang Zhou" on Walmart Marketplace identified more than 1000 items for sale.[21]



46.    Defendant **Jinanhengyuanshangmaoxiaoshouyouxiangongsi** is the business name identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront with the name "**jinanhengyuanshangmao**."[22]



      (a)    Walmart assigned Defendant Jinanhengyuanshangmaoxiaoshouyouxiangongsi the Seller Number 101672788.[23]

      (b)    Walmart identified on Walmart Marketplace that this Defendant's business location is: Room 705, Building 2, Lvdixin Duhui

---

[22] https://www.walmart.com/seller/101672788 (last accessed 9.10.2024).

[23] (a)   https://www.walmart.com/seller/101672788 (last visited 9.09.2024)

Commercial Plaza, Shiliuhe Street, Shizhong District, Jinan City, Shandong Province, 250000, CN.

(c)      Defendant Jinanhengyuanshangmaoxiaoshouyouxiangongsi has listed or currently lists, and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein.

(d)      On September 6, 2024, "jinanhengyuanshangmao" listed 757 items for sale on its Seller Catalog on Walmart Marketplace, including products of Plaintiff Longstem, of which 414 products were listed under the Brand "Abby's."



https://www.walmart.com/global/seller/101672788 (last visited 9.9.2024)

47.      **Defendant Doe 6** is the business name previously identified by Walmart on Walmart Marketplace as the operator of the Walmart Seller StoreFront called "Weilashi" (Seller Number 101649852).  Defendant Doe 6 has listed, and sold, one or more of the Plaintiffs' and

Class Members' products that were the subject of the ORC alleged herein. As of September 12, 2024, "Weilashi" is no longer listed as a seller on Walmart Marketplace.

### 3.    *Does 7-24 Fraudulent Seller Defendants*

48.    Does 7-24 Fraudulent Seller Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the Walmart Marketplace Seller StoreFronts, Seller Catalogs, and Product Pages participating in the ORC under seller names not yet known to Plaintiffs.

49.    Like the named Fraudulent Seller Defendants, Does 7-24 Fraudulent Seller Defendants: (a) operate or operated on Walmart Marketplace a Walmart Seller StoreFront; (b) listed, and sold, one or more of the Plaintiffs' and Class Members' products that were the subject of the ORC alleged herein; and (c) participated in the ORC as alleged herein.

50.    On information and belief, the Does 7-24 Fraudulent Seller Defendants are created, reside and/or operate in the People's Republic of China.

51.    Does 7-24 Fraudulent Seller Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

52.    The Does 7-24 Fraudulent Seller Defendants associate with, conduct business through, accept returns to, and provided Walmart with U.S.-based business locations / addresses. Such information is discernable through publicly accessible information and information in Walmart's possession.

53.    On information and belief, Walmart also possesses non-public information about each of the Does 7-24 Fraudulent Seller Defendants, including information that identifies: (a) additional affiliations and associations among them and Walmart Defendants; (b) additional

affiliations and associations among the Fraudulent Sellers; and (c) the affiliated and associated US-based operations, locations, and representatives of the Fraudulent Sellers. *See infra* ¶¶ 562-69.

### 4.    *Does 25-35 Conspiratorial Defendants*

54.    Does 25-35 Conspiratorial Defendants (a) associate with, conduct business through and with, and/or have or currently direct, manage, coordinate, and/or organize the: operations of the Fraudulent Seller Defendants; and (b) participated in the ORC as alleged herein.

55.    In addition, upon information and belief, the Does 25-35 Conspiratorial Defendants associate with, conduct business through and with, and/or have or currently are directed, managed, coordinate, and/or organized with the Non-Party Entities identified *infra* ¶¶ 61-72.

56.    On information and belief, Does 25-35 Conspiratorial Defendants reside and/or operate in the United States or the People's Republic of China.

57.    Does 25-35 Conspiratorial Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

58.    The Does 25-35 Conspiratorial Defendants hedge against the risk of being publicly visible on Walmart Marketplace, and thus being identified by the Amazon Merchants, by establishing consecutive or multiple Seller StoreFronts, Seller Catalogs and Product Pages on Walmart Marketplace under aliases or operating with and through the Fraudulent Sellers.

59.    On information and belief, Walmart possesses non-public information about each of the Does 25-35 Conspiratorial Defendants, including information that identifies: (a) affiliations and associations among them and Walmart Defendants; (b) affiliations and associations among them and the Fraudulent Seller Defendants; and (c) the affiliated and associated US-based operations, locations, and representatives of Does 25-35 Conspiratorial Defendants.

60.     The foregoing 17 Fraudulent Seller Defendants (¶¶ 30-47), Does 7-24 Fraudulent Seller Defendants (¶¶ 48-53) and Does 25-35 Conspiratorial Defendants (¶¶ 54-59) are collectively referred to herein as the "Fraudulent Sellers" or the "Fraudulent Seller Defendants".  Based on the modus operandi alleged herein, including the characteristics and components of the ORC, the Fraudulent Seller Defendants operate in a concerted manner and/or under common directors and controllers of the ORC.

III.     **NON-PARTY PERSONS AND ENTITIES ASSOCIATED WITH THE FRAUDULENT SELLERS**

61.     The following ¶¶ 62-72 identify persons, properties, entities, and businesses associated with the Fraudulent Sellers and identify associations between and among the Fraudulent Sellers.

A.     **2006 Rodman Rd, Wilmington, DE 19805**

62.     2006 Rodman Rd. (Parcel # 19-002.00-237), which serves as the Walmart-identified return address for seven Fraudulent Sellers (*supra* ¶¶ 30-36, is owned by "Rodman Management LLC," a Delaware Limited Liability Company (DE File # 6800357)

(a)     Rodman Management LLC is owned by "Xiaoli Liu" (also known as "Xiao Li Liu" and "Rachel Liu"). Its registered agent address is 101 Vaca Ct, Newark, DE 19702, which is owned by, and the primary residence of, Xiaoli Liu and Dahai Zhao.

(b)     Based on corporate filing information, the only registered LLC at the 2006 Rodman Rd location is "C&S DE PROPERTY MANAGEMENT LLC" (DE 5931324) (CA 202356015074), which is owned by Xiaoli Liu and has a registered address of 1204 E Cypress St., Covina, CA 91724.

52

63.    According to Experian Credit Reporting data and The Better Business Bureau, the companies "QQ-EX," "Delaware Bin Store," "Golden Will Supply" (Experian Company # 525672142), "Goldenwill" (Experian Company # 499242003), and "Amerimax Inc." (Experian Company # 498641595), operate from 2006 Rodman Rd.

(a)    "QQ-EX," "Delaware Bin Store" and "Golden Will Supply," are all associated the same phone number: (717) 779-1469.

(b)    Xiaoli Liu is the registered agent or officer for the following entities: (i) OODE Inc (DE 5975120) (MD F17558594); (ii) Amerimax Inc. (DE 6800357) (CA 5096113); (iii) Goldenwill Supply Corporation (DE 5057227) (PA 4016020); and (iv) LOGILITE SOLUTION CORP (DE 5528083)

64.    The "Delaware Bin Store" also known as "Overstock Delaware" (collectively, the "Delaware Bin Store") is a storefront operating at 728 Stanton Christiana Rd, Newark, DE 19713. The land and business are owned by Xiaoli Liu and Dahai Zhao. The Delaware Bin Store offers a wide variety of products for sale to the public. While some items are being sold in bulk, as is typical of "overstock" stores, the majority are limited-quantity items, typically with only one unit available per item, and are displayed in boxes evidencing that they are items that had been returned from and were associated with transactions on Walmart.com and Amazon.com.  The Delaware Bin Store has been active at the Stanton Christian Rd location for over a year, as per its Facebook page managed by Dahai Zhao, and as further evidenced by an "Anniversary Sale" advertisement posted at the parking lot entrance.

65.    On information and belief, Xiaoli Liu's husband is Dahai Zhao and is also affiliated with the U.S.-based OODE Inc., Amerimax Inc. and Shanghai Xingu Dongjian Electronics Co.,

Ltd.[24] (**上海新谷东建电子有限公司**)[25]  At relevant times, OODE Inc. has been identified on the website "haiwaicang.com," which identifies that it operates overseas warehouse operations and currently operates four warehouses in the United States, located in Delaware, New York, Los Angeles, and Maryland, with a total area of 300,000 square feet. The principal U.S warehouse locations are as follows:

> (a)  Beginning around May 2024, the website lists principal U.S. warehouse locations of:
>
> > • 2006 Rodman Road Unit A, Wilmington, DE, 19805
> >
> > • 5125 Calmview Ave, Baldwin Park, CA 91706
>
> (b)  Around February 2024, the listed addresses were:
>
> > • 2006 Rodman Road Unit A, Wilmington, DE, 19805
> >
> > • 1216 E Cypress St, Covina, CA, 91724
>
> (c)  Around April 2023, the listed addresses were:
>
> > • 16010 Phoenix Dr, City of Industry CA 91745
> >
> > • 2006 Rodman Road Unit A, Wilmington, DE, 19805
> >
> > • 3025 BOWLARAMA DR, NEW CASTLE, DE 19726

**B.**  **11172 Amarillo St, Rancho Cucamonga, CA 91701**

66.  The property at 11172 Amarillo St., (Parcel # 1076-562-60), which serves as the Walmart-identified return address for four Fraudulent Sellers (*supra* ¶¶ 37-40), is a single-family residential unit owned by "Lily Chen Cheung." Based on corporate filing information and

---

[24] https://www.haiwaicang.com/about.html (last accessed 9.9.24)
[25] https://www.beianx.cn/company/1405561700983377920 (last accessed 9.9.24)

Experian credit data, there are four business entities that are associated with this location: "Buyhub Inc.,[26]" "Bentensh Beauty LP[27]," "Lily's Kaleidoscope Trading Inc."[28] and "U Plus Services".[29]

**C.**   **19919 Talbot Rd, Renton, WA 98055**

67.   The property at 19919 Talbot Rd., (Parcel # 794100-0310) which serves as the Walmart-identified return address for two Fraudulent Sellers (*supra* ¶¶ 42-43) is a single-family residential unit owned by "Haiying Zhou" ("Hai Ying Zhou"). Based on corporate filing information and Experian credit data, the only business associated with this location was "Wholesale Massage Supplies LLC" (WA 604917227), administratively dissolved October 3, 2023. Wholesale Massage Supplies was owned by "Yingfei Zhang."

**D.**   **3608 Meadowlark St, El Monte, CA 91732**

68.   The property at 3608 Meadowlark St., (Parcel # 8549-044-022) which serves as the Walmart-identified return address for one Fraudulent Sellers (*supra* ¶ 41) is a single-family residential unit owned by "Cui Haicheng" and "Bai Yu." Based on corporate filing information and Experian credit data, there is one business entity associated with this location: "LIGHTNING TRADING INC." (CA 5411356).[30]

---

[26] Buyhub Inc. (CA 4718490) is a California stock corporation with Lily Chen Cheung listed as registered agent and officer. Historical agents include "Weichun Cheng," and "Li Huaiguo."
[27] Bentensh Beauty LP (CA 202461607547) is a California limited partnership owned by Lily Chen Cheung. The company lacks any Experian data and has no online presence whatsoever.
[28] Lily's Kaleidoscope Trading Inc. (CA 5854720) is a California stock corporation owned and operated by Lily Chen Cheung. Although listed as an "e-commerce" business, Lily's Kaleidoscope has no discernible online presence.
[29] U Plus Services (CA 4142766) was also terminated on or around June 15, 2021. Its historical registered agents and officers include "Lily Chen Cheung," "Thomas Lu," "Chun Xiu Xie," and "Yum Fan Zhang." "Lily Chen Cheung" is listed as CEO of "WHC America Trading Inc." U Plus Services and WHC America Trading Inc have no discernible online presence.
[30] Lighting Trading Inc. (CA 5411356) is a California stock corporation, incorporated January 3, 2023, with Bai Yu listed as registered agent and officer. The agent address listed for Bai Yu is: 333 W Garvey Ave Num 1056, Monterey Park, CA 91754.

E.      **Great E-World Trading Limited**

69.     Walmart seller "GREAT E-WORLD TRADING LIMITED" (Seller Number 101174224). https://www.walmart.com/seller/101174224 (last visited 9.9.2024), has been listing Plaintiff Artistic Industries' inventory for sale since prior to October 2023.

70.     On its Walmart Seller StoreFront, GREAT E-WORLD's address is listed as 135-45 Roosevelt Ave, 23P, Flushing, NY 11354.

71.     That same Flushing NY address is identified by the Nevada Secretary of State as the address for "Decai 'Tony' Fu.  (NV File # E20333362022-5). Decai Fu is the registered agent and officer for "MyDepot Inc.," now known as "Qianya Inc.", which is registered at 1800 Peachtree St NW, Suite 410, Atlanta, GA 30309. (GA File # 5371329) (CA File # 22142477).

72.     1800 Peachtree St. NW, Suite 410 is also the principal address for WHC America Trading Inc." (WHC) (GA File # 20251544), whose CEO is Lily Chen Cheung, and who is associated with 11172 Amarillo St, Rancho Cucamonga, CA 91701. *See* fns. 26-29.

IV.     **JURISDICTION AND VENUE**

73.     Plaintiffs bring this action pursuant to RICO, 18 U.S.C. § 1964(c), which confers jurisdiction upon this Court over the subject matter of this action. The Court also has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States.

74.     The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, at least one of the class members is a citizen of a state different from at least one of the Defendants. This Court has supplemental

jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

75.    This Court may properly exercise personal jurisdiction over Walmart.com USA, LLC because it conducts significant business in Delaware. This Court may also properly exercise personal jurisdiction over Walmart, Inc. because Walmart, Inc. is incorporated in the State of Delaware. Walmart Defendants conduct significant business in all states through Walmart Marketplace, Walmart's online eCommerce business and Walmart.com.

76.    This Court may properly exercise personal jurisdiction over Fraudulent Seller Defendants because they conduct substantial business within this District and in the United States. Each of the Fraudulent Seller Defendants directly target business activities towards the Amazon Merchants and consumers in each state in the United States, including in Delaware, through their establishment, operation of, or assistance in the operation of, the online Walmart Marketplace Accounts identified herein, the placement of the Fraudulent Amazon Orders, the placement of the Fraudulent Refund Requests, and the Fraudulent Product Return. The Fraudulent Seller Defendants are engaging in interstate commerce. A substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

77.    Venue is proper in this forum pursuant to U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District and Walmart Defendants transact business within this District and are subject to personal jurisdiction within this District.

78.    Venue is also proper under 28 U.S.C. § 1391(c) because Fraudulent Seller Defendants are not resident in the United States and may be sued in this District.

V.   **GLOSSARY OF TERMS**

79.   The following capitalized terms are defined here and used herein:

(a)   "**Amazon Merchants**" or "**Class Members**": persons and entities who, since January 1, 2021, have been merchants selling products on Amazon.com as an AZ Fulfilled by Merchant Seller.

(b)   "**A-to-z Guarantee**" and "**A-to-z Claim**": Amazon's A-to-z Guarantee program is for situations where a customer never received a product or received a product that is materially different from what was ordered or expected. Amazon asks customers to first contact the seller when they have a problem. If the customer isn't satisfied, after 48 hours they can file an A-to-z claim. When Amazon receives the claim, Amazon sends the seller an email detailing the claim and requesting basic information about the order and the fulfillment process. Amazon will then determine how the claim will be settled, which may include reimbursement of the order to the customer at the seller's expense.[31] Customers may file A-to-z claims up to 90 days after the maximum estimated delivery date.

(c)   "**AZ Fulfilled by Merchant**" or "**FBM**": A method of selling on Amazon by which a seller lists their products on Amazon, but manages all storage, shipping, and customer support themselves (or through another third party). This is also referred to as a Merchant Fulfilled Network or MFN.

(d)   "**Brand"**: The name, term, design or other feature that distinguishes one seller's product from others.

---

[31] https://sell.amazon.com/learn (last visited 9.9.24)

(e)      "**Fulfillment by Amazon**" or "**FBA**": A method of selling on Amazon by which the Amazon merchant stores their products in Amazon's fulfillment centers, and Amazon picks, packs, ships, and provides customer service for those products.

(f)      "**Product ID**": Product IDs are unique codes assigned to every item sold. "Walmart uses Product IDs to identify an item, determine if it is sold elsewhere, and establish a supply chain from different suppliers." [32]

(g)      "**Product Page**": Each individual product offered for sale and sold in the Walmart Marketplace gets a page on which information about the product appears, and through which Walmart and the Fraudulent Seller offer and complete the sale of the product. Here is an example of the Product Page for a product being sold by EasyHousewares:



---

[32] https://itemmanager.helpdocs.io/article/6umpoiszgr-product-identifiers-new-catalog#:~:text=Product%20Identifiers%20(IDs)%20are%20unique,will%20see%20in%20Item%20360. (last accessed 9.12.2024).



**About this item**

Product details                                                                                    ⌃

Our backwash hose reel eliminates the tedious job of coiling up your hose. Reels and unreels to full length in seconds. Stores backwash hose neatly. When all is done, just pick up the reel and put it in storage! Holds up to 100' of 1½" backwash hose or electric extension cord.

HetayC Swimming Pool Backwash Discharge Hose Reel

ⓘ **We aim to show you accurate product information.** Manufacturers, suppliers and others provide what you see here, and we have not verified it. See our disclaimer

Specifications                                                                                     ⌃

**Features**
Tangle Resistant

**Brand**
Hetayc

**Manufacturer**
Hetayc

Warranty                                                                                           ⌃

**Warranty information**
Please be aware that the warranty terms on items offered for sale by third party Marketplace sellers may differ from those displayed in this section (if any). To confirm warranty terms on an item offered for sale by a third party Marketplace seller, please use the 'Contact seller' feature on the third party Marketplace seller's information page and request the item's warranty terms prior to purchase.



🏪  Sold and shipped by **EasyHousewares**

★★★★☆  22 seller reviews
View seller information

🔵  Free 30-day returns  Details

https://www.walmart.com/ip/HetayC-Swimming-Pool-Backwash-Discharge-Hose-Reel/2771064524?athcpid=2771064524&athpgid=sellerpage_2158216988&athcgid=null&athznid=mtsi&athieid=v0&athstid=CS020&athguid=J2VlFKMAut1mcLYKrlJDkGc8RYEQwbywHFXa&athancid=null&athena=true&selectedSellerId=1012851417 (last visited 9.9.2024)[33]

---

[33] This product is being sold for $32.92 on Amazon as of 8.29.2024 with the same picture and descriptions but under a different, established brand name (not HetayC) and only by an FBM Amazon Merchant that has a readily ascertainable internet presence (unlike "EasyHousewares" or TaiYuanHaoTingDianZiShangWuYouXianGongSi).

(h)    "**Seller StoreFront**": Page that each seller on Walmart Marketplace has that contains the seller's business name, contact information, and a link to "Shop all seller items" which directs a user to the catalog of products being sold by the Fraudulent Seller. Here is an example of the information on the Walmart Seller StoreFront for EasyHousewares:



(i)        "**Seller Catalog**": Walmart maintains for each seller on Walmart Marketplace, accessible through the "Shop all seller items" link on the Seller Page, a page or URL that aggregates and lists the items Walmart's database indicates are associated with or being sold by the seller on Walmart Marketplace.  On this page, in addition to seeing the items and number of items, a user can identify and sort the items by various metrics including Brand and speed of delivery.  This is an example of the Seller Catalog for The Tech Loft at https://www.walmart.com/global/seller/101662905 (last visited 9.9.2024)



(j)        "**Seller Number**": Each seller on Walmart Marketplace has a seller number assigned to the seller. It is reflected in the URL that appears on the Seller StoreFront and Product pages.  For example, as shown above in the Screenshot in ¶79(h), EasyHousewares's Seller Number is 101285417.

(k)        "**UPC" and "GTIN"**: UPC stands for Universal Product Code, which is encoded with a series of numbers known as the GTIN, which makes up a complete barcode. Each product sold should have a unique UPC in order to keep track of items sold.

(l)     **"Walmart App"**: Walmart's mobile application. Consumers may shop for products sold by third-parties in the Walmart Marketplace using Walmart's mobile application which is available for both iPhone and Android devices.

(m)     "**Walmart Marketplace**": Walmart's U.S. eCommerce platform (also called Marketplace) that allows businesses to list and sell products on and through Walmart.com and on the Walmart App.

## VI.   FACTUAL ALLEGATIONS

### 1.      The Walmart Marketplace

#### A.      Walmart's Need and Motivation to Compete in the Online Retail Space

80.     Founded in 1962 and incorporated as a public company in 1969, Walmart quickly became one of the country's most profitable retailers. Walmart opened its first Supercenter in 1988, combining its traditional retail environment with a grocery store. By the late-1990s, it had become the world's largest private employer and was widely recognized as America's largest, most dominant retailer.

81.     Walmart is the largest corporation in the world by revenue.[34] Most recently, Walmart reported $648 billion in revenue in its 2024 SEC filing.[35]

82.     Walmart was accustomed to holding "top-dog" status in American and global retail. After outperforming Sears and other department stores in the decades after its incorporation, it seemed impossible to dethrone. However, its overwhelming success was predicated on brick-and-mortar retail maintaining status as the primary method by which people shop.

---

[34] https://www.investopedia.com/biggest-companies-in-the-world-by-market-cap-5212784 (last accessed 9.9.24)
[35] Walmart's 2024 Form 10-K page 54. Walmart's fiscal year begins on February 1 and ends on January 31.

83.     Though Walmart was the undisputed champion of retail through the 20th century, new technology brought new challenges. With the rise of online retail, also known as eCommerce, customers drifted away from traditional brick-and-mortar stores and landed in the online retail marketplace. Some sources predict that eCommerce will make up a quarter of total global retail sales by 2027.[36]

84.     In 2021, Amazon did what had previously seemed insurmountable – it out-sold Walmart, further evidencing the landmark shift from brick-and-mortar retail to online retail. Amazon's resounding success came from its dedication to fully utilizing the eCommerce space, taking advantage of the Internet to boost sales and profits.[37]

85.     "'It is a historic moment,' said Juozas Kaziukenas, founder of the Marketplace Pulse, a research company. 'Walmart has been around for so long, and now Amazon comes around with a different model and replaces them as a No. 1.'"[38]

86.     By the end of 2021, Amazon captured 41 cents of every dollar spent online in the United States, while Walmart's share was less than seven cents.[39] Amazon was crushing Walmart in the online retail space. Amazon's transformation and growth into online, eCommerce retail fundamentally altered the landscape of consumer purchasing.

87.     To compete, Walmart had to change the way it did business.

---

[36] https://www.bigcommerce.com/articles/ecommerce/ last accessed 9/9/2024
[37] https://www.nytimes.com/2021/08/17/technology/amazon-walmart.html?searchResultPosition=47 (last accessed 9.9.24)
[38] *Id*.
[39] https://www.nytimes.com/2021/08/17/technology/amazon-walmart.html (last accessed 9.10.2024)

**B.     The Walmart Marketplace -- Walmart's Third-Party eCommerce Platform**

88.     Walmart began selling products online on Walmart.com in 2000.[40]

89.     Walmart introduced its online third-party seller platform, known as the Walmart Marketplace, in 2009.[41] The Marketplace allows third-party sellers and vendors to sell their products online through the Walmart website and Walmart mobile application.

90.     The Marketplace division within Walmart eCommerce focused on sales made by third-party sellers on Walmart.com. This included identifying, recruiting, and contracting with third-party sellers, onboarding them to sell their merchandise on Walmart.com, and assessing and managing the sellers' and the customers' experiences on Walmart.com.

91.     Walmart's CEO acknowledged during a February 22, 2011 fourth quarter fiscal year 2011 earnings call that he "expect[ed] eCommerce and multi-channel to play an increasingly important role across [Walmart's] business."   Yet, according to Michael Trembley, a Walmart.com, Inc. employee from January 2005 through March 2018 in its eCommerce organization, Walmart Marketplace had just 2,000 third-party sellers by the end of 2016.[42]

92.     To address its struggles of attracting both legitimate sellers of quality products and customers, Walmart acquired online Walmart Marketplace competitor Jet.com in or around September 2016 for approximately $3 billion in cash and $300 million in Walmart shares, and Walmart's eCommerce underwent a significant reorganization[43]. On May 19, 2020, Walmart

---

[40] https://www.marketplacepulse.com/articles/the-evolution-of-walmart (last accessed 9.9.24)
[41] https://www.pymnts.com/news/retail/2023/walmart-hopes-third-party-marketplace-will-snag-holiday-spend-from-amazon/ (last accessed 9.10.2024).
[42] Declaration of Michael Trembley, Dkt. 117 in *Huynh v Wal-Mart Stores, Inc. et al,* Case No. 3:18-cv-01631 (USDC N.D. Cal)
[43] *Id.*; https://corporate.walmart.com/news/2016/08/08/walmart-agrees-to-acquire-jet-com-one-of-the-fastest-growing-e-commerce-companies-in-the-u-s  (last visited 9.9.2024

quietly announced as part of its first quarter fiscal year 2021 results that it would be discontinuing Jet.com.[44]

93.     By 2021, Walmart recognized that the "failure to execute" its eCommerce strategy could "adversely affect" its "market position, net sales, and financial performance".[45] To try to address that, Walmart's CEO Doug McMillon stated that when it came to Walmart's eCommerce strategy "our mindset is an aggressive mindset" and "we want to drive this eCommerce business and the marketplace that goes with it as aggressively as we can."[46]  Indeed, Walmart U.S. eCommerce CEO Marc Lore emphasizes that the marketplace is "accelerating faster than the overall first-party business".[47]

94.     Walmart's need to grow the Marketplace and, in particular, to increase the number of third-party sellers on the Walmart Marketplace platform was top-priority. During Walmart's earnings call for the third quarter of fiscal year 2021, Walmart's CEO characterized Walmart as "just getting started" in the eCommerce space.[48]

95.     Walmart issued a press release in the second quarter of fiscal year 2022 boasting that it had added "thousands of new sellers to [its] marketplace"[49] and on that quarter's earnings call, the CEO told investors that the online SKU count (a good proxy for the number of items listed on the marketplace) had grown by 30%.[50]  In the third quarter of the same fiscal year, 21 million

---

[44] https://d18rn0p25nwr6d.cloudfront.net/CIK-0000104169/7ddb74cd-9e5c-4254-8cfc-25c6e9ef2656.pdf  (last visited 9.9.2024).
[45] Walmart's 2021 Form 10-K at page 16.
[46] https://s201.q4cdn.com/262069030/files/doc_financials/2021/q1/1Q21-TRANSCRIPT.pdf (last accessed 9.10.2024)
[47] Id.
[48] https://s201.q4cdn.com/262069030/files/doc_financials/2021/q3/3Q21-TRANSCRIPT.pdf (last accessed 9.10.2024)
[49] https://s201.q4cdn.com/262069030/files/doc_financials/2022/q2/2Q22-PR.pdf ] (last accessed 9.9.24)
[50] https://s201.q4cdn.com/262069030/files/doc_financials/2022/q2/2Q22-Transcript.pdf  (last

new items were added to the Marketplace.[51]  By the fourth quarter in fiscal year 2022, 20 thousand new sellers were added to the marketplace, there were nearly 170 million SKUs on the platform, and Walmart opened its eCommerce platform to international third-party businesses.[52]

96.     Walmart's CEO again underscored the importance of the marketplace, stating that "growing the eCommerce marketplace and [Walmart Fulfillment Services] have been a priority over the last couple of years" and that the way the Marketplace has been designed will allow the company to "grow earnings and grow the bottom line".[53]

97.     Walmart's eCommerce business was expanding fast. By the second quarter of fiscal year 2023, Walmart had "over 240 million items in [its] US eCommerce assortment" and the "marketplace seller count" had increased 60 percent over the year.[54]

98.     One of the three primary talking points at the earnings call for the third quarter of the same fiscal year was prioritizing eCommerce growth in order to buttress retail.[55] In one quarter, the seller numbers increased by 20 percent and the number of SKUs increased by 50 percent.[56] Walmart's focus on international third-party sellers and outreach to new sellers was beginning to pay off.  The increase in seller numbers continued to be a talking point throughout the investor call.

accessed 9.9.24)
[51] https://s201.q4cdn.com/262069030/files/doc_financials/2022/q3/3Q22-Transcript.pdf  (last accessed 9.9.24)
[52] https://s201.q4cdn.com/262069030/files/doc_financials/2022/q4/4Q22-Transcript.pdf  (last accessed 9.9.24)
[53] *Id.*
[54] https://s201.q4cdn.com/262069030/files/doc_financials/2023/q2/CORRECTED-TRANSCRIPT-vf_-Walmart,-Inc.(WMT-US),-Q2-2023-Earnings-Call,-16-August-2022-8_00-AM-EST.pdf (last accessed 9.10.2024)
[55] https://s201.q4cdn.com/262069030/files/doc_financials/2023/q3/CORRECTED-TRANSCRIPT_-Walmart,-Inc.(WMT-US),-Q3-2023-Earnings-Call,-15-November-2022-8_00-AM-ET.pdf  (last accessed 9.9.24)
[56] *Id.*

99.     By the fourth quarter of fiscal year 2023, Walmart's Chief Financial Officer John David referred to the Walmart Marketplace as the "linchpin" for Walmart's eCommerce success due to the ability to sell third-party goods.[57]

100.    Indeed, Walmart's CEO Doug McMillon acknowledged in a 2024 interview that the company did not take e-commerce "seriously enough" at the turn of the century.[58]

### C.     How Did Walmart Fuel the Growth of the Walmart Marketplace?

101.    Walmart began an initiative to attract non-U.S. merchants to its Marketplace in early 2021 in an attempt to combat mounting competitive pressure from Amazon.[59] After over a decade requiring third-party sellers on Walmart Marketplace to be registered in the United States, Walmart opened its Marketplace to foreign sellers.[60]

102.    Walmart's move was branded as "an attempt to close the e-commerce gap with Amazon.com Inc. and tap into China's vast network of manufacturers,". [61] Yet, its shift temporally coincided with an exodus of China-based sellers from the Amazon platform in 2021. In 2021, Amazon kicked off tens of thousands of China-based merchants from its platform for faking or paying for customer reviews.[62] By some estimates, as many as 50,000 China-based sellers were

---

[57] https://s201.q4cdn.com/262069030/files/doc_financials/2023/q4/CORRECTED-TRANSCRIPT_-Walmart,-Inc.(WMT-US),-Q4-2023-Earnings-Call,-21-February-2023-8_00-AM-ET-vf.pdf (last accessed 9.11.2024).

[58] https://stratechery.com/2024/an-interview-with-walmart-ceo-doug-mcmillon-about-omnichannel-retail/#journey (last accessed 9.9.24)

[59] https://web.archive.org/web/20220217122015mp_/https://www.bloomberg.com/news/articles/2021-03-18/walmart-opens-marketplace-to-non-u-s-vendors-in-strategy-shift (last accessed 9.9.24)

[60] https://www.marketplacepulse.com/articles/chinese-sellers-on-walmart-marketplace (last visited 9.9.2024).

[61] *Id*.

[62] https://web.archive.org/web/20220217061511mp_/https://www.bloomberg.com/news/articles/2021-08-18/amazon-amzn-cracks-down-on-fake-reviews-hitting-chinese-retailers (last accessed 9.9.24)

removed from Amazon's eCommerce platform, including sellers who offered bribes or free gifts to purchasers in exchange for positive reviews on Amazon's website.

103.     Walmart's campaign, which included hosting annual seller summits in China,[63] was successful in increasing the number of third-party sellers, and in particular China-based sellers, on Walmart Marketplace.   According to Marketplace Pulse, within the first year of opening the Marketplace to international sellers, Walmart added nearly 10,000 third-party merchants from China. *Id.* Virtually all of the non-U.S. merchants added to Walmart's e-commerce platform from March 2021 to January 2022 were China-based merchants and these offshore merchants equaled 14% of all new merchants that were added to Walmart's Marketplace platform in that period. *Id.*

104.     In recent quarters, Walmart's formula for increasing its Marketplace revenue and market share has become even more reliant on onboarding China-based sellers.  By April 2024, 73% of new active sellers on the Walmart Marketplace were based in China.[64]  This represented a significant dependence on China-based sellers as is evident by comparing the following year-over-year statistic: in April 2023, new U.S.-based sellers represented 91% of the total new sellers on Walmart Marketplace; in April 2024, new U.S.-based sellers constituted only 23% of the total new sellers.  The reason was a massive increase in new sellers from China.  (Sellers from other countries -- Vietnam, India, Canada and the United Kingdom -- represent a small number of new sellers.)[65] In February 2024, Walmart launched a Chinese-language version of the seller central dashboard and started allowing sellers to submit support cases in Chinese.

---

[63] https://www.marketplacepulse.com/articles/chinese-sellers-on-walmart-marketplace (last visited 9.9.2024).
[64] https://www.marketplacepulse.com/articles/walmart-turns-to-china-to-grow-marketplace (last accessed 9.11.2024)
[65] *Id.*

105.    There is continued motivation and need by Walmart to grow the Marketplace. According to eMarketer and Marketplace Pulse projections, Amazon will achieve $325 Billion in sales in 2024.[66] This amount in sales is driven by Amazon third-party sellers only and does not include sales by Amazon as a retailer.[67] In contrast, Walmart is only a $10 Billion marketplace in 2024 (fiscal 2025 for Walmart), if one only considers third-party sales since 90% of Walmart's e-Commerce Marketplace sales are its own retail sales.[68]

106.    As Walmart's Marketplace has always lagged and continues to lag far behind Amazon as a third-party eCommerce retail platform, Walmart remains disincentivized to implement proper and adequate policies, procedures and controls over all aspects of its third-party-sellers' use of the Walmart Marketplace, beginning with the onboarding process through all operational stages.

   **2.    Walmart's Public Representations About its Third-Party Sellers Are Belied By Walmart's Systemic Failures in the Onboarding Process**

107.    Walmart publicly represents that only "qualified businesses" sell on Walmart Marketplace. For example,

       (a)    Walmart represents that "only qualified businesses can sell on Walmart Marketplace"[69]

       (b)    Walmart advertises: "So, what is Walmart Marketplace, and why is it a trusted place to sell? Walmart Marketplace is a community of established, professional

---

[66] https://www.marketplacepulse.com/articles/top-5-e-commerce-marketplaces-in-2024 (last accessed 9.11.2024)

[67] *Id.*

[68] *Id.*

[69] *See* https://www.walmart.com/help/article/marketplace-sellers-on-walmart/33258c6228d94acbbcbdaf6b7b0b616b (last visited 9.9.2024)

sellers whose high-quality assortments complement the first-party offerings on Walmart.com."[70]

    (c)    Walmart represents that its "selection process looks at the seller's…Catalog...Operations…[and] Other business information." [71]

    (d)    Walmart represents that its shipping policy requirements (referenced *supra*) are "[t]o provide a consistent shipping experience for customers …"

108.    Walmart also publicly touts that it maintains written agreements with its third-party sellers on Walmart Marketplace, which are titled "Comprehensive Walmart Marketplace Program Retailer Agreement" (the "Retailer Agreement").  The Retailer Agreement includes the following pertinent provisions:

    (a)    *A "Legal Right to Sell" the product on Walmart Marketplace.* Third-party sellers "may sell a Product on Walmart.com through the Marketplace" only if they "are an authorized reseller of that Product, or purchased or otherwise legally acquired that Product from an authorized reseller of that Product, or otherwise have a legal right to sell that Product."  Likewise, the Retailer Agreement maintains that Walmart can request "documentation (e.g. email verifications from the brand owner or supplier) showing you have a legal right to sell the Products…"

    (b)    *Accurate Product Information.* "All information you provide about the Product will be accurate, current, and complete and not misleading, deceptive, or fraudulent in any way."

    (c)    *Inventory Feed.* "You will provide Walmart.com with a daily inventory feed for all Products."

    (d)    *Audit Rights.* Among other things, "Upon Walmart.com's request" sellers must provide "documentation (e.g. email verifications from the brand owner or supplier) showing that [the seller] has a legal right to sell the Products through the Walmart.com Sites."

---

[70] https://marketplace.walmart.com/guide-to-walmart-marketplace/  (last visited 9.9.2024)
[71]*See* https://www.walmart.com/help/article/marketplace-sellers-on-walmart/33258c6228d94acbbcbdaf6b7b0b616b (last visited 9.9.2024)

109.    Walmart also publicly represents that third-party sellers are required to use 'Tracking numbers" that are "accurate, valid, and only communicated to Walmart once a package has been tendered to the carrier for shipment…" [72]

110.    Walmart further publicly represents that third-party sellers are **"prohibited"** from doing exactly what the Fraudulent Sellers are doing on the Walmart Marketplace.  Specifically, Walmart states that third party sellers "**may not purchase products from another retailer and have the order shipped directly to a Walmart customer**."[73]

111.    Walmart makes these statements because it is legally obligated that its Marketplace to operate in accordance with the INFORM Act and needs to be perceived by customers as a safe and credible online retail platform to purchase products. Customers do not want to be placing orders on the Marketplace from third-party sellers who: are engaging in fraud; are not selling real products; are not authorized to sell the listed products; cannot deliver the purchased products; or, cannot respond to and address any issues with the purchased products. Likewise, it would be troublesome for Walmart to have its Marketplace perceived as stealing sales and customers from legitimate e-Commerce merchants, and unfairly, competitively disadvantaging and harming them, by fraudulent third-party sellers operating on Walmart Marketplace.

112.    However, the reality is that distinctly *un*qualified businesses operate on Walmart Marketplace. Walmart makes it remarkably easy to become a seller on its Marketplace platform. As it advertises, it has "made getting started with Walmart simple and easy".[74]

---

[72] https://sellerhelp.walmart.com/seller/s/guide?language=en_US&article=000007893 (last visited 9.9.2024).
[73] *Id.*
[74] https://marketplace.walmart.com/about-walmart-marketplace/, last accessed 9/9/2024

113.    The following are Walmart's qualifications for becoming a third-party seller on the Walmart Marketplace:[75]

        (a)    Business Tax ID(s) (SSN not accepted) or Business License Number;

        (b)    Supporting documents that verify your Business Name and Address;

        (c)    History of Walmart Marketplace or eCommerce success;

        (d)    Products have GTIN/UPC GS1 Company Prefix Numbers;

        (e)    Catalog that complies with Walmart's Prohibited Products Policy

        (f)    Fulfillment through Walmart Fulfillment Services (WFS) or another B2C US warehouse with returns capability

114.    After a prospective seller submits this information, verification may take as little as a few minutes.[76]

115.    After a seller is verified, they must choose a method to receive payment from customers as well as shipping and return methods. Walmart has approved a range of return shipping methods for merchants, but all must provide a United States-based return address. Sellers "must set up [their] return center details in Seller Center with a valid U.S. return address".[77] Beyond the return address, sellers are not required to have any connection to the United States in order to set up their account.

116.    Yet, despite the Fraudulent Sellers' inability to meet the foregoing qualifications, Walmart authorizes and permits Fraudulent Sellers to appear and operate on Walmart Marketplace.

117.    The Fraudulent Sellers effortlessly sign up and/or appear as sellers on Walmart Marketplace, operating extensive Product Pages, despite having no indicia of legitimacy, including

---

[75] *Id.*

[76] https://www.youtube.com/watch?v=o6NQRmNjPKo Last accessed 9/9/2024

[77] https://sellerhelp.walmart.com/s/guide?article=000008176&language=en_US last accessed 9/9/2024

no other internet retail or eCommerce history or presence, or proof of having any inventory to fulfill orders.

118.    The Fraudulent Sellers are not authorized to, nor have the legal right to, sell the products they list on their Seller StoreFronts or Product Pages. They are not authorized resellers of the products, they do not have documentation showing an agreement with the Plaintiffs concerning the sale of Plaintiffs' products, and they have not legally acquired the goods they are selling.

119.    The Fraudulent Sellers do not have an agreement with Plaintiffs and Amazon Merchants to sell or re-sell, by drop-shipping[78] or other means, the Plaintiffs' and Amazon Merchants' products that they list and purport to sell on the Product Pages.

120.    The Fraudulent Sellers do not maintain inventory, through distribution agreements or otherwise, for the products they list and purport to sell on the Product Pages. They are, instead, using the Plaintiffs and Amazon Merchants to supply the inventory by virtue of placing the Fraudulent Amazon Orders.

121.    The Fraudulent Sellers also flagrantly do what Walmart claims is "prohibited" on Walmart Marketplace, as they purchase "products from another retailer and have the order shipped directly to a Walmart customer."

122.    The Fraudulent Sellers are instantaneously creating Fraudulent, Deceptive and Anticompetitive Postings and Offers to Sell on Walmart Marketplace and deploying Seller StoreFronts and Product Pages on Walmart Marketplace that have thousands of unrelated products.

---

[78] Dropshipping is a business model where an online seller partners with a supplier that handles the storage, packaging, and shipping of the purchases that are made on the online seller stores. *See* Chart: "How does dropshipping work?" at https://www.shopify.com/ph/blog/what-is-dropshipping  (last accessed 9.11.2024).

Walmart permits and facilitates such conduct by allowing the Fraudulent Sellers to bulk-import listings from other online marketplace storefronts, including Amazon.[79]

123.    Walmart is not effectively utilizing any reasonable sanity check to determine whether the Fraudulent Seller is also selling the product on any other eCommerce platform, including Amazon, or in any brick-and-mortar retail environment. This means that Fraudulent Sellers only need to access a storefront on Amazon—which is publicly available—in order to list the same items instantaneously on Walmart (despite not actually having authorized access to sell the products).

124.    Given the continued and pervasive operations of the ORC and the Fraudulent Sellers on Walmart Marketplace:

(a)    Walmart intentionally or recklessly fails to implement its own procedures and policies;

(b)    Walmart's policies and procedures are inadequate;

(c)    Walmart negligently, recklessly, or internationally fails to identify that the Fraudulent Sellers' information and documents provided are not authentic;

(d)    Walmart's implementation of measures to verify the accuracy and authenticity of the Fraudulent Sellers' information and documents are inadequate or non-existent;

(e)    Walmart knowingly or recklessly permits the Fraudulent Sellers to establish and use various aliases as Walmart Marketplace sellers, and operate the StoreFronts, Seller Catalogs and Product Pages on Walmart Marketplace under those aliases. Walmart does this by permitting one or more of the Fraudulent Sellers to provide the foregoing

---

[79] https://www.youtube.com/watch?v=Jwn_Fx7hLwA (last accessed 9.9.24)

documentation and information that is then used to create the Fraudulent Seller StoreFronts, Seller Catalogs, and Product Pages on Walmart Marketplace. The true identity of the "seller" is thereby concealed from the public behind the aliases, but known to Walmart; and

(f)    Walmart knowingly or recklessly permits Fraudulent Sellers to establish and operate the StoreFronts, Seller Catalogs and Product Pages on Walmart Marketplace not based on their own qualifications and documentation but that of one or more of the Does 25-35 Conspiratorial Defendants. The identities of the Does 25-25 Conspiratorial Defendants are concealed from the public, but known to Walmart.

**3.    Walmart Realizes Significant Financial Benefits From The ORC**

125.    Having the Fraudulent Sellers operate on Walmart Marketplace derives significant monetary benefits for Walmart.

126.    Walmart receives a referral fee from each completed purchase on Walmart Marketplace.  The referral fee is deducted from each completed purchase.  The referral fee rate varies by category and total sales price but ranges from 6% to 15%.[80]  Therefore, the more sellers and the more products they list and, then, sell, on Walmart Marketplace, the more in referral fee revenue Walmart generates.  As of Walmart's first quarter 2025, specifically in the U.S., Walmart increased the number of Walmart Marketplace sellers by 36% for the quarter, and had a SKU count sitting at more than 420 million.[81]

127.    Also, the financial benefit to Walmart of more sellers and SKUs on Walmart Marketplace is not just from referral fee revenue on completed purchases. Walmart aggressively

---

[80] https://marketplace.walmart.com/guide-to-walmart-marketplace/ (last visited 9.9.2024)
[81] See https://s201.q4cdn.com/262069030/files/doc_earnings/2025/q1/transcript/Q1-2025-Earnings-Call.pdf  (last accessed 9.9.24)

highlights the importance of just the fact of more sellers, products, and listings on Walmart Marketplace to drive potential customers and "eyeballs" to Walmart Marketplace. The more "eyeballs" looking at the Seller StoreFronts and Product Pages on Walmart Marketplace means more advertising revenue for Walmart. Walmart touted this to investors during its first quarter 2024 earnings call:

> And I want [to] underscore the importance of that, because we've talked so much about the interdependence of these. The more one grows, the more strength it gives to another area, you know, and Marketplace and Walmart Fulfillment Services would be good examples of that, or Marketplace and advertising. **The more eyeballs that [] come shop at our Marketplace, the more advertisers want to spend their dollars there.** And so, the fact that we're seeing growth in these parts of our businesses that are newer than our core retail or brick and mortar business, it's exciting to me. **And they're driving margin to the bottom line.**[82]

128.    Walmart made this same point to investors during its fourth quarter 2023 earnings call:

> **I'd say Marketplace is perhaps the linchpin of all this, because that gives us the ability to sell third-party merchandise** as well as first-party. And just this last quarter, we now have over 400 million SKUs on our Marketplace... But as we get more assortment on the Marketplace, **we get more eyeballs coming to our website, that allows more advertisers or makes advertisers want to spend money there to** – with the larger audience. And this all sort of works together.[83]

129.    In addition, with more sellers and more products, more sales occur on Walmart Marketplace. When Walmart's third-party Marketplace grows, it gains market share from its rivals, including Amazon. During Walmart's second-annual seller summit in San Francisco held on

---

[82] See https://s201.q4cdn.com/262069030/files/doc_earnings/2025/q1/transcript/fy2025-q1-earnings-buyside-follow-up-call-transcript.pdf  (last accessed 9.9.24)

[83] See https://s201.q4cdn.com/262069030/files/doc_financials/2023/q4/CORRECTED-TRANSCRIPT_-Walmart,-Inc.(WMT-US),-Q4-2023-Earnings-Call,-21-February-2023-8_00-AM-ET-vf.pdf  (last visited 9.9.2024)

August 27, 2024, Walmart announced that it expects its eCommerce business to be profitable within

the next two years, and emphasized its significant growth:

> Walmart Marketplace has achieved more than 30% sales growth in each of the past four quarters and is significantly driving the retailer's sustained eCommerce success. Walmart's [ ] U.S. eCommerce business has delivered double digit growth for six consecutive quarters. …The number of sellers listing items on Walmart.com grew 20% last fiscal year.[84]

130.    The following Yahoo Finance chart depicts how **since 2021** Walmart's eCommerce

growth has, in stark contrast to prior years, outpaced Amazon's, as well as other eCommerce rivals

Costco and Target.[85]



---

[84] https://corporate.walmart.com/news/2024/08/27/walmart-marketplace-accelerates-growth-launches-category-expansion-multichannel-solutions-and-omnichannel-innovations-for-sellers (last visited 9.9.2024)

[85] https://finance.yahoo.com/news/walmart-is-winning-over-investors-but-its-growth-story-relies-on-three-key-e-commerce-initiatives-211101127.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAFTOfOMzfjROLB_tl9j0k4UT0Br9R1DV_LHTFK9j4oVj4zRNZhKnRfN0Nl9Qfw89eDTB19z9XM49nBxWd-uV-b2_etXdtrqP9BdRC12oH5U_49ad_MKfRhbivd1Uc7XPNHvAC9APYsWajaMct4E7r46m4vAdOcWHenSMJT4X46MQ  (last visited 9.9.2024)

131.     Such results have driven Walmart's share price up since January 2021 to over $75 per share as of September 5, 2024. Walmart did a 3:1 stock split in February 2024. Its stock closed at almost $176 on Friday, February 23, 2024 the day before the split, and was trading near $60 per share immediately post-split (as of February 28, 2024).[86]



4.     **How Fraudulent Sellers and Conspiratorial Defendants Use and Operate on Walmart Marketplace**

132.     Walmart's concentration on attracting foreign sellers to Walmart Marketplace resulted in a striking shift in the demographics of its Marketplace. Walmart's open-door policies regarding new third-party sellers, as well as its failure to monitor who is actually using Walmart Marketplace, have allowed the Fraudulent Sellers to populate its Marketplace and use the Marketplace to effectuate the ORC.

---

[86] https://www.forbes.com/sites/greatspeculations/2024/02/29/where-is-walmart-stock-headed-post-stock-split/ (last visited 9.9.2024)

A.    **The Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell**

133.    Walmart affords each Fraudulent Seller numerous web pages and locations on Walmart Marketplace to effectuate the ORC, namely: (i) a "Seller StoreFront," which contains the Fraudulent Seller's business name, contact information, and a link to "Shop all seller items"; (ii) a "Seller Catalog" which contains a catalog of products being sold by the Fraudulent Seller, accessible through the "Shop all seller items link"; and (iii) a "Product Page," for each individual product, on which the hijacked and bogus product information appears and through which Walmart and the Fraudulent Seller offer and complete the sale of the products. *See supra* at ¶ 79.

134.    To populate their "Product Pages" (facilitated by Walmart's bulk upload processes, discussed herein), the Fraudulent Sellers hijack from the Amazon Merchants the listing of their products that are being concurrently sold on Amazon.com. The Fraudulent Sellers copy the Amazon Merchants' listings from Amazon, and list the product for a competitive price on the Product Page on Walmart Marketplace. The price will be within a few dollars of the price listed on Amazon, ensuring that a customer on Walmart's platform will not leave the website to purchase the product on another eCommerce platform.

135.    Schedule 2, attached hereto, provides a detailed depiction, through screenshots, of the Fraudulent Sellers' fraudulent Product Pages on Walmart Marketplace and the corresponding product listings by the Amazon Merchants (including certain of the Plaintiffs' listings) on Amazon.com.  Here is one example from Schedule 2:





136.    The Fraudulent Sellers are purposeful in the Amazon Merchants they target.  The

victimized Amazon Merchants are small businesses who control the fulfillment of the orders

placed with them on Amazon.com (*i.e.* they are "fulfilled by merchant" or "FBM" Amazon

Merchants, in contrast to Amazon Merchants who use Amazon to fulfill their orders (*i.e.* "fulfilled

by Amazon", or "FBA" merchants)). By selecting FBM Amazon Merchants, who fulfill their own

orders rather than having Amazon fulfill their orders (a service that is comparatively costly), the

Fraudulent Sellers are aware that challenges to non-delivery refund requests by the legitimate

Amazon Merchants will likely fail because of the A-to-z Claim and Guarantee policies (*see supra* ¶79(b)) governing FBM Amazon Merchants.

137.    The Fraudulent Sellers are purposeful in the products sold by the Amazon Merchant that they list for sale on Walmart Marketplace as part of the ORC. The products targeted are typically not major, widespread, or well-known brands or trademarked products, and typically created, manufactured, and/or sold by one or just a few authorized small business sellers. This keeps the ORC from being detected by large retailers and manufacturers who deploy their significant resources to identify fraudulent sales of their products on the internet.[87] *See infra* ¶ 169.

138.    Also, by selecting products with relatively few legitimate Amazon sales outlets, the likelihood is that the Fraudulent Seller will attract unsuspecting consumers to their fraudulent Walmart Seller Catalogs, StoreFronts and Product Pages by advertising a price that is the same or just slightly below the Amazon Merchants' prices.  The Fraudulent Sellers can charge the same or lower price than the Amazon Merchants because they have garnered ill-gotten proceeds through the ORC and the Fraudulent Refund Request.

139.    Plaintiffs', their counsels', and their consultants' investigation confirmed that there are thousands of Product Pages of the Fraudulent Sellers and other third-party sellers on Walmart Marketplace that correspond with and have been hijacked from Amazon Merchants and meet the

---

[87] *See e.g.* https://businesslawtoday.org/2014/07/dealing-with-unauthorized-online-dealers-sales-of-genuine-products/ (last accessed 9.9.24)   ("The sale by unauthorized dealers of "genuine" goods poses the greatest legal challenge to makers of well-known brands."); https://grayfalkon.com/effective-strategies-for-removing-unauthorized-sellers-from-online-marketplaces/(last accessed 9.9.24)  ; https://www.redpoints.com/blog/identify-and-stop-unauthorized-sellers/(last accessed 9.9.24)  ; Gray-Market Blues: How Businesses Can Prevent Unauthorized Product Sales: https://www.supplychainbrain.com/blogs/1-think-tank/post/35445-gray-market-blues-how-businesses-can-prevent-unauthorized-product-sales (last accessed 9.9.24)

characteristics of the ORC and Fraudulent Sellers, as alleged herein. For examples, *see* Schedule 2.

140.    Further, upon information and belief, the Fraudulent Seller Defendants and Does 25-35 Conspiratorial Defendants regularly create new Seller StoreFronts, Seller Catalogs, and Product Pages on Walmart Marketplace, using the identities set forth in ¶¶ 30-59, as well as fictitious identities and identities that are known or knowable to Walmart.  Such pattern is a tactic used by the Fraudulent Seller Defendants and Does 25-35 Conspiratorial Defendants to conceal from the Amazon Merchants: the ORC participants' identities; the full scope and interworking of their ORC operations; the Fraudulent, Deceptive and Anticompetitive Postings and Offers to Sell; the Fraudulent Amazon Orders; the Fraudulent Refund Requests; and the Fraudulent Refund Returns.

### B.    Each Fraudulent Seller Lists Hundreds of Unrelated Products on Walmart Marketplace

141.    The Fraudulent Sellers are permitted by Walmart to easily establish Seller StoreFronts and Seller Catalogs consisting of (i) hundreds of products and (ii) hundreds of *unrelated* products. The Fraudulent Sellers bulk copy and paste to their Seller StoreFronts and Seller Catalogs wide swaths of product listings appearing on the Amazon Merchants' storefronts using and matching ASINs (Amazon Standard Identification Numbers).  There are even YouTube videos instructing how such product hijacking is permitted by Walmart with the click of a key:

- *Add Listings to Walmart with One Click: Import Items from Amazon, eBay, Shopify and More- https://www.youtube.com/watch?v=h_lczuu8Gws*
- *Walmart Seller Academy: Item Setup: Single Items- https://www.youtube.com/watch?v=-e61QFVnx-Y*
- *How to Add Product Listings to Walmart from Amazon in 3 minutes- https://www.youtube.com/watch?v=Jwn_Fx7hLwA*

**C.    The Fraudulent Sellers Frequently Alter Their Product Offerings and Rotate Active StoreFronts**

142.    The Fraudulent Sellers also significantly and frequently alter their product offerings and rotate active StoreFronts. Such conduct is transparently, *atypical* of a legitimate merchant.

143.    StoreFronts belonging to Fraudulent Sellers are often taken down on Walmart.com. This may take the form of either the page no longer existing (such as is the case with Defendant Doe 1, Walmart Seller "Pengxichengqikeji", for example) or the entirety of the Fraudulent Seller's inventory being listed as "out of stock" (such as Defendant guangzhoucunbeimaoyiyouxiangongsi, for example). Some Fraudulent Sellers may take down their page after being confronted by an Amazon Merchant. Due to the ease of creating a new account and importing large swaths of products (*see supra* ¶ 141, *see infra* ¶ 146), Fraudulent Sellers are able to quickly repopulate a new storefront and continue the ORC using a new name. This process causes little disruption to the activities of the ORC but makes it impracticable for the average Legitimate Amazon Merchant to identify and try to prevent the Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell by the Fraudulent Sellers on Walmart Marketplace and the Fraudulent Amazon Orders, and to respond to the Fraudulent Refund Requests. Essentially, legitimate sellers are playing a non-stop game of Whack-A-Mole if they attempt to confront the fraudsters on their own.

144.    Additionally, Fraudulent Sellers constantly rotate the products available on active StoreFronts, making it prohibitively difficult for Amazon Merchants to track where their Product Listings are being hijacked. By way of example, over the course of just two weeks, Defendant guangzhoucunbeimaoyiyouxiangongsi added nearly 19 thousand products to its Seller Catalog. *See infra* ¶ 33.

**D.      The Fraudulent Sellers Use Fake Brands and Product IDs on Walmart Marketplace**

145.     The Fraudulent Sellers use Brands and Product IDs on Walmart Marketplace that are discernably fake, wrong, and different from the actual Brand of the product the Fraudulent Sellers are order from and have the Amazon Merchant ship to the Legitimate Walmart Customer.

146.     Utilizing an Excel spreadsheet template provided by Walmart, the Fraudulent Sellers can efficiently import for their fraudulent Seller StoreFronts and Product Pages large swaths of product listings, including new, unverified, products under newly created, unverified, fake Brands and Product IDs.

147.     Walmart is not verifying or monitoring the authenticity of the Brands and Product IDs provided. Instead, Walmart states in its Seller Help guide[88] that, "If your item does not have a Product ID, never create a fake one."  That type of honor system, self-monitoring is futile and promotes fraud.

148.     TEVIROOM,[89] Cintbllter,[90] Hetayc,[91] and NIKOZQ[92] are just four examples of the fake Brands the Fraudulent Sellers are flagrantly and deceptively using on Walmart Marketplace. As demonstrated in Table A, below, each "Brand" has products listed in virtually every product category on Walmart.com.

149.     A simple check using information that is within Walmart's control would reveal that these Brands are illegitimate. Walmart should be suspicious of Brands that encompass

---

[88] https://sellerhelp.walmart.com/seller/s/guide?article=000009166&language=en_US (last accessed 9.9.24)
[89] https://www.walmart.com/browse/0?facet=brand:TeviRoom (last accessed 9.9.24)
[90] https://www.walmart.com/browse/0?facet=brand:Cintbllter (last accessed 9.9.24)
[91] https://www.walmart.com/browse/0?facet=brand:Hetayc (last accessed 9.9.24)
[92] https://www.walmart.com/browse/0?facet=brand:NIKOZQ (last accessed 9.9.24)

products in all or nearly all available product categories. Walmart should be suspicious of Brands that are not registered with the USPTO, as it claims they must be.[93]

**TABLE A**

| Department | TeviRoom Items[94] | Cintbllter Items | Hetayc Items | NIKOZQ Items |
|---|---|---|---|---|
| Home | 17,554 | 213 | 2,327 | 750 |
| Music | 876 | 7 | 14 | - |
| Patio & Garden | 8,620 | 270 | 1,312 | 13 |
| Musical Instruments | 851 | 3 | 10 | - |
| Home Improvement | 8,778 | 320 | 1,885 | 105 |
| Seasonal | 4,791 | 35 | 383 | 28 |
| Beauty | 7,082 | 6 | 32 | 4 |
| Gifts & Registry | 1,060 | 5 | 64 | 2 |
| Household Essentials | 1,556 | 46 | 388 | 89 |
| Party & Occasions | 1,262 | 4 | 107 | 40 |
| Electronics | 2,181 | 13 | 188 | 5 |
| Sports & Outdoors | 8,770 | 60 | 637 | 10 |
| Toys | 1,599 | 9 | 92 | 9 |
| Baby | 69 | 2 | 9 | - |
| Clothing, Shoes & Accessories | 3,235 | 16 | 121 | 22 |
| Pets | 5,242 | 6 | 38 | 4 |
| Auto & Tires | 5,430 | 93 | 769 | 82 |
| Food | 2,053 | 3 | 26 | 13 |
| Health and Medicine | 6,489 | 24 | 415 | 11 |
| Personal Care | 3,402 | 8 | 90 | - |
| Subscriptions | 7,816 | 80 | 367 | 52 |
| Office Supplies | 7,723 | 35 | 824 | 62 |
| Industrial & Scientific | 1,011 | 3 | 102 | 6 |
| Arts, Crafts & Sewing | 1,555 | 23 | 181 | 153 |
| Feature | 791 | 4 | 137 | 1 |

---

[93] https://marketplace.walmart.com/brand-portal/ (last accessed 9.10.2024).
[94] The only one of the four with a trademark, TEVIROOM (assigned Serial Number #97388920 by the United States Patent and Trademark Office (USPTO)), encompasses lighting products only.

| Department | TeviRoom Items[94] | Cintbllter Items | Hetayc Items | NIKOZQ Items |
|---|---|---|---|---|
| Services | 1,854 | 7 | 172 | 14 |
| Cell Phones | 37 | 2 | 4 | 4 |
| Video Games | 14 | - | 3 | 3 |
| Jewelry & Watches | 495 | 2 | 27 | 14 |
| Books | 138 | 1 | 6 | 6 |
| Movies & TV Shows | 15 | - | - | - |
| Photo Center | 794 | 2 | 108 | 12 |
| Shop with Purpose | 878 | 7 | 80 | 2 |
| Collectibles | 63 | 4 | 6 | - |
| Character Shop | 19 | - | 3 | - |
| Shop by Movie | 12 | - | 5 | - |
| Shop by Brand | 10 | - | 2 | 4 |
| Shop by TV Show | 5 | - | 1 | - |
| Shop by Video Game | 3 | - | - | - |

### E.    The Fraudulent Sellers Use Walmart's Buy Box to Perpetuate the ORC

150.    Fraudulent Sellers use variable pricing to take control of the "Buy Box" on Walmart Marketplace. On Walmart Marketplace, the seller with the lowest price for a product, if there are multiple sellers for the product, will be the seller that has its product listing page displayed. Therefore, a Legitimate Walmart Customer will purchase from that "Buy Box" seller if they add a product to their shopping cart from the product listing page. To purchase from another seller, the customer would need to take extra steps. Therefore, by displaying a lower price for the product, even by a penny, Fraudulent Sellers utilize Walmart's "Buy Box" system to drive traffic to their listing to secure the purchase from the Legitimate Walmart Customer.

151.    Listing a product for sale at a lower price than the Amazon Merchant (*see e.g.* Schedule 1, depicting the Fraudulent Sellers' Product Pages on Walmart Marketplace and the corresponding Amazon listing for the same product), drives customer traffic to Walmart

Marketplace. When a potential customer searches for an item on a search engine such as Google, the Walmart Product Pages will appear, displaying the lower price than the Amazon price, and customers will flock towards the lower cost item. The Amazon Merchants thereby lose sales to the Fraudulent Sellers who have falsely listed their products for a price that undercuts the Amazon Merchants as part of the ORC.

> **F. The Fraudulent Sellers Use Tracking Information to Perpetuate the ORC**

152.     Walmart has access to the tracking information for all products sold on its Marketplace. There are several red flags surrounding the Fraudulent Sellers' use of tracking information that did or should alert Walmart to the ORC, and in particular the use of Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell by the Fraudulent Sellers on Walmart Marketplace. Fraudulent Sellers reuse tracking numbers for multiple separate orders, which indicates they have not in fact paid for shipping for all orders. *See infra* ¶¶239, 250-51, 262-62. Not only have they failed to pay shipping for all orders placed, different Fraudulent Sellers have provided the same tracking number (*see id*), further confirming that the ORC is not comprised of individual actors, but, instead, concerted, organized efforts by a sophisticated entity. Fraudulent Sellers provide false tracking information *See infra* ¶286. Even when a Fraudulent Seller provides a legitimate tracking number that it received from an Amazon Merchant through a Fraudulent Amazon Order, Walmart knows or should know that the tracking number shows a point of origin different from any address information the Fraudulent Seller provides to Walmart. *See infra* ¶¶558, 561.

153.     Walmart has access to the tracking information provided by its sellers, including tracking numbers. With the tracking information in its possession, Walmart can identify and monitor whether the sellers are improperly reusing tracking numbers across purchases, whether

tracking numbers are actually legitimate, and whether tracking information matches addresses and other business information given by the third-party sellers to Walmart during enrollment.

### G.    Legitimate Walmart Customers are Exploited by Defendants

154.    Vital to the ORC is a Purchase by a Legitimate Walmart Customer on Walmart Marketplace of one of the products listed by the Fraudulent Sellers.

155.    Walmart and the Fraudulent Sellers use unsuspecting, Legitimate Walmart Customers to effectuate the ORC and ultimately victimize the Amazon Merchants.

156.    Legitimate Walmart Customers are directed to Walmart Marketplace by, among other things, Walmart's extensive internet advertising and promotion of Walmart Marketplace and the products listed for sale.

157.    Not only does Walmart advertise on search engines such as Google, it offers additional visibility for Brands (including fraudulent Brands) through internal advertising.[95] Walmart boasts "measurable success" for Brands using its services "Brand Shop" and "Brand Shelf". Walmart states that users may "combine the power of a Brand Shop and campaign performance metrics to identify additional optimization opportunities that can drive awareness, consideration and purchase decisions." "Campaign performance metrics" refer to advertising campaigns that are paid for by third-party sellers on Walmart.com.[96] Essentially, the owner of a Brand, no matter how fraudulent, may increase visibility to customers by paying for an advertising campaign.

158.    The exploitation of Legitimate Walmart Customers begins at the point they observe Fraudulent Sellers' StoreFronts and Product Pages on the Walmart Marketplace and they are

---

[95] https://www.walmartconnect.com/brand-shop (last accessed 9.11.2024)
[96] https://marketplace.walmart.com/seller-academy/campaigns-ads/ (last accessed 9.11.2024).

invited to place orders on the Marketplace believing they are dealing with legitimate merchants, when, in fact, they have unwittingly initiated a transaction with Fraudulent Sellers who will place and fulfill that order from legitimate Amazon Merchants, and further, the Legitimate Walmart Customer's order and personal contact information are used in many instances to carry out a fraudulent and criminal scheme employing the Fraudulent Refund Requests and Fraudulent Product Returns.

159.    The Legitimate Walmart Customer has provided Walmart and the Fraudulent Seller with their name and personal contact information.  The Legitimate Walmart Customer's name and personal contact information are then misappropriated and used by the Fraudulent Seller to place the Fraudulent Amazon Order with the Amazon Merchant.

### 5.    The Fraudulent Amazon Orders

160.    After the unsuspecting Legitimate Walmart Customer places her order on Walmart Marketplace, the Fraudulent Seller and/or Does 25-35 Conspiratorial Defendants

(a)    receive the order from Walmart, and

(b)    place an order for the same product with the Amazon Merchant on Amazon.com, whose Amazon listing the Fraudulent Seller had hijacked and posted on Walmart Marketplace.

161.    When the Fraudulent Seller and/or Does 25-35 Conspiratorial Defendants place the order with the Amazon Merchant on Amazon.com, the Fraudulent Seller uses some or all of the Walmart customer's personal name and shipping information.

162.    At that point, the Amazon Merchant is unaware that the order is part of the ORC. The Amazon Merchant fulfills the order and ships the product to the Legitimate Walmart Customer.

163.    The Amazon Merchant provides the Fraudulent Seller and/or Does 25-35 Conspiratorial Defendants, who are falsely posing as an Amazon buyer, with the tracking information for the shipped product.

164.    In turn, the Fraudulent Seller takes that tracking information and provides it to the Legitimate Walmart Customer through Walmart Marketplace.

165.    The foregoing is described and demonstrated in detail in the Plaintiffs' experiences and test purchases alleged in Section 8, *infra* at ¶¶ 199-542.

**6.    The Fraudulent Refund Requests**

166.    The Fraudulent Seller and/or Does 25-35 Conspiratorial Defendants know that the product was shipped by the Amazon Merchant and received by the Legitimate Walmart Customer because they have the tracking information.

167.    Nevertheless, as part of the ORC, after the product is delivered to the Legitimate Walmart Customer, the Fraudulent Seller and/or Does 25-35 Conspiratorial Defendants contact the Amazon Merchant via Amazon.com and:

(a)    falsely state that the product was not delivered, and

(b)    request a monetary refund from the Amazon Merchant.

168.    After the Fraudulent Seller falsely asserts to the Amazon Merchant that the product was never delivered, they begin an A-to-z Claim. Online marketplaces are inclined not to lose customers, so often the terms for granting a refund for non-delivery are customer-friendly and almost always approved.

169.    Accordingly, by targeting and victimizing Amazon Merchants who are FBM Amazon Merchants, the Fraudulent Sellers exploit the Amazon A-to-z Guarantee and A-to-z Claim

process, whereby the FBM Amazon Merchants are required to refund buyers for reportedly undelivered items purchased directly from them on Amazon.com.

170.    The Fraudulent Seller gets the full amount of the purchase price, having stolen the product from the Amazon Merchant. The Amazon Merchant is out the product and the shipping costs of sending the order to the Legitimate Walmart Customer. The Amazon Merchant has also expended time in providing and shipping the product and lost the original sale and the profit therefrom.

171.    There are several unifying features of these Fraudulent Refund Requests. For example, the communications from the Fraudulent Seller: (i) are often identical or substantially similar, despite being purchased from different Amazon accounts; (ii) are written in idiosyncratic English and often contain language not heard in common parlance; (iii) always indicate that the package was never delivered (the necessary condition to securing a Fraudulent Refund); and (iv) are sent soon after the Amazon Merchants effect delivery to the Legitimate Walmart Merchant.

172.    As demonstrated here in ¶¶ 173-190 and in Schedule 3, hereto, multiple, unrelated Amazon Merchants were receiving identical and substantially similar messages claiming (falsely) non-delivery of products. Despite the geographical and transactional separation (*i.e.* these messages are from purportedly different Amazon "customers", who are located in various parts of the country, who had purchased different products, and done some over time), the consistency in the messaging points to a coordinated effort of submitting Fraudulent Refund Requests as part of the ORC as a systemic scheme:

(a)    **Message: "I truly not received the order, amazon"**

173.    On September 3, 2023, Plaintiff Regency Cosmetics received the following Fraudulent Refund Request from "Daniel" who had ordered "3 Bottles of Jade East After Shave 4

Oz" which Plaintiff Regency Cosmetics had shipped to a customer named "Harry" (Schedule 3 Row 11):

> "I truly not received the order, amazon. I tried to contact the seller but not worked out so that I want to contact amazon to solve out the matter. The reason is that I believe amazon will be in justice to handle and take care of the feeling of every customer and reduce their loss. If I still not receive the refund through amazon, I will be so upset and please work it out for me, many thanks as a loyalty customer."

174.    This identical message was received again by Amazon Merchants: (i) on March 1, 2024 from "Guenevere" (Schedule 3 at Row # 41); and (ii) on July 5, 2024 from "Susie" (*id.* at Row # 73).  In addition, the identical message was used in connection with the June 30, 2024 test purchase by counsel of Plaintiff Regency Cosmetics' "Jade East After Shave for Men 4oz, 3 Bottles" via the Fraudulent Seller Defendant's StoreFront named "xiangpiaopiaodedian." *See* ¶¶ 385-399.  Specifically, on July 12, 2024, the Fraudulent Seller Defendant sent Plaintiff Regency Cosmetics the Fraudulent Refund Request (using counsel's name) with the identical message (*see id.* at Row # 76).

### (b)  Message: "though it shows delivered but i still haven't received it."

175.    On December 18, 2023, Regency Cosmetics received the following Fraudulent Refund Request from "Omega," who had ordered "Jade East After Shave for Men -4oz each - 3 Bottles" which Plaintiff Regency Cosmetics had shipped to a customer named "Patricia" (Schedule 3 Row # 18):

> "though it shows delivered but i still haven't received it. It must have been sent to the wrong person or stolen. i checked everywhere it may have be delivered, also I asked the persons who live around me and confirmed with my family for the parcel of the order. The result was nothing I found out. I wasted so long time for this matter. I don't want to wait anymore. please refund."

176.     This identical message was received again by Amazon Merchants: (i) on January 17, 2024, from "Tim" (Schedule 3 at Row # 28); and (ii) on February 27, 2024 from "Guenevere," (*id.* at Row # 40).  In addition, the identical message (*see id.* at Row # 80) was used in connection with the June 30, 2024 test purchase by counsel of "Jade East After Shave for Men 4oz, 3 Bottles" via the Fraudulent Seller Defendant's StoreFront named "LuckyJiang." *See infra* ¶¶ 400-11.

### (c)  Message: "what's wrong with my order?"

177.     On August 25, 2023, Plaintiff Regency Cosmetics received the following Fraudulent Refund Request from "Daniel," who had ordered "3 Bottles of Jade East After Shave 4 Oz" which Plaintiff Regency Cosmetics had shipped to a customer named "Harry" (See Schedule 3 Row # 10):

> "what's wrong with my order? i checked everywhere it may have been delivered, but the result is nothing I found out. i don't want to wait anymore, Please refund. i will appreciate your service here!"

178.     This identical message was received again by Plaintiff Regency Cosmetics: (i) on October 27, 2023, from "Dan" for product shipped to "William" (Schedule 3 at Row # 12); (ii) on December 14, 2023, from "Omega" for product shipped to "Patricia" (*id.* at Row # 17); and, (iii) on December 30, 2023, from "Katie" for product shipped to "Sandra" (*id.* at Row 25).

179.     And, this identical message was received by another Amazon Merchant: (i) on February 25, 2024 from "Guenevere" for product shipped to "Tamika D." (Schedule 3 at Row # 39); and (ii) on June 29, 2024 from "Susie" (*id.* at Row # 71).

180.     Further, in early 2024, a Reddit user with the username "harleybootsy" recounted their experience of being subjected to numerous fraudulent refund requests for orders fulfilled through their Amazon storefront. "Harleybootsy" provided a detailed account that mirrors the experiences of the named plaintiffs, describing a scam that they believe originated from

Walmart.com and dates back to at least August 2023. In their post, they specifically cite this same message—used by "Daniel," "Dan," "Omega," "Katie," "Guenevere," and "Susie." *See infra* ¶¶538-539.

### (d) Message: "I want to got my money back ."

181.    On July 7, 2024, Plaintiff Artistic Industries received a Fraudulent Refund Request from a Fraudulent Seller in connection with a June 22, 2024 test purchase by counsel of "ULTRACAL 30 Gypsum Cement - 25 LBS - Mold Making and Casting Plaster, Ideal for Latex Molds! Takes Excellent Detail," via the Fraudulent Seller StoreFront named "EasyHousewares" (*see infra* ¶¶ 327-342). Plaintiff Artistic Industries received the following message as part of the Fraudulent Refund Request (Schedule 3 at Row # 66):

> "Hello, I would like to know why the goods I ordered have not been received yet. I want to got my money back ."

182.    Indeed, just days earlier on July 4, 2024 another Amazon Merchant had received the identical message as part of a suspected Fraudulent Refund Request from "mary." (Schedule 3 at Row #70).

### (e) Message: "I looked around my house and asked my neighbors"

183.    On February 20, 2024, Artistic Industries received the following Fraudulent Refund Request from "Burnell Rutherford" for an order of "USG HYDROSTONE TB 10 lb Bag - Gypsum Cement - Extremely Hard, High Compressive Strength, Fine Detail" which Plaintiff Artistic Industries had shipped to a customer named "John G." who had placed the order via the Fraudulent Seller StoreFront on Walmart Marketplace named "shengyang Zhou". *See infra* ¶¶ 294-311; Schedule 3 Row # 37:

> "Hello, I haven't received this package yet. I've **looked** all over my house, but I can't find it. My neighbors haven't seen the package either. I don't know what happened in **the middle**. But I am

disappointed with the result, I want my money back now, please *fix it*."

184.    On July 12, 2024, Plaintiff Artistic Industries received a nearly identical message in connection with a June 22, 2024 test purchase by counsel of "ULTRACAL 30 Gypsum Cement - 25 LBS - Mold Making and Casting Plaster, Ideal for Latex Molds! Takes Excellent Detail" placed with the Fraudulent Seller StoreFront named "EasyHousewares" *See infra* ¶¶ 327-342. The Fraudulent Refund Request contained some slight variations in wording that appear to be due to the same message being translated using a more up-to-date translation application. The message stated:

> "Hello, I have not received this package. I've *searched* all over my house but I *just* can't find it. My neighbors haven't seen the package either. I don't know what happened *in between*. But I am *very* disappointed with the result and I want my money back now, please *solve this problem*."

(Schedule 3 Row # 67).

185.    On June 29, 2024, and July 15, 2024, an Amazon Merchant received another nearly identical version of this message in two separate A-to-z Claims (*see* Schedule 3 at Row # 110; 111):

> "Hello, I have not received this package. I looked around my house and asked my neighbors but I can't find anything. So I tried everything but I just can't find the package. In this case, I would like to ask you to help me. I want my money back."

### (f)  Message: "I did what you asked me to do"

186.    On July 16, 2024, Plaintiff Longstem Organizers received the following Fraudulent Refund Request from "Py Lam" for an order of "Longstem Organizers Men's Hanging Tie Organizer Rack Over The Door/Wall, Closet # 9300 in White 43 Hooks for Men's Organization-

Patented" which Plaintiff Longstem Organizers had shipped to a customer named "Cornelia P."

*See infra ¶¶* 422-431. The message stated:

> I did what you asked me to do before I contacted you. I have been patiently waiting
> for your package until now. I asked around and confirmed with my family that they
> hadn't seen my package either. Now the end result is that I can't find anything. I've
> wasted too much time on this, so the only thing I want is a refund.

(Schedule 3 Row #98)

187.   Plaintiff EZ-Step Mobility received the identical message for six orders placed in

July and August of 2024. *See infra ¶¶* 470-78, 488-95, 496-504, 505-13, 514-22, 530-37; *see also*

Schedule 3 Rows #86, 89, 92, 95, 102, 105.

188.   [INTENTIONALLY OMITTED]

189.   [INTENTIONALLY OMITTED]

190.   [INTENTIONALLY OMITTED]

191.   The foregoing Fraudulent Refund Requests are also described and demonstrated in

detail in the Plaintiffs' experiences and test purchases alleged in Section 8, *infra* at ¶¶ 200-540.

**7.   Fraudulent Product Returns**

192.   Legitimate Walmart Customers may seek to return the products purchased via

Walmart Marketplace from the Fraudulent Sellers.  The returned products, however, are not

shipped back to the Amazon Merchant. Instead, they are shipped to the Fraudulent Seller and/or

Does 25-35 Conspiratorial Defendants.

193.   If Legitimate Walmart Customers initiate returns on Walmart Marketplace with the

Fraudulent Sellers, the Legitimate Walmart Customers will receive a shipping label to place on

the return delivery. The shipping label has a tracking number and a return address.

194.   The return address for the Fraudulent Sellers are not the same as the return address

for the Amazon Merchant who supplied the product.

98

195.    Instead, the Fraudulent Sellers use four (or more) US-based return addresses, which are supplied on the return shipping labels by Walmart to the Legitimate Walmart Customers.

196.    The unsuspecting Legitimate Walmart Customers package the product and ship it to the Fraudulent Sellers.

197.    The Fraudulent Seller and/or Does 25-35 Conspiratorial Defendants commit fraud and conversion when they maintain possession of the returned products.  Having made the Fraudulent Refund Request, the Fraudulent Seller and/or Does 25-35 Conspiratorial Defendants never paid for the returned products and now have physical possession of the ill-gotten goods.

198.    Upon information and belief, the Fraudulent Seller and/or Does 25-35 Conspiratorial Defendants directly or indirectly operate or associate with brick-and-mortar "overstock" or "bin stores" in which hundreds of the returned products are offered for resale.

199.    The foregoing Fraudulent Product Returns and the fraudulent resale of the returned products are also described and demonstrated in detail in the Plaintiffs' experiences and test purchases alleged in Section 8, *infra* at ¶¶ 200-549.

**8.    The Plaintiffs Established the ORC's Operation**

200.    Mr. Simister, owner of Plaintiff Artistic Industries, in his efforts to uncover the origins of the ORC, conducted a test to validate his theory that products sold by his company on Amazon's platform were listed by suspected fraudster "merchants" on Walmart's platform, and that these suspected fraudsters would fill any order they received (including an order made by or at the direction of Mr. Simister) on Walmart Marketplace by purchasing the product from Mr. Simister's legitimate Amazon storefront.

201.    Mr. Simister's method of testing this theory, coined **test purchases**, involves the Amazon Merchant placing an order on Walmart Marketplace with a suspected Fraudulent Seller

99

selling the Amazon Merchant's product, and verifying if, as expected, an order for the product is placed with the Amazon Merchant on Amazon with matching customer and shipping information.

202.    Through this process, the ORC was confirmed in all respects, including that the Fraudulent Sellers did not possess actual inventory of the products, were operating false and deceptive Seller StoreFronts, Seller Catalogs, and Product Pages on Walmart Marketplace, were initiating Fraudulent Amazon Orders, and were claiming non-delivery of the product and making Fraudulent Refund Requests. Also, through the Fraudulent Product Returns, a U.S.-based return address could be obtained from Walmart for the Fraudulent Seller.

203.    Commonalities and associations among various Fraudulent Sellers and Does 25-35 Conspiratorial Defendants were also identified and confirmed through the test purchases.

204.    The following describes instances where named plaintiffs have (1) conducted their own test purchases, either independently or with counsel; (2) identified fraudulent transactions wherein it was confirmed that the Legitimate Walmart Customer had ordered the product on Walmart Marketplace and received the product from the Plaintiff, contrary to the Fraudulent Sellers' Fraudulent Refund Requests; and/or (3) based upon information and belief been subjected to a Fraudulent Refund Request.

### A.    Plaintiff Artistic Industries' Test Purchases & Verified Fraud Orders

### 1.    Fraudulent Seller StoreFront Named "onenbary"

205.    On July 5, 2022, Artistic Industries received an order through its Amazon storefront for its "40 Lbs ULTRACAL 30 Gypsum Cement – Plaster – for Moldmaking and Casting, Ideal for Latex Molds! Takes Excellent Detail," Amazon Order # 112-6809459-6863458, for $66.90. The Fraudulent Seller placed the Amazon order under the name "tho9m," but requested that Artistic Industries deliver the package to "Christine F." in Missouri.

206.    On July 6, 2022, Artistic Industries shipped the package to Christine F. utilizing USPS with tracking (9405536202361517679337).

207.    On July 10, 2022, Artistic Industries was notified by USPS that the package was delivered to Christine F.

208.    On July 23, 2022 Artistic Industries received a message from "tho9m" through Amazon requesting a refund because the package was purportedly not delivered.  The message had similar characteristics and wording to prior messages Artistic Industries had received reporting that his shipments were undelivered, despite Artistic Industries having record of the packages being delivered.  The message from "tho9m" stated: "It says delivered but I didn't receive.Refund pls."

209.    On or around July 29, 2022, Mr. Simister contacted Christine F. directly to confirm whether she received the Order or made a refund request.

210.    On or around July 29, 2022, Christine F. informed Mr. Simister that she had not placed the order for his product on Amazon.com. Instead, she confirmed that she had purchased the product on Walmart Marketplace, from a Walmart Marketplace merchant named "onenbary," on July 5, 2022, for $79.97 (WM Order # 2000100-46026873).



211. Christine F. offered to initiate a return of the product with Walmart. Upon doing so, she was instructed to ship the product to:

> 2006 RODMAN RD
> WILMINGTON, DE 19805

212. This is a screenshot of the return label from Walmart. Artistic Industries and the Simisters are not associated in any way with 2006 Rodman Rd, Wilmington, DE 19805.



213.    On or around July 26, 2024, Artistic Industries had to refund "tho9m" $66.90 through Amazon.



214.    Artistic Industries never received the returned product and suffered actual monetary losses of the product cost, shipping and handling costs, and profit from the sale.

**2.    Second Fraudulent Amazon Order Through Walmart StoreFront "onenbary"**

215.    On July 11, 2022, Artistic Industries received an order through its Amazon storefront of its "40 Lbs ULTRACAL 30 Gypsum Cement – Plaster – for Moldmaking and Casting, Ideal for Latex Molds! Takes Excellent Detail," Amazon Order # 113-1903089-2210657, for $66.90.  The Fraudulent Seller placed the Amazon order under the name "zhiwei," but the requested the package be delivered to "Ed Y." in Georgia.

216.    On July 12, 2022 Artistic Industries shipped the package to Ed Y. utilizing USPS with tracking (9405536202361539826924).

217.    On July 16, 2022 Artistic Industries was notified by USPS that the package was delivered to Ed Y.

218.    On or around July 25, 2022, Mr. Simister contacted Ed Y. directly to confirm whether he received the Order or made a refund request.

219.    On or around July 25, 2022, Ed Y. informed Mr. Simister that he had not ordered the Artistic Industries' product on Amazon.com. Instead, Ed Y. confirmed that he had purchased the product on Walmart.com, from "onenbary," on July 11, 2022 (WM Order # 2000100-49274404).



220.    Ed Y. offered to initiate a return on Walmart Marketplace. Upon doing so, Ed Y.

was instructed to ship the product to:

2006 RODMAN RD
WILMINGTON, DE 19805



221.     Artistic Industries and the Simisters are not associated in any way with 2006 Rodman Rd, Wilmington, DE 19805.

222.     [INTENTIONALLY OMITTED]

### 3.     Fraudulent Seller StoreFront Named guangzhounuoqikemaoyiyouxiangongsi

223.     On July 26, 2022, Mr. Simister, as a test purchase, purchased "40 Lbs ULTRACAL 30 Gypsum Cement - Plaster - for Moldmaking and Casting, Ideal for Latex Molds! Takes Excellent Detail" for $89.99 on Walmart Marketplace, from Walmart merchant "guangzhounuoqikemaoyiyouxiangongsi."   Mr. Simister placed the order on Walmart Marketplace using his own name and address (WM Order # 2000100-71914343).



224.    On or around July 26, 2022, shortly after Mr. Simister placed the order on Walmart Marketplace, an order for "40 Lbs ULTRACAL 30 Gypsum Cement - Plaster - for Moldmaking and Casting, Ideal for Latex Molds! Takes Excellent Detail" was placed with Artistic Industries through Amazon.com by a Fraudulent Seller under the name "Amy" (AMZ Order # 114-6939876-3153041), but requested the package be delivered to "Michael Simister" at his personal address, which he had used to place the Walmart Marketplace order.



225.    On July 27, 2022, Mr. Simister packaged and shipped via USPS the Amazon order, as he would any other Amazon order.  Mr. Simister also provided, as he would for any Amazon order, the tracking number on the Amazon platform 9205590175547730007863720.

226.    Shortly thereafter, Mr. Simister received through Walmart Marketplace a tracking number for his Walmart.com order. The tracking number Mr. Simister received was the same tracking number that he had generated and provided for the Amazon order (9205590175547730007863720).

227.    On July 31, 2022, the package was delivered to Mr. Simister. The tracking information confirmed that the package was delivered.

228.    On or around August 14, 2022, at 4:37 AM, Artistic Industries received a message from "Amy" through Amazon.com requesting a refund for this Order.  The basis for the refund request was because the package was purportedly not delivered.

229.     The message had similar characteristics to prior messages reporting Artistic Industries' shipment as purportedly undelivered (despite Artistic Industries having record of the packages being delivered).  The message from "Amy" stated: "Refund. I did not get my package."

230.     On August 14, 2022, at 7:57 PM, Mr. Simister responded to "Amy" stating: "Amy, you are scamming me so I have reported you to all of the fraud departments at walmart and amazon as well as a federal investigator with the USPS. please reply with an apology and we can move on."

231.     Mr. Simister initiated a return of the product on Walmart Marketplace with the Walmart merchant "guangzhounuoqikemaoyiyouxiangongsi."  Upon doing so, Mr. Simister was instructed to ship the product to:

2006 RODMAN RD
WILMINGTON, DE 19805

232.     On August 17, 2022, the Amazon customer, "Amy", undaunted by Mr. Simister's August 14 communication, filed for AMZ Order # 114-6939876-3153041 an Amazon A-to-z Claim.



109

233.    On or around August 19, 2022, "Amy," possibly rethinking the implications of Mr. Simister's communication, abandoned the A-to-z Claim, stating: "I travelled and came home. I dont know when my package was delivered and arrived. I found my package in the garden."

234.    The imputed amount of monetary loss, had this not been a test purchase, would have included the cost of the product, shipping and handling costs, and the profit from the sale.

### 4.    Fraudulent Seller StoreFront Named Pengxichengqikeji

235.    Despite his communications to Walmart about the fraudulent listings on Walmart.com (*see infra* ¶¶ 557-60), the Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, the Fraudulent Amazon Orders, and the Fraudulent Refund Requests continued.

236.    On March 17, 2023, Mr. Simister conducted a test purchase on Walmart Marketplace. Mr. Simister purchased "USG Hydrocal White Gypsum Cement - Molding and Casting Both Hollow and Solid (11 lbs)" on Walmart Marketplace from Walmart merchant named "Pengxichengqikeji" for $35.37. (WM Order # 2000109-66661329).

237.    Mr. Simister placed the order on Walmart Marketplace using his personal address but entered the name "Janet Jackson" as the buyer.

238.    On or around March 20, 2023, shortly after placing the Walmart Marketplace order, an order for "USG Hydrocal White Gypsum Cement - Molding and Casting Both Hollow and Solid (11 lbs)" was placed with Artistic Industries by a Fraudulent Seller under the name "Roy" (AMZ Order # 114-0034059-3922679), and "Roy" requested the package be delivered to "Janet Jackson" at Mr. Simister's address, which was the name and address Mr. Simister used when placing the order on Walmart Marketplace.

239.   On March 21, 2023, Mr. Simister packaged and shipped via USPS the Amazon order, as he would any other Amazon order.  Mr. Simister also provided, as he would for any Amazon order, the tracking number on the Amazon platform 9302120111410246392476.

240.   Shortly thereafter, Mr. Simister received through Walmart.com a tracking number for his (a/k/a "Janet Jackson's") Walmart Marketplace order.  The tracking number Mr. Simister received was different than the tracking number he had generated. The tracking number provided by the Walmart Marketplace seller Pengxichengqikeji was a USPS tracking number 9400136206248580682637.



241.   On or around March 24, 2023, at 2:54 AM, Artistic Industries received a message from "Roy" through Amazon.com setting the stage for an A-to-z Claim.

242.   The message had similar characteristics to prior messages reporting Artistic Industries' shipment as purportedly undelivered (despite Artistic Industries having record of the packages being delivered).  The message from "Roy" stated: "Why is it that the tracking number provided to me shows that it has been signed for, but the information also shows that it arrived on March 27, and I have not received the package? What is the situation?"

243.    On or around March 24, 2023, Artistic Industries responded to the message from "Roy" through Amazon.com, stating: "March 27 is in the future so I don't know how that's possible. And you guys don't look at your orders very closely do you. If you spend just a few minutes looking at your orders I think you'll understand what's going on."

244.    On or around March 25, 2023, Mr. Simister received the package addressed to Janet Jackson at his personal address.

245.    On or around April 28, 2023, Mr. Simister initiated a return of the product on Walmart Marketplace with Pengxichengqikeji. Mr. Simister was instructed to return the product to:

2006 RODMAN RD
WILMINGTON, DE 19805



246.    "Roy" ceased to pursue a refund on the order.

247.    The imputed amount of monetary loss, had this not been a test purchase, would have included the cost of the product, shipping and handling costs, and the profit from the sale.

**5.      Fraudulent Seller StoreFront Named Windy Suk Co. Ltd**

248.    On March 20, 2023, Mr. Simister purchased on Walmart Marketplace "Hydrocal Plaster for Scenery, Dioramas and Mold Casting 2 lb Pack Resealable Bag Great for Model Railroads" from Fraudulent Seller "Windy Suk Co. Ltd" for $20.38. (WM Order # 2000108-68176615). Mr. Simister placed the order on Walmart Marketplace using his personal address and entered the name "Janet Jackson" as the buyer.

249.    On or around March 21, 2023, shortly after placing the order on Walmart Marketplace, an order for "Hydrocal Plaster for Scenery, Dioramas and Mold Casting 2 lb Pack Resealable Bag Great for Model Railroads" was placed on Amazon.com with Artistic Industries by the Fraudulent Seller under the name "Janet" (AMZ Order # 111-6590660-7521065). "Janet" requested that the package be delivered to a customer named "Janet Jackson" at Mr. Simister's address, which was the address he used when placing the order on Walmart Marketplace.

250.    On March 21, 2023, Mr. Simister packaged and shipped via USPS the Amazon order, and provided the tracking number on the Amazon platform 9302120111410246378319, as he would for any other order.

251.    Shortly thereafter, Mr. Simister received through Walmart Marketplace a tracking number for his (a/k/a "Janet Jackson's") Walmart.com order.  The tracking number Mr. Simister received was different than the tracking number the Fraudulent Seller shared with him. The tracking number provided by the Walmart.com seller Windy Suk Co. Ltd was a USPS tracking number 9400136206248580682637.

252.    Notably, **that tracking number was the same tracking number** that Mr. Simister had received for his order with "Pengxichengqikeji," placed three days prior (WM Tracking # 9400136206248580682637).



253.    On or around March 25, 2023, Mr. Simister received the package addressed to Janet Jackson at his personal address.

254.    On or around April 18, 2023, at 12:36 AM, Artistic Industries received a message from "Janet" through Amazon.com setting the stage for an A-to-z Claim.

255.    The message had similar characteristics to prior messages reporting Artistic Industries' shipment as purportedly undelivered (despite Artistic Industries having record of the packages being delivered).  The message from "Janet" stated:

> "I did not receive my order, I need a refund from AZ"

256.    On or around April 18, 2023, Artistic Industries responded to the message from "Janet" through Amazon.com, stating:

> "I think you failed to understand that you are dealing with the same person that ordered it. I have contacted walmart and amazon and if you dont drop this and remove the listing, I will be pressing the issue until your account is deactivated. I also know all about your "returns department" location and will contact the authorities. So stop contacting me"

257.    After receiving the package, on or around April 20, 2023 Mike initiated a return on

the Walmart.com order with Windy Suk Co. Ltd., and was given a return address of:

19919 TALBOT RD
RENTON WA 98055

 

258.    On April 24, 2023, "Janet" submitted an A-to-z Claim through Amazon, stating

that the package didn't arrive. Amazon granted the refund April 25, 2024.

259.    The imputed amount of monetary loss, had this not been a test purchase, would

have included the cost of the product, shipping and handling costs, and the profit from the sale.

**6.      Fraudulent Seller StoreFront Named Coey Trading Co. ltd**

260.    On March 20, 2023 Mr. Simister purchased on Walmart.com "USG Hydrocal White Gypsum Cement - Molding and Casting Both Hollow and Solid (11 lbs)" from Walmart merchant "Coey Trading Co. ltd" for $ 35.38 (WM Order # 2000107-15563657). Mr. Simister placed the order on Walmart.com using his own address and entered the name "Janet Jackson" as the buyer.

261.    On or around March 20, 2023, shortly after placing the order on Walmart.com, an order for "USG Hydrocal White Gypsum Cement - Molding and Casting Both Hollow and Solid (11 lbs)" was placed on Amazon.com with Artistic Industries by the Fraudulent Seller under the name "Bobbie" (AMZ Order # 113-7988216-9336200). "Bobbie" requested that the package be delivered to a customer named "Janet Jackson" at Mr. Simister's address, which was the address he used when placing the order on Walmart.com.

262.    On March 21, 2023, Mr. Simister packaged and shipped via USPS the Amazon order, and provided the tracking number on the Amazon platform 9302120111410246400492, as he would for any Amazon order.

263.    Shortly thereafter, Mr. Simister received through Walmart.com a tracking number for his (a/k/a "Janet Jackson's") Walmart.com order.  The tracking number provided to Mr. Simister by Coey Trading Co. ltd was a USPS tracking number 9400136206248580682637.

264.    Notably, again, **this was the same tracking number** Mr. Simister received for his orders placed three days prior with Walmart.com merchants "Pengxichengqikeji" and "Windy Suk Co. Ltd." (WM Tracking # 9400136206248580682637).

116



265.    On or around March 23, 2023, at 5:01 AM, Artistic Industries received a message from "Bobbie" through Amazon.com setting the stage for an A-to-z Claim.

266.    The message had similar characteristics to prior messages reporting Artistic Industries' shipment as purportedly undelivered (despite Artistic Industries having record of the packages being delivered).  The message from "Bobbie" stated:

> "The tracking number shows that the package has been signed for, but I did not receive the package. Is it really delivered? Please refund."

267.    On or around March 23, 2023, Artistic Industries responded to the message from "Bobbie" through Amazon.com, stating:

> "Hi Bobbie! I was very clear in my email to you through Walmart that you were not make any claims here in amazon. I will now be forced to have Walmart close your account and suspend your funds for violating their rules."

268.    On or around March 25, 2023, Mr. Simister received the package addressed to Janet Jackson at his personal address.

269.    On or around March 25, 2023, after receiving the package, Mr. Simister initiated a return on the Walmart order and was given a return address of:

2006 RODMAN RD
WILMINGTON, DE 19805



270.    "Bobbie" ceased pursuing a refund on the order.

271.    The imputed amount of monetary loss, had this not been a test purchase, would have included the cost of the product, shipping and handling costs, and the profit from the sale.

118

### 7.      Fraudulent Seller StoreFront Named Joyfulmart

272.    On June 2, 2023, Artistic Industries received an order on Amazon.com for "Hydro-Stone Plaster for Scenery, Dioramas, Dentistry and Mold Casting, Also Great for Model Railroads & Gaming (50 lb) Ships in Two 25 Pound Boxes" for $97.20 place by the Fraudulent Seller under the name "Somer." "Somer" requested that the package be delivered to a customer named "Jennifer N." (AMZ Order # 112-2005235-0241009).

273.    On or around June 5, 2023, Mr. Simister contacted Jennifer N. directly to confirm whether she placed the order on Amazon.

274.    On or around June 5, 2023, Jennifer N. informed Mr. Simister that she had not placed the order for his product on Amazon.com. Instead, she confirmed that she had actually purchased the product from "Joyfulmart" on Walmart.com for $115.20 on May 31, 2023. (WM Order # 2000109-44305638).

275.    On June 7, 2023, Artistic Industries packaged, shipped using USPS, and provided a tracking number for the order (AMZ Tracking # 9400136106112917948813).

276.    On June 11, 2023 Artistic Industries was notified by USPS that the package was delivered to Jennifer N.

277.    Jennifer N. also informed Mr. Simister that the tracking number she received on Walmart.com was the exact same as the one Artistic Industries had provided to "Somer" via Amazon (WM Tracking # 9400136106112917948813).

278.    Jennifer N. initiated a return of the product with Walmart.com. The return address Jennifer N. provided was, once again:

2006 RODMAN RD
WILMINGTON, DE 19805

119



279.    On or around July 17, 2023, at 4:10 AM, Artistic Industries received a message from "Somer" through Amazon.com setting the stage for an A-to-z Claim. The message from "Somer" stated:

>        "Have you received the return package? If so, please refund."

280.    "Somer's" message indicates they had initiated a return on Amazon, when in fact they had not. Instead, "Jennifer N." had initiated a return on Walmart.com with the Fraudulent Seller.

281.    On or around July 17, 2023, Artistic Industries responded to the message from "Somer" through Amazon.com, stating:

>        "Listen. We both know you are a scammer. Please stop bothering me about
>        it. You know the package hasn't arrived because you never got it. So stop
>        harassing me."

282.     "Somer" stopped pursuing a refund.

283.    [INTENTIONALLY OMITTED]

284.    [INTENTIONALLY OMITTED]

285.    [INTENTIONALLY OMITTED]

**8.    Fraudulent Seller StoreFront Names Weilashi**

286.    On or about April 14, 2024, Mr. Simister purchased "Pottery Plaster, 50 lbs." for $96.69 on Walmart.com from "Weilashi" (WM Order # 2000119-84496751) using the name "Chekyas Elph" and his personal address.

287.    On or about April 14, 2024, shortly after Mr. Simister placed the order on Walmart.com, an order for "Pottery Plaster, 50 lbs." was placed with Artistic Industries by the Fraudulent Seller under the name "Rayford" (AMZ Order # 114-1845665-0438609) and "Rayford" requested the package be delivered to "Checkyas Elph" at the address Mr. Simister provided on Walmart.com.

288.    On or about April 15, 2024, Mr. Simister packaged and shipped via USPS the Amazon order, and provided a USPS tracking number (9302120111141157502899) for the order as he would any other Amazon order.



289.    On or about April 15, 2024, Mr. Simister was given the tracking number "9200190338095944903776" by "Weilashi".

290.    On or about April 21, 2024, Mr. Simister received through Walmart.com a tracking number for the Walmart.com order via the Walmart platform.

291.    The tracking number Mr. Simister received was the same tracking number that Mr. Simister had generated and provided for the Amazon order (930212011141157502899). This second tracking number was different from the tracking number initially provided by the Fraudulent Seller.

292.    On or about April 16, 2024, the package was delivered to Mr. Simister.

293.    On or about April 18, 2024, Artistic Industries received Fraudulent Refund Request from "Rayford" through Amazon.com. The basis for the refund request was because the package was purportedly not delivered.

294.    The message from "Rayford" had similar characteristics to prior messages reporting Artistic Industries' shipment as purportedly undelivered (despite Artistic Industries having record of the packages being delivered).  The message from "Rayford" stated:

> "Dear seller, although the logistics information shows that it has been delivered, I still can't find my package, I would like to know what happened?

295.    On or about April 19, 2024, Mr. Simister replied to "Rayford", stating that a signature had been given upon package receipt.

296.    On or about April 20, 2024, "Rayford" wrote again, stating:

> "I don't know exactly what happened. I looked all around the house for this, and I also went to my neighbor's house. It took me too long! I contacted the logistics company, but they did not give me an accurate reply, but asked me to contact the sender. The service attitude of the logistics company made me very dissatisfied. If you do not believe me, you can contact the police department or the carrier to investigate, I will fully cooperate. But I need to get my refund and I don't want to waste any more time on this! If you still can't handle it for me, I will open the Amazon claim to get my money back. Please reply to me as soon as possible! I'm exhausted right now."

297.    Had this not been a test purchase, the imputed amount of monetary loss, had this not been a test purchase, would have included the cost of the product, shipping and handling costs, and the profit from the sale.

### 9.    Fraudulent Seller StoreFront Named shengyang Zhou

298.    On or around February 4, 2024, "shengyang Zhou" sold six units of plaintiff Artistic Industries' "USG HYDROSTONE TB 10 lb Bag - Gypsum Cement - Extremely Hard, High Compressive Strength, Fine Detail."

299.    As of August 2, 2024, "shengyan Zhou" listed "1000+" items for sale on its



Walmart Storefront, including products of plaintiffs Artistic Industries and Regency Cosmetics.

300.    On February 4, 2024, Artistic Industries received three orders on Amazon.com for two "USG HYDROSTONE TB 10 lb Bag - Gypsum Cement - Extremely Hard, High Compressive Strength, Fine Detail" for $81.70 each order.

301.    The Fraudulent Seller used the following names to place the Fraudulent Amazon Orders: "Burnell Rutherford" (AMZ Order # 114-9412712-1464239); "Moore Mark" (AMZ Order # 114-2046002-8129824); and "Lisa Lilly" (AMZ Order # 113-6723561-7760267). The Fraudulent Seller requested that the packages be delivered to a customer named "John G."

302.    On February 4, 2024, Artistic Industries packaged, shipped using USPS, and provided a tracking number for "Burnell's" order (AMZ Tracking # 9405536106112293043624).

303.    Soon after, Mr. Simister noticed that all three orders were going to the same location. He then packaged "Moore Mark's" and "Lisa Lilly's" together, using the USPS tracking # 9405536106112293043617.

124

304.     On February 8, 2024, Artistic Industries was notified by USPS that the package was delivered to John G., in Florida.

305.     On February 14, 2024, Artistic Industries received a message from "Burnell" through Amazon setting the stage for an A-to-z Claim for non-delivery.

306.     The message had similar characteristics and wording to prior messages Artistic Industries had received reporting that his shipments as undelivered (despite Artistic Industries having record of the packages being delivered).  The message from "Burnell" stated:

> "Corrected sentence: I haven't received the package yet, why does the order show it has been delivered? Is there an error in the order information? Where is my package?"[97]

307.     On February 14, 2024, Artistic Industries received a message from "Lisa" through Amazon, reporting non-delivery.

308.     The message had similar characteristics and wording to prior messages Artistic Industries had received reporting that his shipments as undelivered (despite Artistic Industries having record of the packages being delivered).  The message from "Lisa" stated:

> "Hello, the package shows delivery, I have not received this package, I do not know what happened, asked my family and neighbors said they did not receive."

309.     On February 16, 2024, Artistic Industries received a message from "Burnell" through Amazon making a Fraudulent Refund Request for non-delivery:

> "Hello,I checked the tracking information of this order and it did show delivery, which really bothered me. Neither I nor my family have signed for any packages during this time. As a result, we are confused as to the origin of this package and cannot confirm if anyone has ever signed for it on our behalf. I think it is impossible for this package to reach me again. Therefore, I ask you to give me a refund."

---

[97] The communication began with "Corrected sentence:", signaling that a web-based translation application or software was used to write the message.

310.     "Burnell" then filed an Amazon A-to-z Claim on February 20, 2024, stating:

"Hello, I haven't received this package yet. I've looked all over my house, but I can't find it. My neighbors haven't seen the package either. I don't know what happened in the middle. But I am disappointed with the result, I want my money back now, please fix it."

311.     On or around February 21, 2024, Mr. Simister contacted John G. directly to confirm whether he received the order or made a refund request.

312.     On or around February 23, 2024, John G. informed Mr. Simister that he had not placed the order for his product on Amazon.com. Instead, he confirmed that he had purchased the "USG HYDROSTONE TB 10 lb Bag - Gypsum Cement - Extremely Hard, High Compressive Strength, Fine Detail" from "shengyang Zhou" on Walmart.com for $56.20 each on February 4, 2024. (WM Order # 2000117-98107524).

313.     John G. also informed Mr. Simister that the tracking number he received on Walmart.com was the exact same as the one Artistic Industries had provided to "Moore Mark" and "Lisa Lilly" via Amazon (WM Tracking # 9405536106112293043617).

314.     On February 24, 2024, Artistic Industries had to refund "Burnell" $81.70, through Amazon.

315.     Artistic Industries never received the returned product and suffered actual monetary losses consisting of the cost of the product, shipping and handling costs, and profit from the sale.

**10.     Fraudulent Seller StoreFront Named Judy OTTO**

316.     With Mr. Simister's consent, his counsel conducted test purchases. On June 21, 2024, counsel purchased "10 Lbs ULTRACAL 30 Gypsum Cement - Plaster - for Moldmaking and Casting, Ideal for Latex Molds! Takes Excellent Detail," listed under the brand "NIKOZQ," for $40.95 on Walmart.com from "Judy OTTO" (WM Order # 2000120-09845475), using counsel's name and personal address.

317.    On or about June 21, 2023, shortly after counsel placed the order on Walmart.com, an order for "10 Lbs ULTRACAL 30 Gypsum Cement - Plaster - for Moldmaking and Casting, Ideal for Latex Molds! Takes Excellent Detail," was placed with Artistic Industries by the Fraudulent Seller under the name "Upton Carl" (AMZ Order # 111-2923230-6379414) and "Upton Carl" requested the package be delivered to counsel's name and address.

318.    On June 21, 2024, Mr. Simister packaged and shipped via USPS the Amazon order, and provided a USPS tracking number (9434636206248326001694) for the order as he would any other Amazon order.



319.    June 25, 2024, at 9:56 AM, counsel received through Walmart.com a tracking number for the Walmart.com order via the Walmart platform. The tracking number counsel received was the same tracking number that Mr. Simister had generated and provided for the Amazon order (9434636206248326001694).

320.    On June 26, 2024, at 11:13 AM, the package was delivered to counsel. The tracking information confirmed that the package was delivered. Walmart sent confirmation of the delivery at 12:43 PM.

321.    Unboxing confirmed that the package contained Artistic Industries' product.



322.    On or about July 9, 2023, Artistic Industry received Fraudulent Refund Request from "Upton Carl" through Amazon.com.  The basis for the refund request was because the package was purportedly not delivered.

323.    The message from "Upton Carl" had similar characteristics to prior messages reporting Artistic Industries' shipment as purportedly undelivered (despite Artistic Industries having record of the packages being delivered).  The message from "Upton Carl" stated:

> "I have purchased this product for a long time, but I have not received it. I just checked the logistics information and it shows that it has been delivered to me, but I haven't received any package. So I also asked

my family and neighbors, and they all said they didn't receive the package. Please help me to check if the package is missing."

324.    On July 14, 2024 at 3:32 AM, "Upton Carl" sent another message, further setting up their A-to-z Claim:

"You are the seller, I bought this from your store, let me go to the logistics company to apply, this I do not accept, you mishandled, let my parcel be delivered to others or lost, why do you ignore your mistake and do not take responsibility! This shopping experience really hurt me, you should compensate me for the loss or you can apply for a claim from the logistics company."

325.    The Amazon customer, "Upton Carl" filed an Amazon A-to-z Claim on July 15, 2024, stating:

"I still haven't received any package and I haven't been notified, I checked around and where the package is stored, but I can't find it, I don't want to look any more, I need a refund."

326.    On or about July 15, 2024, the A-to-z Claim was granted, and Artistic Industries had to refund "Upton Carl" $42.60 through Amazon.

327.    On or about July 24, 2024, the product was repackaged, and a return was initiated through Walmart.

328.    Walmart confirmed the return request and provided a FedEx shipping label with the seller's return address. The address, consistently appearing in previous instances, was:

2006 RODMAN RD
WILMINGTON, DE 19805



329.    The return shipping label was affixed to the original package, which was then handed over to FedEx for delivery on July 24, 2024.

330.    Had this not been a test purchase, Mr. Simister's monetary losses would have included the cost of the product, shipping and handling costs, and the profit from the sale.

### 11.    Fraudulent Amazon Order Through Fraudulent Seller StoreFront Named EasyHousewares

331.    With Mr. Simister's, consent, counsel conducted a test purchase with Fraudulent Seller "EasyHousewares". On June 22, 2024, counsel purchased "ULTRACAL 30 Gypsum Cement - 25 LBS - Mold Making and Casting Plaster, Ideal for Latex Molds! Takes Excellent Detail," listed under the brand "HETAYC," for $74.83 on Walmart.com from "EasyHousewares"—a seller Mr. Simister had identified as a Fraudulent Seller around September 11, 2023—using counsel's name and personal address (WM Order # 2000120-09845475).

332.    On or about June 22, 2023, shortly after counsel placed the order on Walmart.com, an order for "ULTRACAL 30 Gypsum Cement - 25 LBS - Mold Making and Casting Plaster, Ideal

for Latex Molds! Takes Excellent Detail," was placed with Artistic Industries through Amazon.com by the Fraudulent Seller using counsel's name and address. (AMZ Order # 112-3107540-5386631).

333.    On June 22, 2024, Mr. Simister packaged and shipped via USPS the Amazon order, and provided a USPS tracking number (9405536206248329091358) as he would any other Amazon order.

334.    On June 27, 2024 at 5:35 AM, counsel received through Walmart.com a tracking number for the Walmart.com order via the Walmart platform. The tracking number counsel received was the same tracking number that Mr. Simister had generated and provided for the Amazon order (9405536206248329091358).

335.    On June 27, 2024, the package was delivered to counsel. The tracking information confirmed that the package was delivered. Walmart sent confirmation of the delivery. Unboxing confirmed that the package contained Artistic Industries' product.

336.    On or about July 7, 2023, Artistic Industry received a Fraudulent Refund Request from the Fraudulent Seller posing as counsel through Amazon.com.

337.    The message from the Fraudulent Seller using counsel's name had similar characteristics to prior messages reporting Artistic Industries' shipment as purportedly undelivered (despite Artistic Industries having record of the packages being delivered).  The message stated:

> "Hello, I would like to know why the goods I ordered have not been received yet. I want to got my money back ."

338.    Mr. Simister responded the same day, July 7, 2024.

> "Are you sure? I show they were delivered not long ago. Will you kindly look around and ask your neighbors? If you can't find it, you can go to the post office and file a stolen package claim. There must be some criminals around."

339.     Mr. Simister sent a follow up message on July 8, 2024.

"Did you find it?"

340.     On July 9, 2024, at 5:06 PM, the Fraudulent Seller, posing as counsel, responded:

"Not yet, I've searched many places and asked many people but I can't find anything, please refund me if you can."

341.     The Fraudulent Seller, posing as counsel, filed an Amazon A-to-z Claim on July 12, 2024, stating:

"Hello, I have not received this package. I've searched all over my house but I just can't find it. My neighbors haven't seen the package either. I don't know what happened in between. But I am very disappointed with the result and I want my money back now, please solve this problem."

342.     On or about July 13, 2024, the A-to-z Claim was granted, and Artistic Industries had to refund the Fraudulent Seller $75.70 through Amazon.

343.     On or about July 24, 2024, the product was repackaged, and a return was initiated through Walmart.

344.     Walmart confirmed the return request and provided a FedEx shipping label with the seller's return address. The address, consistently appearing in previous instances, was:

2006 RODMAN RD
WILMINGTON, DE 19805



345. The return shipping label was affixed to the original package, which was then given to FedEx for delivery on July 24, 2024.

346. If this was not a test purchase, Mr. Simister would have suffered monetary losses including the cost of the product, shipping and handling costs, and the profit from the sale.

**B.** **Plaintiff Regency Cosmetics' Unauthorized Product Listings, Fraudulent Refund Requests & Test Purchases**

**1.** **The Unauthorized Product Listings**

347. The following are examples of the unauthorized listings of Plaintiff Regency Cosmetics' products on Walmart Marketplace from approximately May 2024 - present.

133





348.     These represent a fraction of the number of the Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell for Plaintiff Regency Cosmetics' products appearing on Walmart Marketplace during the Class Period.

## 2.   The Fraudulent Refund Requests

349.     In approximately September 2023, Plaintiff Regency Cosmetics started experiencing unusual A-to-z Claims asserting non-delivery of its 3-pack Jade East aftershave

products (despite having proof of such deliveries), while concurrently noting the aforementioned listings of its products on Walmart Marketplace.

350.    The following A-to-z Claims received by Plaintiff Regency Cosmetics are characteristic of the Fraudulent Refund Requests made by Fraudulent Sellers against other Amazon Merchants as part of the ORC, and, therefore, on information and belief, are Fraudulent Refund Requests that originated from a purchase from a Fraudulent Seller on Walmart Marketplace as part of the ORC.

### a.    August 8, 2023 Jade East After Shave Order

351.    On August 8, 2023, Plaintiff Regency Cosmetics received an order for "3 Bottles of Jade East After Shave 4 Oz." priced at $78.21 from "Daniel" to be shipped to a customer named "Harry" (AMZ Order # 114-0321456-6272262).

352.    Plaintiff Regency Cosmetics packaged and shipped the order.

353.    On August 25, 2023, Plaintiff Regency Cosmetics received an A-to-z Claim from "Daniel" stating that the order was not delivered. "Daniel's" message stated:

> "what's wrong with my order? i checked everywhere it may have been delivered, but the result is nothing I found out. i don't want to wait anymore, Please refund. i will appreciate your service here!"

354.    Then, on September 3, 2023, Plaintiff Regency Cosmetics received another message from "Daniel" stating again that the order was not delivered. "Daniel's" second message stated:

> "I truly not received the order, amazon. I tried to contact the seller but not worked out so that I want to contact amazon to solve out the matter. The reason is that I believe amazon will be in justice to handle and take care of the feeling of every customer and reduce their loss. If I still not receive the refund through amazon, I will be so upset and please work it out for me, many thanks as a loyalty customer."

355.    This September 3 message was used on July 12, 2024 (*see* Schedule 3 at Row 82), by the Fraudulent Seller who operated the Seller StoreFront on Walmart Marketplace under the name "xiangpiaopiaodedian" and who submitted a Fraudulent Refund Claim as part of the June 30, 2024 test purchase of Regency Cosmetics' "Jade East After Shave for Men 4oz, 3 Bottles" listed under the brand "TeviRoom" (*see infra* ¶¶ 389-403).

356.    On or around September 3, 2023, Regency Cosmetics was required to refund "Daniel" $78.21 through Amazon.

357.    Plaintiff Regency Cosmetics' monetary losses due to the Fraudulent Refund Claim consists of the cost of the product, shipping and handling costs, and the profit from the sale.

**b.      October 13, 2023 Jade East After Shave Order**

358.    On October 13, 2023 Plaintiff Regency Cosmetics received an order for "Jade East After Shave for Men - 4oz each - 3 Bottles" for $90.00 from a buyer named "Dan" to be delivered to "William." (AMZ Order # 114-8220584-9055404).

359.    Plaintiff Regency Cosmetics packaged and shipped the order.

360.    On October 27, 2023, Regency Cosmetics received a message from "Dan" stating that the order was not delivered. "Dan's" message stated (*see* Schedule 3 at Row #13):

> "what's wrong with my order? i checked everywhere it may have been delivered, but the result is nothing I found out. i don't want to wait anymore, Please refund. i will appreciate your service here!"

361.    This October 27 message was also used on August 25, 2023 by "Daniel" (*see* Schedule 3 at Row #10), who, as alleged in ¶¶ 177, 351-57, submitted a Fraudulent Refund Request using the identical false message used by the Fraudulent Seller who operated the "xiangpiaopiaodedian" Seller StoreFront on Walmart Marketplace as part of the June 30, 2024

test purchase of Regency Cosmetics' "Jade East After Shave for Men 4oz, 3 Bottles" listed under the brand "TeviRoom" (*see infra* ¶¶ 389-403).

362. On or around October 30, 2023, Regency Cosmetics was required to refund "Dan" $90 through Amazon.

363. Plaintiff Regency Cosmetics' monetary losses due to the Fraudulent Refund Claim consists of the cost of the product, shipping and handling costs, and the profit from the sale.

### c. November 28, 2023 Jade East After Shave Order

364. On November 28, 2023, Plaintiff Regency Cosmetics received an order for "Jade East After Shave for Men -4oz each - 3 Bottles" for $82.95 from a buyer named "Omega" to be delivered to "Patricia." (AMZ Order # 114-8633277-3339425).

365. Plaintiff Regency Cosmetics packaged and shipped the order.

366. On December 14, 2023, Regency Cosmetics received a message from "Omega" stating that the order was not delivered. "Omega's" message stated (see Schedule 3 at Row #17):

"what's wrong with my order? i checked everywhere it may have been delivered, but the result is nothing I found out. i don't want to wait anymore, Please refund. i will appreciate your service here!"

367. This December 14 message was also used on August 25, 2023 by "Daniel" (see Schedule 3 at Row #10), who, as alleged above in ¶¶ 177, 351-57, submitted a Fraudulent Refund Request using the identical false message used by the Fraudulent Seller who operated the "xiangpiaopiaodedian" Seller StoreFront on Walmart Marketplace as part of the June 30, 2024 test purchase of Regency Cosmetics' "Jade East After Shave for Men 4oz, 3 Bottles" listed under the brand "TeviRoom" (*see infra* ¶¶ 389-403).

368. Then, on December 18, 2023, Regency Cosmetics received another message from "Omega" stating that the order was not delivered. "Omega's" second message stated:

> "though it shows delivered but i still haven't received it. It must have been sent to the wrong person or stolen. i checked everywhere it may have be delivered, also I asked the persons who live around me and confirmed with my family for the parcel of the order. The result was nothing I found out. I wasted so long time for this matter. I don't want to wait anymore. please refund."

369.    A substantially similar message was used in connection with the June 30, 2024 test purchase by counsel of "Jade East After Shave for Men 4oz, 3 Bottles" via the Fraudulent Seller Defendant's StoreFront named "LuckyJiang." *See* Schedule 3 at Row # 76, and *infra* ¶¶ 404-16.

370.    On or around December 20, 2023, Regency Cosmetics was required to refund "Omega" $82.95 through Amazon.

371.    Plaintiff Regency Cosmetics' monetary losses due to the Fraudulent Refund Claim consists of the cost of the product, shipping and handling costs, and the profit from the sale.

**d.     December 11, 2023 Jade East After Shave Order**

372.     On December 11, 2023, Plaintiff Regency Cosmetics received an order for "Jade East After Shave for Men - 4oz each - 3 Bottles" for $85.86 from "Katie" to be delivered to "Sandra" (AMZ Order # 111-9656554-5464216).

373.    On December 30, 2023, Regency Cosmetics received a message from "Katie" stating that the order was not delivered. "Katie's" message stated (see Schedule 3 at Row #25):

> "what's wrong with my order? i checked everywhere it may have been delivered, but the result is nothing I found out. i don't want to wait anymore, Please refund. i will appreciate your service here!"

374.    This December 30 message was also used on August 25, 2023 by "Daniel" (see Schedule 3 at Row #10), who, as alleged above in ¶¶351-57, submitted a Fraudulent Refund Request using the identical false message used by the Fraudulent Seller who operated the "xiangpiaopiaodedian"  Seller StoreFront on Walmart Marketplace as part of the June 30, 2024

test purchase of Regency Cosmetics' "Jade East After Shave for Men 4oz, 3 Bottles" listed under the brand "TeviRoom" (*see infra* ¶¶389-403).

375.　On or around January 2, 2024, Regency Cosmetics was required to refund "Katie" $85.86 through Amazon.

376.　Plaintiff Regency Cosmetics' monetary losses due to the Fraudulent Refund Claim consists of the cost of the product, shipping and handling costs, and the profit from the sale.

### 3.　The Test Purchases

377.　In addition, the following test purchases conduct with Plaintiff Regency Cosmetics confirm that Fraudulent Sellers are creating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell, placing Fraudulent Amazon Order and making Fraudulent Refund Requests directed to Plaintiff Regency Cosmetics.

### (a)　Fraudulent Seller StoreFront Named Whimsy Whirligig

378.　On June 30, 2024, with Regency Cosmetics' consent, its counsel conducted test purchases.

379.　On June 30, 2024, counsel purchased "Dusting Powder In Reusable Tin – 3 pack" listed under the brand "TeviRoom" for $50.40 on Walmart.com from a Walmart seller named "Whimsy Whirligig" (WM Order # 2000120-39452674), using the attorney's actual name and address.

380.　On June 30, 2024, at 12:52 PM, counsel received confirmation of purchase from Walmart.

381.　On July 1, 2024, at 8:59 AM, Regency Cosmetics received an order on Amazon for "Sassique Dusting Powder in Reusable Tin – 3 pack" from a buyer named "Paul Turman," to be

delivered to a customer with the attorney's name and address, utilizing the same information the attorney provided for the Walmart Marketplace order. (AMZ Order # 111-5907796-5771457).



382.     On July 1, 2024, Regency Cosmetics packaged and shipped the product to the attorney utilizing USPS with tracking (9405509105116520098970).

383.     On July 3, 2024, at 5:35 AM, counsel received an email from Walmart confirming that "Whimsy Whirligig" had shipped the order. The tracking number provided was the same one Regency Cosmetics had used on Amazon (9405509105116520098970).

384.     On July 3, 2024, at 11:32 AM, the package was delivered to the attorney. Walmart confirmed the delivery at 12:35 PM.

385.     Unboxing confirmed that the package contained Regency Cosmetics' product.

386.     The product was repackaged, and a return was initiated through Walmart.

387.     Walmart confirmed the return request and provided a FedEx shipping label with the seller's return address. "Whimsy Whirligig's" return address was:

11172 AMARILLO ST
RANCHO CUCAMONGA, CA 91701

388.    The return shipping label was affixed to the original package, which was then handed over to FedEx for delivery on July 24, 2024.

**(b)      Fraudulent Seller StoreFront Named "xiangpiaopiaodedian"**

389.    On June 30, 2024, using counsel's name and address, counsel made a purchase of "Jade East After Shave for Men 4oz, 3 Bottles" (listed under the brand "TeviRoom") for $93.42 from the Fraudulent Seller StoreFront named "xiangpiaopiaodedian" (WM Order # 2000120-3257553),

390.    On June 30, 2024, counsel received confirmation of the purchase from Walmart.

391.    On July 1, 2024, Regency Cosmetics received an order on Amazon for "Jade East After Shave for Men - 4oz each - 3 Bottles" from the Fraudulent Seller using counsel's name and address, as counsel had provided in their Walmart Marketplace order. (AMZ Order # 112-7461835-5133056).

392.    On July 3, 2024, counsel received an email from Walmart confirming that "xiangpiaopiaodedian" had (purportedly) shipped the order. The tracking number provided was through "CHINA POST." But when the China Post link provided by Walmart was clicked, no tracking information was provided and instead an error message appeared stating: "Invalid Order ID" (WM Tracking # AT475513804CN). This is depicted in the following screenshots:



(Broken Link)



393.    Regency Cosmetics packaged and shipped the product, utilizing USPS with tracking on July 3, 2024; and provided a tracking number through the Amazon platform at 12:49 PM (AMZ Tracking # 9405509105116520176753).

394.    On July 5, 2024, the package was delivered to the attorney. Walmart confirmed the delivery July 12, 2024 at 4:49 AM.

395.    Unboxing confirmed that the package contained Regency Cosmetics' product.

396.    On July 8, 2024 at 2:15 AM, Regency Cosmetics received the first message from

the Fraudulent Seller, using the counsel's name, setting up their false claim that the product has

not been delivered:

> "Excuse me? is there someone who can help me to refund my order since i
> never receive it. i purchased it days before, i don't want to have them since
> it so long time and still not show up yet. i want my money to be returned
> please."

397.    On July 9, 2024 at 4:35 AM, July 10, 2024 at 5:02 AM, and July 11, 2024 at 2:55

AM, Regency Cosmetics received three more messages from the Fraudulent Seller, again using

counsel's name, to again falsely claim that the product was not delivered.

> "there is no parcel left in front of my door/porch, also I have checked with
> my neighbors for the parcel of the order many times, but no result. i haven't
> find it. it must have been lost. please refund, i can't bear the loss."

> "though it shows delivered but i can not find the parcel, that's why i come to
> for your help. it must have been sent to a wrong person or stolen, please
> refund, i spent money but received nothing!"

> "i have tired to contacted the UPS many times, but they ignore me all the
> time and didn't care about my order. Why is it so complicated? you are the
> seller and this is your shop which i purchased from, shouldn't you refund for
> the lost order? Please refund, i don't want it anymore."

398.    On July 12, 2024, the Fraudulent Seller filed a Fraudulent Refund Claim, and

stated:

> "I truly not received the order, amazon. I tried to contact the seller but not
> worked out so that I want to contact amazon to solve out the matter. The
> reason is that I believe amazon will be in justice to handle and take care of
> the feeling of every customer and reduce their loss. If I still not receive the
> refund through amazon, I will be so upset and please work it out for me, many
> thanks as a loyalty customer."



399.    On or around July 12, 2024, Regency Cosmetics was required to refund the Fraudulent Seller using the purchaser attorney's name $89.04, through Amazon.

400.    On or around July 24, 2024, the product was repackaged, and a return was initiated through Walmart.

401.    Walmart confirmed the return request and provided a FedEx shipping label with the seller's return address. "xiangpiaopiaodedian's" return address was:

> 11172 AMARILLO ST
> RANCHO CUCAMONGA, CA 91701

402.    The return shipping label was affixed to the original package, which was then handed over to FedEx for delivery on July 24, 2024.

403.    Plaintiff Regency Cosmetics never received the return product, and, the imputed amount of monetary loss, had this not been a test purchase, would have included the cost of the product, shipping and handling costs, and the profit from the sale.

### (c)      Fraudulent Seller StoreFront Named "LuckyJiang"

404.    On June 30, 2024, counsel purchased "Jade East After Shave for Men 4oz, 3 Bottles" listed under the brand "Jade East" for $91.93 on Walmart.com from a seller named "LuckyJiang" (WM Order # 2000120-57414510), using counsel's name and address.

405.    On June 30, 2024, at 1:00 PM, counsel received confirmation of purchase from Walmart.

406.    On June 30, 2024, at 11:35 PM, a former distributor of Regency Cosmetics' products with leftover inventory from a previous distribution agreement, received an order on Amazon for "Jade East After Shave for Men - 4oz each - 3 Bottles" from the Fraudulent Seller. The order utilized counsel's name and address for delivery (AMZ Order # 1113-8518788-1705802).

407.    The former distributor packaged the product, shipped the product, and provided a USPS tracking number through the Amazon platform. (9261290336862254141408259).

408.    On July 3, 2024 at 8:28 AM, counsel received an email from Walmart confirming that "LuckyJiang" had (purportedly) shipped the order. The tracking number was the same one created by the former distributor (WM Tracking # 9261290336862254141408259).

409.    On or around July 5, 2024, at 9:36 AM, the package was delivered to counsel. Walmart confirmed the delivery that day at 11:17 AM.

410.    On July 7, 2024 at 6:23 AM, the former distributor received the first message from the Fraudulent Seller setting up the Fraudulent Sellers' false claim that the product had not been delivered:

146



411.     On July 8 and 9, 2024, the former distributor received a second and third message from the Fraudulent Seller again making a false claim that the product was not delivered:



412.     Unboxing confirmed that the package contained the product ordered by the attorney on Walmart Marketplace on the Fraudulent Seller Product Page.

413.    On or around July 24, 2024, the product was repackaged, and a return was initiated through Walmart.

414.    Walmart confirmed the return request and provided a FedEx shipping label with the seller's return address.

415.    "xiangpiaopiaodedian's" return address was:

11172 AMARILLO ST
RANCHO CUCAMONGA, CA 91701



416.    The return shipping label was affixed to the original package, which was then handed over to FedEx for delivery on July 24, 2024.

### 4. The Fraudulent Product Returns

417.    As discussed above, Walmart identified "11172 Amarillo Street, Rancho Cucamonga, CA" for all three returns for Plaintiff Regency Cosmetics' test purchases made with the three Fraudulent Sellers: Whimsy Whirligig, LuckyJiang, and xiangpiaopiaodedian.

418.    On July 30, 2024, at 2:53 PM FedEx confirmed delivery of the "Dusting Powder In Reusable Tin – 3 pack" purchased from and returned to "Whimsy Whirligig" at 11172 Amarillo St, Rancho Cucamonga, CA 91701 (WM Order # 2000120-39452674) (FedEx shipment # 277083443945).

419.    At the same time and date, FedEx confirmed delivery of the "Jade East After Shave for Men 4oz, 3 Bottles" purchased from and returned to "xiangpiaopiaodedian" (WM Order # 2000120-3257553) (FedEx shipment # 277082831604).

420.    FedEx provided photographic evidence as proof of delivery. As depicted below, a substantial number of packages have been delivered to 11172 Amarillo St, Rancho Cucamonga, CA 91701, which is a residence in a residential neighborhood. While it is not possible to identify all the product categories in this collection of returns, it is evident that the different shaped and sized packages contain different products.



421.     Then, on August 2, 2024, at 5:45PM, FedEx confirmed delivery of the "Jade East

After Shave for Men 4oz, 3 Bottles" purchased from, and returned to "LuckyJiang" (WM Order #

2000120-57414510) (FedEx shipment # 277082586793).

422.     FedEx, again, provided proof of delivery with photo evidence.

423.     The photo revealed that within the three days since the previous deliveries, all

previously depicted boxes had been moved, and a new grouping of packages had started to

accumulate. This demonstrates that the operation – a residential return address provided for several

Fraudulent Seller Defendants - is active and receiving return packages at a high rate.



**C.** **Plaintiff Longstem Organizers' Unauthorized Product Listings, Fraudulent Refund Requests & Test Purchases**

424.    In approximately June 2024, Plaintiff Longstem Organizers started experiencing unusual A-to-z Claims for non-delivery.

**1.    The Unauthorized Product Listings**

425.    The following are examples of the unauthorized listings of Plaintiff Longstem Organizers' products on Walmart Marketplace from approximately August 2024 - present.







426.    These represent a fraction of the number of unauthorized Product Listings for Plaintiff Longstem Organizers' products during the Class Period.

**2.      The Fraudulent Refund Requests**

427.    On July 15, 2024, at 6:06 PM Longstem Organizers received an Amazon order of "Longstem Organizers Men's Hanging Tie Organizer Rack Over The Door/Wall, Closet # 9300 in White 43 Hooks for Men's Organization-Patented" for $107.64, by a buyer named "Py Lam," to be shipped to a customer named "Cornelia P." (AMZ Order # 111-8324350-8519454).

428.    On July 16, 2024, at 1:13 AM Longstem Organizers received an Amazon order of "Longstem Organizers Men's Over The Door or Wall Hanging Closet Tie and Belt Rack, 9100

Accessory Valet Patented in Silver for Men's Organization" for $107.64, by a buyer named "Py Lam," to be shipped to a customer named "Py Lam," at the same address as "Cornelia P." (AMZ Order # 111-6633173-3231465).

429.    Both packages were shipped July 16, 2024, and both marked Delivered by UPS on July 22, 2024 (1Z30V30F0392065197) (1Z30V30F0391500379). UPS provided proof of delivery showing both packages delivered together.



430.    On July 25, 2024 at 12:42 AM, "Py Lam" sent a message, in regards to the order for "Py Lam" setting up a future A-Z claim of non-delivery (AMZ Order # 111-6633173-3231465). They stated:

> "Hello, why has my package not been delivered for so long, I missed a great experience and I need a refund now."

431.    On July 27, 2024 at 1:57 AM, "Py Lam" sent another message, stating:

> "I did what you asked me to do before I contacted you. I have been patiently waiting for your package until now. I asked around and confirmed with my family that they

hadn't seen my package either. Now the end result is that I can't find anything. I've wasted too much time on this, so the only thing I want is a refund."

432.    On July 31, 2024, "Py Lam" filed an A-Z guarantee claim, reporting "Package didn't arrive," with the following message: "Hello, my order package was lost for a long time and I wasted a lot of time waiting. I would like to get my money back and I have tried to contact the seller, but he has not solved the problem."

433.    On or around July 31, 2024, Longstem Organizers had to refund "Py Lam" $107.64 through Amazon.

434.    On or around August 9, 2024, Longstem Organizers received notice from Amazon that "Py Lam" had filed a chargeback dispute with their credit card issuer involving the transaction for "Cornelia P." (AMZ Order # 111-8324350-8519454).

435.    On or around August 17, 2024, Amazon resolved the chargeback claim in Longstem's favor. However, later that day, on August 17, 2024, Longstem received notice that "Py Lam" had disputed the transaction a second time, requiring Longstem to resubmit the information pertaining to the already resolved fraudulent chargeback claim.

436.    Longstem Organizers suffered actual monetary losses of the cost of the product, shipping and handling costs, and profit from the sale.

### 3.    The Test Purchases

#### (a)    Fraudulent Seller StoreFront Named Jinanhengyuanshangmao

437.    On June 17, 2024, Ms. Albanese placed an order from the Seller StoreFront named "jinanhengyuanshangmao" for one "Hanging Men's Tie Rack Accessory Organizer Belt Hanger Valet Patented in Black, 43 Hooks for Men's Organization," for $97.71 (WM Order # 2000119-20173807). For the order, Ms. Albanese used the name "Alison LONGSTEM" as the buyer, and Plaintiff Longstem Organizers' business address as the delivery location.

438.    On June 18, 2024, at 2:02 AM, an order was placed with Plaintiff Longstem Organizers' on Amazon for: (i) one "Hanging Men's Tie Rack Accessory Organizer Belt Hanger Valet Patented in Black, 43 Hooks for Men's Organization," for $108.26 (AMZ Order # 113-3913875-9086619); (ii) by a buyer named "alison"; (iii) for delivery to "alison LONGSTEM," at Longstem Organizer's business address—the name and address Ms. Albanese used in her the Walmart order.

439.    On June 18, 2024, Plaintiff Longstem Organizers fulfilled the Amazon order, and shipped it using UPS with tracking (tracking number 1Z30V30F0396986382).

440.    On June 19, 2024, the package was delivered to Longstem Organizers.

441.    On June 27, 2024, Longstem Organizers received a Fraudulent Refund Request on Amazon from "alison" stating:

> "Hello my friend, my order shows that the goods have arrived, but I have not received the package. I wonder what the problem is."

442.    On June 30, 2024, Longstem Organizers received another Fraudulent Refund Request on Amazon from "alison" stating:

> "I asked my family and neighbor s, but they didn't get my package. Who took my package? Did it really get delivered?"

443.    On July 6, 2024, "alison" filed a Fraudulent Refund Request and an A-to-a Claim with Amazon.

444.    Despite the package being delivered as directed in the order, and known to be delivered, on July 6, 2024, Longstem Organizers had to pay "alison" on the Fraudulent Refund Request $108.26. Plaintiff Longstem Organizers' monetary loss included the cost of the product, shipping and handling costs, and the profit from the sale.

**(b)      Fraudulent Seller StoreFront Named The Tech Loft**

445.    On August 5, 2024, with Ms. Albanese's consent, her counsel conducted a test purchase of Longstem Organizer products from Walmart.com.

446.    On August 5, 2024, counsel's agent purchased "Over the Door, Wall Jewelry Organizer #7100 in Bronze, Holds Over 300 Pieces" listed under the brand "TeviRoom," for $111.78 on Walmart.com from a Walmart seller named "The Tech Loft" using counsel's agent's name and personal address (WM Order # 2000121-16036783).

447.    On or about August 6, 2024, an order for "Longstem Organizers Over the Door, Wall Jewelry Organizer #7100 in Bronze, Holds Over 300 Pieces," for $105.90, was placed with Longstem Organizers through Amazon.com by a buyer named "Alina" (AMZ Order # 114-7206151-0737840).

448.    The Fraudulent Seller posing as an Amazon customer "Alina" requested the package be delivered to counsel's agent, using counsel's agent's name and address, which they used when placing the order on Walmart Marketplace.

449.    On August 6, 2024, Plaintiff Longstem packaged and shipped via UPS the Amazon order as they would any other Amazon order. The USPS tracking number for the order and on the package being sent to counsel's agent was 1Z30V30F0397530737.

450.    On August 7, 2024 at 7:19 AM, counsel's agent received a tracking number for the Walmart.com order via the Walmart platform. The tracking number counsel received was the same tracking number that Longstem had generated and provided for the Amazon order (1Z30V30F0397530737).

451.    On August 7, 2024, at 2:25 PM, the package was delivered to counsel's agent. The tracking information confirmed that the package was delivered. Walmart sent confirmation of the delivery at 2:47 PM.

452.    Unboxing confirmed that the package contained Longstem Organizers' product.

453.    On or about September 6, 2024 the product was repackaged, and a return was initiated through Walmart.

454.    Walmart confirmed the return request and provided a FedEx shipping label with the seller's return address. The address, consistently appearing in the Regency Cosmetics' test purchases:

> 11172 AMARILLO ST
> RANCHO CUCAMONGA, CA 91701

455.    The return shipping label was affixed to the original package, which was then given to FedEx for delivery on or about September 6, 2024.

456.    On or about September 6, 2024, Plaintiff Longstem Organizers received a Fraudulent Return Request from "Alina" through Amazon.com. The basis for the return request was "inaccurate website description."

### (c) Fraudulent Seller StoreFront Named XUNJie Jidian Co. Ltd

457.    On August 5, 2024, with Ms. Albanese's consent, her counsel conducted a second test purchase of a Longstem Organizer product from a different seller on Walmart.com.

458.    On August 5, 2024, counsel's agent purchased "Over the Door, Wall Jewelry Organizer #7100 in Bronze, Holds Over 300 Pieces" listed under the brand "XUNJIE," for $116.48 on Walmart.com from a Walmart seller named "XUNJie Jidian Co. Ltd" using counsel's agent's name and personal address. (WM Order # 2000121-54904525).

459.    On or about August 6, 2024, an order for "Longstem Organizers Over the Door, Wall Jewelry Organizer #7100 in Bronze, Holds Over 300 Pieces," for $105.90, was placed with Longstem Organizers through Amazon.com by the Fraudulent Seller under the name "Julia" (AMZ Order # 114-9586522-4901017).

460.    The Amazon buyer "Julia" requested the package be delivered to counsel's agent, using the name and address counsel's agent had used to place the order on Walmart Marketplace.

461.    On August 6, 2024, Plaintiff Longstem packaged and shipped via UPS the Amazon order as she would any other Amazon order. The USPS tracking number for the order and on the package being sent to counsel's agent was 1Z30V30F0393886156.

462.    On August 7, 2024, at 2:35 AM, counsel's agent received a tracking number for the Walmart.com order via the Walmart platform. The tracking number counsel received was the same tracking number that Longstem had generated and provided for the Amazon order (1Z30V30F0393886156).

463.    On August 7, 2024, at 2:25 PM, the package was delivered to counsel. The tracking information confirmed that the package was delivered. Walmart sent confirmation of the delivery at 2:46 PM.

464.    Unboxing confirmed that the package contained Longstem Organizers' product.

465.    On or about August 14, 2024, Ms. Albanese received an email from Amazon informing her that "Julia" filed a chargeback claim with their bank, to obtain a refund for this Order.  The basis for the chargeback was the package was purportedly not delivered.

466.    On or about August 30, 2024 the product was repackaged, and a return was initiated through Walmart.

467.    Walmart confirmed the return request and provided a FedEx shipping label with the seller's return address:

> 3608 MEADOWLARK ST
> EL MONTE, CA 91732

468.    The return shipping label was affixed to the original package, which was then given to FedEx for delivery on or about August 30, 2024.

**D.      Plaintiff EZ-Step Mobility, Inc.'s Unauthorized Product Listings & Fraudulent Refund Requests**

469.    In approximately June 2024, Plaintiff EZ-Step Mobility started experiencing unusual A-to-z Claims for non-delivery.

### 1.      The Unauthorized Product Listings

470.    The following are examples of the unauthorized listings of Plaintiff EZ-Step Mobility's products on Walmart Marketplace from approximately August 2924-present. These Product Listings appeared on Walmart.com without Plaintiff EZ-Step's permission, knowledge, or consent.





471.    Plaintiff EZ-Step Mobility is not currently nor has ever been a merchant on Walmart.com.

472.    Plaintiff EZ-Step Mobility is the sole authorized seller of its products.

**2.     The Fraudulent Refund Requests**

473.    In approximately July 2024, Plaintiff EZ-Step started experiencing unusual A-to-z Claims asserting non-delivery of its Stair Climbing Cane product (despite having proof of such deliveries), while concurrently noting the aforementioned listings of its products on Walmart Marketplace.

474.    The following A-to-z Claims received by Plaintiff EZ-Step are characteristic of the Fraudulent Refund Requests made by Fraudulent Sellers against other Amazon Merchants as part of the ORC, and, therefore, on information and belief, are Fraudulent Refund Requests that originated from a purchase from a Fraudulent Seller on Walmart Marketplace as part of the ORC.

(a)      **July 31, 2024 EZ-Step Stair Climbing Cane Order**

475.    On July 31, 2024, Plaintiff EZ-Step received an order for "EZ-Step Stair Climbing

Cane" priced at $102.60 from "Carla" to be shipped to a customer named "Carla" (AMZ Order #

111-9671447-8593032).

476.    Plaintiff EZ-Step packaged and shipped the order.

477.    On August 10, 2024 Plaintiff EZ-Step received a message from "Carla" stating the

order was not delivered. "Carla's" message stated:

> "My friend, I hope you can give me a refund, the package has been delivered for
> too long, it hasn't arrived, I don't need it anymore."

478.    On August 11, 2024, Plaintiff EZ-Step responded:

> "Your package was delivered and confirmed by UPS, it was sent with a signature
> required which we have on file."

479.    On August 11, 2024, "Carla" wrote another message (Schedule 3 Row # 102):

> "I did what you asked me to do before I contacted you. I have been patiently waiting
> for your package until now. I asked around and confirmed with my family that they
> hadn't seen any package either. Now the end result is that I can't find anything. I've
> wasted too much time on this, so the only thing I want is a refund."

480.    This message is identical to a message received by Plaintiff Longstem in connection

with a Fraudulent Refund Request. *See supra* ¶¶ 427-36; Schedule 3 Row # 98.

481.    After messaging Plaintiff EZ-Step, "Carla" submitted a Fraudulent Refund Request

in the form of an A-to-z Claim, claiming that the package didn't arrive. In the A-to-z claim, "Carla"

wrote:

> "Hello, my order package was lost for a long time and I wasted a lot of time waiting.
> I would like to get my money back and I have tried to contact the seller, but he has
> not solved the problem."



482.     On or around August 29, 2024, Plaintiff EZ-Step was required to refund "Carla" $102.60 through Amazon.

483.     Plaintiff EZ-Step's monetary losses due to the Fraudulent Refund Claim consists of the cost of the product, shipping and handling costs, and the profit from the sale.

### (b)     July 18, 2024 EZ-Step Stair Climbing Cane Order

484.     On July 19, 2024, Plaintiff EZ-Step received an order for "EZ-Step Stair Climbing Cane" priced at $94.45 from "Cyndi" to be shipped to a customer named "Cyndi" (AMZ Order # 113-9581387-6237061).

485.     Plaintiff EZ-Step packaged and shipped the order.

486.     On July 26, 2024 Plaintiff EZ-Step received a message from "Cyndi" stating the order was not delivered. "Cyndi's" message stated:

> "Hello, I want to know whether there is something wrong with the delivery of your seller or the logistics company lost me parcel. I have not received my parcel yet. Can you check it for me?"

487. On July 27, 2024, Plaintiff EZ-Step responded with tracking information showing delivery.

488. On August 11, 2024, "Cyndi" wrote another message:

> "I asked my family, I asked my neighbors, I checked everywhere around the house. There's nothing I can do about it. I paid for it, and I got nothing. I can't accept the result. And it's not even my fault that the package went missing. I hope you understand. Please give me a refund, thank you!"

489. This message is very similar to a message received by another Amazon Merchant in connection with a Fraudulent Refund Request. *See* Schedule 3 Row # 33.

490. After messaging Plaintiff EZ-Step, "Cyndi" submitted a Fraudulent Refund Request in the form of an A-to-z Claim, claiming that the package didn't arrive. In the A-to-z claim, "Cyndi" wrote:

> "I haven't received my package."



491.    On or around August 27, 2024, Plaintiff EZ-Step was required to refund "Cyndi" $102.60 through Amazon.

492.    Plaintiff EZ-Step's monetary losses due to the Fraudulent Refund Claim consists of the cost of the product, shipping and handling costs, and the profit from the sale.

**(c)      July 5, 2024 EZ-Step Stair Climbing Cane Order**

493.      On July 5, 2024, Plaintiff EZ-Step received an order for "EZ-Step Stair Climbing Cane" priced at $102.36 from "Jean" to be shipped to a customer named "Jean" (AMZ Order # 114-5021382-1642649).

494.      Plaintiff EZ-Step packaged and shipped the order.

495.      On July 16, 2024 Plaintiff EZ-Step received a message from "Jean" stating the order was not delivered. "Jean's" message stated:

> "My dear friend, I have not received the purchase product. give me a refund Please."

496.      On July 17, 2024, 2024, Plaintiff EZ-Step responded:

> "We have tracked your package with UPS. Please see the delivery details attached showing delivery to your front door."

497.      On July 18, 2024, "Jean" wrote another message:

> "I did what you asked me to do before I contacted you. I have been patiently waiting for your package until now. I asked around and confirmed with my family that they hadn't seen any package either. Now the end result is that I can't find anything. I've wasted too much time on this, so the only thing I want is a refund."

498.      This message is identical to a message received by Plaintiff Longstem in connection with a Fraudulent Refund Request. *See supra* ¶¶ 427-36; Schedule 3 Row # 98.

499.      After messaging Plaintiff EZ-Step, "Carla" submitted a Fraudulent Refund Request in the form of an A-to-z Claim, claiming that the package didn't arrive. In the A-to-z claim, "Jean" wrote:

> "Is anything missing? Yes. What's missing? The entire package. Did your address change? No. Reason Code: NOT_RECEIVED"



500.    On or around July 24, 2024, the claim was withdrawn.

**(d)    July 3, 2024 EZ-Step Stair Climbing Cane Order**

501.    On July 3, 2024, Plaintiff EZ-Step received an order for "EZ-Step Stair Climbing Cane" priced at $104.17 from "Kulwant" to be shipped to a customer named "Kulwant" (AMZ Order # 113-1805658-230618).

502.    Plaintiff EZ-Step packaged and shipped the order.

503.    On July 18, 2024 Plaintiff EZ-Step received a message from "Kulwant" stating the order was not delivered. "Kulwant's" message stated:

> "Hello, why has my package not been delivered for so long, I missed a great experience and I need a refund now."

504.     On July 19, 2024, Plaintiff EZ-Step responded with proof that the package had been delivered, along with tracking information.

505.     On July 20, 2024, "Kulwant" wrote another message:

> "I did what you asked me to do before I contacted you. I have been patiently waiting for your package until now. I asked around and confirmed with my family that they hadn't seen any package either. Now the end result is that I can't find anything. I've wasted too much time on this, so the only thing I want is a refund."

506.     This message is identical to a message received by Plaintiff Longstem in connection with a Fraudulent Refund Request. *See supra* ¶¶ 427-36; Schedule 3 Row # 98.

507.     After messaging Plaintiff EZ-Step, "Kulwant" submitted a Fraudulent Refund Request in the form of an A-to-z Claim, claiming that the package didn't arrive. In the A-to-z claim, "Kulwant" wrote:

> "Is anything missing? Yes. What's missing? The entire package. Did your address change? No. Reason Code: NOT_RECEIVED"



508.    On or around July 20, 2024, Plaintiff EZ-Step was required to refund "Kulwant" $104.17 through Amazon.

509.    Plaintiff EZ-Step's monetary losses due to the Fraudulent Refund Claim consists of the cost of the product, shipping and handling costs, and the profit from the sale.

### (e)      July 9, 2024 EZ-Step Stair Climbing Cane Order

510.     On July 9, 2024, Plaintiff EZ-Step received an order for "EZ-Step Stair Climbing Cane" priced at $94.45 from "Linda" to be shipped to a customer named "Linda" (AMZ Order # 113-4930415-8785061).

511.     Plaintiff EZ-Step packaged and shipped the order.

512.     On July 17, 2024 Plaintiff EZ-Step received a message from "Linda" stating the order was not delivered. "Linda's" message stated:

> "My dear friend, I have not received the purchase product. give me a refund Please."

513.     On July 18, 2024, Plaintiff EZ-Step responded with proof that the package had been delivered, along with tracking information.

514.     On July 19, 2024, "Linda" wrote another message:

> "I did what you asked me to do before I contacted you. I have been patiently waiting for your package until now. I asked around and confirmed with my family that they hadn't seen any package either. Now the end result is that I can't find anything. I've wasted too much time on this, so the only thing I want is a refund."

515.     This message is identical to a message received by Plaintiff Longstem in connection with a Fraudulent Refund Request. *See supra* ¶¶ 427-36; Schedule 3 Row # 98.

516.     After messaging Plaintiff EZ-Step, "Linda" submitted a Fraudulent Refund Request in the form of an A-to-z Claim, claiming that the package didn't arrive. In the A-to-z claim, "Linda" wrote:

> "Is anything missing? Yes. What's missing? The entire package. Did your address change? No. Reason Code: NOT_RECEIVED"



517.    On or around July 20, 2024, Plaintiff EZ-Step was required to refund "Linda" $94.45 through Amazon.

518.    Plaintiff EZ-Step's monetary losses due to the Fraudulent Refund Claim consists of the cost of the product, shipping and handling costs, and the profit from the sale.

**(f)      July 9, 2024 EZ-Step Stair Climbing Cane Order**

519.    On July 9, 2024, Plaintiff EZ-Step received an order for "EZ-Step Stair Climbing Cane" priced at $101.07 from "Mitchell" to be shipped to a customer named "Mitchell" (AMZ Order # 113-8789384-6588224).

520.    Plaintiff EZ-Step packaged and shipped the order.

521.     On July 23, 2024 Plaintiff EZ-Step received a message from "Mitchell" stating the

order was not delivered. "Mitchell's" message stated:

> "My friend, I hope you can give me a refund, the package has been delivered for
> too long, it hasn't arrived, I don't need it anymore."

522.     On July 24, 2024, Plaintiff EZ-Step responded with proof that the package had been

delivered, along with tracking information.

523.     On July 25, 2024, "Mitchell" wrote another message:

> "I did what you asked me to do before I contacted you. I have been patiently waiting
> for your package until now. I asked around and confirmed with my family that they
> hadn't seen any package either. Now the end result is that I can't find anything. I've
> wasted too much time on this, so the only thing I want is a refund.

524.     This message is identical to a message received by Plaintiff Longstem in connection

with a Fraudulent Refund Request. *See supra* ¶¶ 427-36; Schedule 3 Row # 98.

525.     After messaging Plaintiff EZ-Step, "Mitchell" submitted a Fraudulent Refund

Request in the form of an A-to-z Claim, claiming that the package didn't arrive. In the A-to-z

claim, "Mitchell" wrote:

> "Is anything missing? Yes. What's missing? The entire package or received empty
> package. Did your address change? No. Reason Code: NOT_RECEIVED"



526.   On or around July 29, 2024, "Mitchell's" claim was denied.

527.   Had the claim not been denied, Plaintiff EZ-Step's monetary losses would have included the cost of the product, shipping and handling costs, and the profit from the sale.

### (g)   August 9, 2024 EZ-Step Stair Climbing Cane Order

528.   On August 9, 2024, Plaintiff EZ-Step received an order for "EZ-Step Stair Climbing Cane" priced at $94.45 from "Robert" to be shipped to a customer named "Robert" (AMZ Order # 112-3491233-9650644).

529.   Plaintiff EZ-Step packaged and shipped the order.

530.   On August 15, 2024 Plaintiff EZ-Step received a message from "Robert" stating the order was not delivered. "Robert's" message stated:

> "Friend, what's the matter, why my package has not been delivered to me for so long, I don't need it now, I want my money back now, please refund."

531.     After messaging Plaintiff EZ-Step, "Robert" submitted a Fraudulent Refund Request in the form of an A-to-z Claim, claiming that the package didn't arrive. In the A-to-z claim, "Robert" wrote:

> "Hello, my order package was lost for a long time and I wasted a lot of time waiting. I would like to get my money back and I have tried to contact the seller, but he has not solved the problem."



532.     This message was identical to one received by another Amazon Merchant in connection with a Fraudulent Refund Request. *See* Schedule 3, Row # 43.

533.     On or around August 27, 2024, Plaintiff EZ-Step was required to refund "Robert" $94.45 through Amazon.

534.     Plaintiff EZ-Step's monetary losses due to the Fraudulent Refund Claim consists of the cost of the product, shipping and handling costs, and the profit from the sale.

### (h)     August 5, 2024 EZ-Step Stair Climbing Cane Order

535.     On August 5, 2024, Plaintiff EZ-Step received an order for "EZ-Step Stair Climbing Cane" priced at $100.31 from "Sherry" to be shipped to a customer named "Sherry" (AMZ Order # 112-4239926-3357044).

536.     Plaintiff EZ-Step packaged and shipped the order.

537.     On August 14, 2024 Plaintiff EZ-Step received a message from "Sherry" stating the order was not delivered. "Sherry's" message stated:

> "It was a very bad shopping experience, I still haven't my package, I think I don't need it anymore, please give me a refund."

538.     On August 18, 2024, "Sherry" messaged again, stating:

> "I did what you asked me to do before I contacted you. I have been patiently waiting for your package until now. I asked around and confirmed with my family that they hadn't seen any package either. Now the end result is that I can't find anything. I've wasted too much time on this, so the only thing I want is a refund."

539.     This message is identical to a message received by Plaintiff Longstem in connection with a Fraudulent Refund Request. *See supra* ¶¶ 427-36; Schedule 3 Row # 98.

540.     After messaging Plaintiff EZ-Step, "Sherry" submitted a Fraudulent Refund Request in the form of an A-to-z Claim, claiming that the package didn't arrive. In the A-to-z claim, "Sherry" wrote:

> "Hello, my order package was lost for a long time and I wasted a lot of time waiting. I would like to get my money back and I have tried to contact the seller, but he has not solved the problem."



541.     On or around August 27, 2024, Plaintiff EZ-Step was required to refund "Sherry" $94.45 through Amazon.

542.     Plaintiff EZ-Step's monetary losses due to the Fraudulent Refund Claim consists of the cost of the product, shipping and handling costs, and the profit from the sale.

**9.   <u>Other Amazon Merchants Confirm the ORC and Walmart's Refusal to Take Necessary Steps to Prevent and Stop Walmart's Participation in the Scheme.</u>**

543.     In early 2024, a Reddit poster with the user name "harleybootsy", recounted being subjected to numerous Fraudulent Amazon Orders and Fraudulent Refund Requests:[98]

---

[98] https://www.reddit.com/r/WalmartSellers/comments/19faotq/comment/kr2d5pt/ (last visited 9.16.2024).



544. As detailed above and in their subsequent posts linked above, "harleybootsy" identified the following:

(a)     They (and other merchants) identified the trend that, despite their shipped packages being "delivered," they received messages from the purported buyer, typically in broken English, claiming non-delivery and requesting refunds.

(b)     In their experience, the message typically reads: "Where's my order, what's wrong with my order? I checked everywhere it may have been delivered, but the result is nothing I found out. I don't want to wait anymore, Please refund. I will appreciate your service here!"

(c)     In their words, they describe the ORC scheme as follows: Fraudulent sellers list hijacked products on Walmart.com; When a sale is made on Walmart, these sellers use the customer information to place an order on Amazon, where the legitimate seller fulfills the order; and the Walmart customer receives the product, the fraudulent seller collects payment from Walmart, and then files a bogus non-delivery claim on Amazon, resulting in losses for the legitimate seller.

(d)     They conducted 12 test orders from different Fraudulent Walmart Sellers on the Walmart Marketplace.  In 11 instances, the fraudulent sellers ordered products from "harleybootsy's" Amazon storefront to fulfill the Walmart order. All 11 Fraudulent Walmart Sellers claimed non-delivery.  Indeed, they note that they fraudster made three A-to-z Claims for orders that were, obviously delivered to harleybootsy's own address.

(e)     They identified as of that time over 30 Chinese sellers, each with between 50,000 to 80,000 product listings on Walmart.com, that they believe were targeting hundreds of legitimate merchants.

(f)     They and other sellers have reported these incidents to Walmart, providing clear evidence and patterns to Walmart of the ORC. Despite this, Walmart did not intervene, and instead, has facilitated and allowed the scheme to persist.

545.   After receiving several false notifications of non-delivery for their Amazon orders, an unrelated Amazon Merchant identified Fraudulent Seller Pages on Walmart Marketplace selling his product and conducted a test purchase.

(a)     On or around July 9, 2024 the Amazon Merchant conducted a test purchase, ordering one of their products from "**Chen heng Home Store**" on Walmart Marketplace, using their company's address and a pseudonym

(b)     Shortly after placing the order on Walmart Marketplace, the Amazon Merchant received an order on their Amazon Merchant page on Amazon.com from their "pseudonym" to be delivered to the address he provided.

(c)     The Amazon Merchant shipped the product and provided a USPS tracking number to the Fraudulent Seller on Amazon.

(d)     The Fraudulent Seller provided the same tracking number to them on Walmart.com.

(e)     On or around July 15, 2024 the Amazon Merchant received a Fraudulent Refund Request, wherein the Fraudulent Seller claimed that the package had not been delivered:



(f)     The Amazon Merchant initiated a return with Walmart on this order, which instructed them to send the product to:

19919 TALBOT RD
RENTON, WA 98055

180

(g) 19919 Talbot Rd is the same address previously provided to Mr. Simister by Windy Suk Co. Ltd.



### 10. <u>The Delaware Bin Store Sells Walmart Returns Sent to 2006 Rodman Rd</u>

546. The Delaware Bin Store is located at 728 Stanton Christiana Rd, Newark, DE 19713, which property is owned by Xiaoli Liu and Dahai Zhao. *See supra* at ¶ 62.

547. An August 2024 visit to the Delaware Bin Store revealed that (a) Many individualized products were being offered for sale in their return packaging, with the return labels still attached, and (b) A majority of the observable return labels were specifically Walmart returns.

548. Of the Walmart return labels observed, they were all addressed to 2006 Rodman Rd. Notably, the "TO" field named entities that matched those of the return address labels associated with Fraudulent Sellers, specifically the transactions identified herein at ¶¶ 205-14, 215-21, 223-34, 235-47, 260-71, 272-82, 316-30, and 331-46.

549. The following are examples of the information observed on the return labels of the products offered for sale.

550.     The Delaware Bin Store offered for sale a four pack of "Pentair Pentek EPM-10 Carbon Water Filter, 10-Inch, Under Sink Modified Epsilon Carbon Block Replacement Cartridge with Bonded Powdered Activated Carbon (PAC) Filter, 10" x 2.5", 10 Micron."

(a)     Inside the packaging was a product insert from the distributor WaterFiltersOnline.com LLC, located at 250 Commerce Dr, Huntington, IN 46750.

(b)     WaterFiltersOnline.com LLC sells on Amazon as a Fulfilled by Merchant (FBM) seller.

(c)     The return label was a Walmart return label, sent from Khanh L. in Washington, addressed to "HQEE," at 2006 Rodman Rd.

(d)     "HQEE" was the entity that handled Artistic Industries' "Coey Trading Co. Ltd." fraudulent return. *See supra* ¶¶ 260-71.

(e)     Upon investigation, WaterFiltersOnline.com has no relation to 2006 Rodman Rd.

551.     Another Walmart return label addressed to "HQEE" at 2006 Rodman Rd from Marie D. in Tennessee was affixed to a box offered for sale, but for which the specific product name and seller could not be identified from the outside of the box.

552.     The Delaware Bin Store also offered for sale a "Sing-e Multi-Media Speaker, ZQS8149 MODEL."

(a)     The return label was a Walmart return label, addressed to "JOAD."

553.     The Delaware Bin Store also offered for sale a "Dr. Planzen Artificial Plants – 2 Pack 6 ft Artificial Olive Plants with Realistic Leaves and Natural Trunk, Silk Fake Olive Tree with Plastic Nursery Pot, Faux Olive Tree for Office Home Farmhouse for Indoor Outdoor Décor."

(a)     There was a Walmart return label attached to the box.

(b)    The return label on the package was addressed to "APYEU123" at 2006 Rodman Road, which is the same entity on the return label used in the test purchase done with Fraudulent Seller "EasyHousewares", that resulted in the Fraudulent Amazon Order and Fraudulent Refund Request placed with Plaintiff Artistic Industries. *See supra* ¶¶ 331-346.

554.    The Delaware Bin Store also offered for sale a "Poolguard, Red PGRM-SB Safety Buoy Above Ground Pool Alarm" that had a Walmart return label addressed to 2006 Rodman Rd.

(a)    This product is sold on Amazon and Walmart by the seller "PoolSupplies.com," located at 574 Main St, Tonawanda, NY 14150.

(b)    PoolSupplies.com operates under the FBM model on both platforms.

(c)    The return label on the product directed the return to an entity named "LIZV" at 2006 Rodman Rd.

(d)    Upon investigation, PoolSupplies.com has no association with 2006 Rodman Rd.

555.    "Creative Hobbies – 25 Pack LED Bulbs for Window Candles, Chandeliers 0.7w 120v New" was also available for purchase. This product is sold by Wholesale Craft Outlet LLC, a small business located at 900 Creek Road, Bellmawr, NJ 08031. Wholesale Craft Outlet sells on Amazon as an FBM seller. Wholesale Craft Outlet states on its website: "Please note we prohibit the resale of our Creative Hobbies® brand products on any website such as ebay, Amazon, Walmart, etc." Despite this, the return label on the product was addressed to "VKPF" at 2006 Rodman Rd.  Upon investigation, Wholesale Craft Outlet LLC has no association to 2006 Rodman Rd.

556.    The circumstances surrounding the Delaware Bin Store, including the abundance of unique, limited-quantity goods being sold with Walmart return labels addressed to 2006 Rodman Rd, including with the "TO" name linked to the Fraudulent Sellers, suggest that the products for sale are from Amazon Merchants and were secured as part of the ORC alleged herein.

**11.    Walmart Knows About the ORC, and Walmart has the Information and Ability to Prevent, Respond to and Stop the ORC Operating on Walmart Marketplace**

**A.    The Named Plaintiffs Told Walmart about the ORC**

557.    Beginning in January of 2021, Mr. Simister, owner of Plaintiff Artistic Industries, reached out to Walmart to inform it of the ORC.

(a)    Mr. Simister reported fraudulent activity to Walmart on or around January 9, 2021 after conducting test purchases to prove the Fraudulent Sellers were participating in the ORC.

(b)    Mr. Simister spoke with Clay Thrasher and Billy Cox, both Walmart employees, informing them of the extensive fraud Mr. Simister was observing on the Marketplace platform.

(c)    Clay Thrasher, at the time, was a Global Investigator – Organized Retail Crime for Walmart. His responsibilities included managing and conducting investigations involving fraud "within stores, distribution centers, supply chains, and e-commerce platforms".

(d)    Billy Cox, at the time, was a Global Investigator III/Senior Manager of Global Investigations & Marketplace Teams at Walmart. Prior to his time at Walmart, Mr. Cox was a special agent with the Federal Bureau of Investigation for over twenty years.

(e)      In his initial communications, Mr. Simister sought to inform Walmart of his experiences being targeted by the Fraudulent Sellers and expressed his desire that the Fraudulent Seller StoreFronts and Product Pages be taken down.

(f)      That request was met with significant pushback, and, as demonstrated herein with no effective action by Walmart.

(g)      Mr. Simister also provided a list of Fraudulent Sellers selling his products on Walmart Marketplace, and asked Mr. Cox and Mr. Thrasher to take down the listings on Walmart Marketplace, and to investigate for themselves the ORC Mr. Simister described.

(h)      Mr. Simister did not ask that they just take his word for it, he also provided detailed information (as described herein) about certain of the test purchases he had made from the Fraudulent Seller StoreFronts and Product Pages, along with documentary evidence that his test purchases were part of the ORC and were subject to all of its key components, including the Fraudulent, Deceptive and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, a Fraudulent Amazon Order, a Fraudulent Refund Request and a Fraudulent Product Return.

(i)      On or about July 27, 2023, Mr. Thrasher responded, writing that "we", presumably referring to Walmart, can "immediately terminate[]" sellers violating the law or Walmart's policies, and indicates he has done so in the past.  Yet, several Fraudulent Seller StoreFronts and Product Pages remained active.

(j)      After numerous efforts to receive help from Mr. Thrasher and Mr. Cox and receiving few responses, Mr. Simister attempted to reach out to their superiors about the ORC and its impact on him personally and financially.

558.    On or about July 17, 2023, Mr. Simister initiated contact with Shane Hunter, the Director of Global Investigations at Walmart. Mr. Hunter's responsibilities are publicly identified as overseeing "global investigations of complex matters with significant impact to the company (for example, alleged internal and external fraud, criminal activity, company reputational harm) by receiving allegations from a variety of channels and assigning cases to investigators".

(a)    Mr. Simister informed Mr. Hunter of the ORC and his communications with Mr. Cox and Mr. Thrasher, and told Mr. Hunter that he had "not been able to contact or get a response from them for several weeks."

(b)    On or about August 19, 2023, Mr. Simister again contacted Mr. Hunter, and, among other things, communicated that he was trying to get action and resolution of the ORC occurring on the Walmart Marketplace which was significantly affecting his ability to run his business. He also sought to appeal to the fact of the deception and harm inflicted on the Legitimate Walmart Customers, writing "there is a real problem with the e-commerce portion of Walmart" which is "creating a negative experience for your customers".

559.    On or about September 25, 2023, Mr. Simister initiated contact with Mike Warren, a Global Investigator at Walmart. Mr. Simister described the ORC, provided information about certain of the test purchases he had conducted and the Fraudulent Seller information. He told Mr. Warren that he was "sick and tired of spending hours, every day trying to keep up with [the fraudulent sellers] to protect [himself] and [his] customers because Walmart won't."

560.    As of September 2023, Mr. Simister had provided Walmart with substantial information and details about the ORC and the Fraudulent Sellers.  As demonstrated and alleged

herein, Walmart did not take action that resulted in preventing or stopping the Fraudulent Sellers and ORC.

561.    On or about March 21, 2024, Ms. Rice, of Plaintiff Regency Cosmetics, called Derek Edwards, a Global Investigator at Walmart.

(a)    Ms. Rice provided a thorough explanation of the ORC and provided extensive evidence about the Fraudulent Sellers on Walmart Marketplace and how they were effectuating the ORC, including about the Fraudulent, Deceptive and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, Fraudulent Amazon Orders, and Fraudulent Refund Requests.

(b)    After the initial phone conversation, Ms. Rice emailed Mr. Edwards a file containing screen captures of her legitimate Amazon listings and the corresponding fraudulent Product Pages and the Fraudulent, Deceptive and Anticompetitive Postings and Offers to Sell on Walmart Marketplace.

(c)    Mr. Edwards acknowledged receipt, writing "I received the documents you sent and am currently reviewing this allegation." Ms. Rice has not received any follow-up communication from Mr. Edwards, nor anyone else employed by Walmart.

(d)    As demonstrated and alleged herein, Walmart did not take action that resulted in preventing or stopping the Fraudulent Sellers and ORC.

**B.    The ORC is Ascertainable and Knowable From the Information in Walmart's Possession**

562.    Based on investigation carried out by Plaintiffs with the assistance of their counsel and consultants, the Fraudulent Sellers and Does 6-25 Conspiratorial Defendants are identifiable by Walmart because of the numerous similarities and associations among the Fraudulent Sellers. For example:

- No identifiable historical or current eCommerce or internet presence;

- The use of fake and bogus Brands;

- Seller Catalogs with thousands of unrelated products;

- Seller Catalogs that, within days, grow exponentially the number of products and number of products sold under the bogus Brands;

- Using identical descriptions and pictures that are used by the Amazon Merchants for the Product Pages on Walmart Marketplace;

- Not using Walmart to store and fulfill the orders;

- Same pattern of placing the Fraudulent Amazon Orders;

- Use of similar language and wording for the Fraudulent Return Requests;

- Seller StoreFront aliases that are unrelated to the business name, products, or genre of product;

- Not offering replacement products to the Legitimate Walmart Customer (return is the only option);

- Seller StoreFronts that had thousands of products purportedly for sale immediately shut down;

- Fraudulent Sellers rotating products sold in Seller Catalogs;

- Fulfillment time option of 3+ days for the products (no products that can be supplied in less than 3 days);

- Recycled or fake tracking numbers used in conjunction with a purchase; and

- Tracking information showing origination addresses for products shipped unrelated to the Fraudulent Sellers' business address or return address.

563.    Walmart is obviously capable of monitoring the status of whether its Marketplace merchants have the legal right to sell the goods they list on their storefronts and is failing to do so here. If Walmart was properly monitoring its sellers, it would discover that many do not have access to the documentation required by the Retailer Agreement.

564.    Walmart, the Fraudulent Sellers and Conspiratorial Defendants are also closing their Seller Store Fronts and Product Pages, or appear to exit the Walmart Marketplace, but then

reappear under different brand name.  The most rudimentary effort by Walmart would detect and prevent this fraudulent and regulatory-avoiding conduct.

565.   Walmart also has in its possession tracking numbers and return addresses for the Legitimate Walmart Customers' orders placed with the Fraudulent Sellers.

(a)   Major e-commerce platforms typically have integrated systems with major shipping carriers like FedEx, UPS, DHL, and USPS. This integration allows them to access real-time tracking data directly from the carrier's database when a tracking number is entered. The tracking number usually includes details about the package's origin, which can be identified by the shipping carrier's database. This information often includes the location where the package was first scanned into the carrier's system.

(b)   When a tracking number is entered, the e-commerce site displays tracking updates such as the package's current location, transit history, estimated delivery date, and delivery confirmation. These updates include key events from the origin to the final destination. Walmart has the capability to determine the origin of a product based on tracking number information provided by shipping carriers.

(c)   Yet, Walmart allows its sellers to operate without requiring proof that the products they sell actually originate from the locations they claim to operate from, such as warehouses or specific addresses. Despite nearly every Fraudulent Seller providing a China-based address, they are "shipping" products from various locations across the country.

(d)      Despite having access to this data, Walmart does not take steps to verify that its sellers have a legitimate association with the addresses from which their shipments originate.

(e)      This indicates a lack of oversight and concern for verifying seller authenticity.

(f)      A third-party seller exhibiting these characteristics clearly does not have inventory of the product it purports to sell. Under such a business model, such a seller cannot possibly be profitable without engaging in some form of illicit activity.

566.    In Walmart's possession is information about whether the Fraudulent Seller identified on the Seller StoreFront is a pseudonym or alias, or is the same or different entity from the entity that has submitted information to satisfy the minimum qualifications and executed the Agreement with Walmart, in order to have the Fraudulent Seller's StoreFront, Seller Catalog and Product Pages posted and active on Walmart Marketplace.  Such information is identifiable, for example, from the "Business Tax ID" or "Business License Number" and supporting documentation that Walmart purports to use to qualify the sellers who sell on the Walmart Marketplace."[99]

(a)      If the Fraudulent Seller (or the entity acting on its behalf) has an Employer Identification Number ("EIN") and is incorporated in the U.S., they must provide a W-9 to Walmart.

---

[99]

https://marketplacelearn.walmart.com/guides/Taxes%20&%20payments/Tax%20information/Tax-classifications-and-documentation (last visited 9.9.2024)

(b)      However, if the Fraudulent Seller's (or the entity's acting on its behalf)

country of incorporation is not the United States, the tax classification is either:

- W-8ECI,[100] if they have an EIN. To be eligible to sell on Walmart Marketplace they are required to include a copy of their IRS CP575 or 147c; or,

- W-8BEN-E, [101] if they don't have an EIN. Walmart identifies that it currently supports that tax classification for sellers from China, and well as other non-US countries. [102]

(c)      Also, if the Fraudulent Seller is incorporated in China, they are also

purportedly providing Walmart with:

- Company Permanent Account Number (PAN) Card.

- Goods and Services Tax (GST) Registration Certificate.

- A Utility Bill or Bank Statement for the business.

- A colored copy of their business license, stamped with the company chop (seal).[103]

- A Letter of Authorization, signed by their business's Legal Representative and stamped with the company chop.

- A color copy of the personal ID card of the Business Legal Representative stamped with the company chop, including a phone number.[104]

---

[100]  IRS Form W-8ECI is a Certificate of Foreign Person's Claim That Income Is Effectively Connected with the Conduct of a Trade or Business in the United States, and requires identification, among other things, of the beneficial owner of the business and contact information.

[101]  IRS Form W-8BEN-E is a Certificate of Status of Beneficial Owner for US Tax Withholding and Reporting, and requires identification, among other things, of the beneficial owner of the business and contact information.

[102] https://marketplacelearn.walmart.com/guides/Taxes%20&%20payments/Tax%20information/Tax-classifications-and-documentation  (last visited 9.9.2024)

[103] In China, company chops – sometimes referred to as a seal or stamp – are mandatory for doing business and replace signatures that are used in Western countries. A company seal is the tangible representative and legal evidence of the company's activities abroad. https://www.china-briefing.com/news/company-chops-in-china/  (last accessed 9.9.24)

[104] In contrast, Amazon requires significantly more direct interaction with new third-party sellers. https://sell.amazon.com/sell/registration-guide. (last accessed 9.9.24)  However, prospective Amazon merchants must also provide personal information about the "business's primary contact person", including using a government-issued ID with full legal name, country of citizenship, country of birth, date of birth, residential address, and a phone number. Also, the

(d)     Also, Walmart is required to collect a bank account number, contact information, a tax ID, and a working email and phone number from "high-volume third-party sellers" pursuant to the INFORM Act. 15 U.S.C. §45(f)(3)(A), §45(f)(a)(1)(A). And, Walmart is responsible for verifying the information provided under the Act. *Id.* at §45(f)(a)(2)(A). Further, Walmart is also required to disclose the information collected from sellers with an aggregate total of $20,000 or more in annual gross revenues on its Marketplace. *Id.* at §45(b)(1)(B).

567.    The foregoing information—if utilized by Walmart—would identify the legitimacy or illegitimacy of third-party sellers, and can be used by Walmart to prevent and stop the ORC from operating on Walmart Marketplace, including specifically by identifying the Fraudulent Seller and Does 25-35 Conspiratorial Defendants.

568.    Walmart even purports to collect information from Legitimate Walmart Purchasers on activities that are characteristic of the ORC. Walmart maintains a public website titled "Report Marketplace Seller Activity", in which Walmart identifies one of the hallmarks of the ORC: that an item was sent to a Legitimate Walmart Purchasers by someone who was NOT listed as the Seller on the Seller StoreFront or Product Page:

---

applicant will be prompted to either take a photo of their face and government-issued ID or join a video call with an Amazon associate during which they will have to show their ID and proof of residence. *Id.* The primary contact for the seller must also indicate whether they are a beneficial owner of the business, a legal representative of the business, or both. There are no other options. *Id.*

https://feedbackally.walmart.com/survey/qU4hmxwLm4cMjux (last visited 9.9.2024).

569.    Accordingly, (a) Walmart is aware that customers receiving products from people not listed on the pertinent Walmart seller page is a common enough issue that it is listed as an available option to report suspicious activity; and, (b) from the reports from customers, Walmart can identify Fraudulent Sellers who are posting the Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell, through which the Legitimate Walmart Customers are making purchases, and receiving shipments from the Amazon Merchants pursuant to the Fraudulent Amazon Orders.

### C.    Technological Tools Are Not Being Sufficiently Accessed And Used By Walmart To Address Rampant Fraud

570.    As the operator of the Marketplace, Walmart is in the best and most logical position to be able to respond to the fraud occurring on its platform. Walmart professes to be using generative Artificial Intelligence ("AI") to improve customer experiences including improving the quality of data in its product listings and catalogs.

571.    In an article dated August 16, 2024, published at Digitalcommerce360.com, Walmart CEO McMillon is quoted as follows:

… Walmart Marketplace is an area of opportunity to better use generative AI. Walmart Marketplace is testing an experience among select U.S.-based sellers "that allows them to ask us anything," he said.

"We want our sellers focused on selling, so the more we can make it a seamless experience, the better, McMillon said. "The new assistant will quickly summarize and provide the seller with succinct answers without them having to sort through long articles or other materials."

572.   AI powered tools available are being used in the online industry to identify unauthorized sellers of online merchants' products. This AI technology provides "continuous surveillance of online marketplaces, instantly identifying unauthorized sellers and engaging with them through automated processes."[105]

573.   Given Walmart's access to sophisticated tools designed to detect Fraudulent Sellers, identifying these fraudulent accounts should be a relatively simple task, especially considering Walmart's role as gatekeeper.

574.   These Fraudulent Seller accounts consistently exhibit the same characteristics: a business address based in China, hundreds of product listings under new, unknown, or fake/invalid Brand names, and fluctuating inventory. The purpose of creating such an account is highly likely to be fraudulent. The only plausible explanation for a seller exhibiting these characteristics to be legitimate would be if an entity, likely a manufacturer, created hundreds of new products under a new brand name.

575.   However, it's highly unusual for a new branded line of 100+ products to enter the market all at once. Launching such a large line requires significant research, development, and investment, and is logistically complex and costly. Companies typically introduce a smaller product line first to test the market, build brand recognition, and manage risks. Consumer

---

[105] https://www.grayfalkon.com/navigating-the-challenges-of-third-party-sellers-on-amazon-and-walmart/ (last accessed 9/15/2024).

acceptance of a large product line from an unknown brand is also uncertain, making a phased approach more practical and less risky.

576.   Overall, the likelihood of a brand-new product line of this scale entering the market simultaneously is very low—a fact that Walmart, a global leader in retail goods, should know.

577.   Given the low likelihood of a seller exhibiting these characteristics being legitimate, the appearance of such a seller on the Marketplace strongly suggests fraudulent activity.

578.   Indeed, there are more incredibly obvious red flags that these Fraudulent Sellers exhibit that are consciously disregarded by Walmart. *See, e.g., supra* ¶ 562.

### D.    Fraud on E-Commerce Retail Platforms is Not a New Development

579.   The need to deploy meaningful policies and fraud prevention on its platform and in stores is not a foreign concept to Walmart.  Indeed, Walmart's lack of fraud prevention has frequently come under fire. In 2017, the attorneys general of New York and Pennsylvania investigated Walmart over concerns that it was benefiting from gift card fraud. Walmart promised a year later to restrict the ability of scammers to participate in the fraud but failed to do so until 2022, despite knowing millions of dollars were being laundered through its stores.[106] In 2022, the FTC sued Walmart for allowing its money transfer services to be used by fraudsters, fleecing customers out of hundreds of millions of dollars.[107] The complaint alleged that Walmart had turned a "blind eye" to innocent users of its services while scammers took advantage of the company's failure to secure money transfer services offered at its stores.

---

[106] https://www.propublica.org/article/walmart-financial-services-became-fraud-magnet-gift-cards-money-laundering last accessed 9/9/2024
[107] *See* Federal Trade Commission, *Plaintiff v. Walmart, Inc*. FTC Matter/File Number 182 3012, https://www.ftc.gov/legal-library/browse/cases-proceedings/182-3012-walmart-ftc-v

580.    Further, Walmart's biggest competitor, Amazon, is vocal on the necessary measures for detecting and preventing fraudulent sellers from operating on its platform, and the outcome of such efforts.[108] As the Michigan Attorney General Nessel stated on charging individuals of fraudulent retail crime and operations on Amazon's platform:

> This case involves both massive sums of money and an online retailer familiar to all Michigan consumers"; "**Refund process manipulation, resulting in effectively freely obtained merchandise to be re-sold for a profit, is no less a crime than physical push-out thefts or simple shoplifting**. I appreciate Amazon's cooperation in identifying this scheme and working with us to hold these individuals accountable. The FORCE Team's commitment and abilities in bringing justice to retail fraudsters is equally relentless in both brick-and-mortar and online sales forums."

For its part, Amazon stated:

> "Large-scale refund fraud is a form of organized retail crime (ORC) that Amazon and many retailers have faced for years and results in significant industry-wide losses. Amazon addresses this issue head-on through the development of tools that use machine learning models to proactively detect and prevent fraud, as well as employing specialized teams dedicated to detecting, investigating and stopping fraud," said Kathy Sheehan, Amazon VP of Business Conduct & Ethics. "When bad actors attempt to evade our controls, we take action and work with law enforcement to hold them accountable. Amazon referred this case to the Michigan Department of Attorney General, provided evidence and supported this investigation. We are grateful for the Attorney General's collaboration and believe these charges send a strong message that participating in fraudulent refund schemes has severe consequences."[109]

---

[108] See https://www.aboutamazon.com/news/policy-news-views/amazon-counterfeit-crimes-unit-latest-updates-2024 (last accessed 9.9.24)    (Amazon requires products meet certain vetting requirements before being approved for sale, and monitors seller accounts and behaviors for "new risks"); See also https://www.homepagenews.com/retail-articles/amazon-takes-aim-at-retail-crime-as-lexisnexis-reports-mounting-fraud-costs/  (last accessed 9.9.24)
[109] https://www.michigan.gov/ag/news/press-releases/2024/08/02/canton-residents-charged-with-defrauding-amazon (last visited 9.9.2024)

**12.**     **The Fraudulent Sellers' Conduct Would Not be Financially Sustainable or Viable Absent the Return Fraud Component of the ORC**

581.     The business practices of these sellers, particularly those operating out of China, suggest that they are not merely engaged in legitimate "drop-shipping" but are instead exploiting systemic vulnerabilities and Walmart's corporate greed for fraudulent purposes. The financial structure of their operations, coupled with the inherent risks of such a business model, and Walmart's marketplace policies, strongly indicates that the primary motive is to profit through fraudulent schemes rather than through legitimate sales.

582.     Under the business model of purchasing a good from an Amazon Merchant and having it shipped directly to a Legitimate Walmart Customer, a seller cannot possibly be profitable without marking up the total cost by more than 17.65% of the original purchase price (assuming the good is priced over $10, given that Walmart takes 15% of the sale price).[110] This required markup must account for taxes, fees, and potentially added shipping costs, which would ultimately raise the price above what is listed on Amazon. For example, a product with a 7% sales tax would need to be sold at a 25.89% markup, plus its own tax added on the back end, of the listing price shown on Amazon.

583.     The business model of "drop shipping" goods sold on Amazon is not viable unless the return on investment ("ROI") from each sale is a comparably large percentage.

---

[110] To break even on the resale of an item where a third party takes a 15% cut, a seller must set a selling price that ensures the amount received after the fee matches their original cost. The math works as follows: if the selling price is $X, and 15% of $X is taken as a fee, the seller is left with 85% of $X, or 0.85X. To break even, this amount must equal the initial cost. Solving the equation 0.85X = 1 (where 1 represents the total cost), we find that X must be 1/0.85, which is approximately 1.1765, or a 17.65% increase over the original cost. Thus, to cover the 15% fee and break even, a seller needs to mark up the price by about 17.65%.

584.    For example, if a reseller marks up a good by 20% and a third party takes 15% of the sale price, the reseller's ROI is calculated as follows: After the 20% markup, the selling price is 120% of the original cost. With the third party taking 15% of this selling price, the reseller is left with 85% of 120%, which equals 102% of the original cost. This results in a 2% profit over the initial investment, giving the reseller a 2% ROI on that sale.

585.    If a reseller using this business model manages to generate sales, a single order requiring a refund would necessitate approximately 50 additional sales to recoup the loss incurred from the initial purchase. Furthermore, Walmart does not permit returns to be sent directly to China-based sellers. The seller would have to coordinate with someone in the U.S. to facilitate the return to the legitimate Amazon Merchant, likely incurring additional costs.

586.    Even with a 50% markup, yielding a 27.5% ROI, the reseller would need to sell approximately four units to recoup the cost of a lost or returned product, assuming any sales occur at all at such a high price point.

587.    However, the real incentive lies in obtaining goods without paying for them. A seller making a minimal ROI on most sales can still be profitable if they receive fraudulent refunds on a certain percentage of purchases from the legitimate seller. For instance, on the sale of a $100 good marked up by 20% to $120, instead of making a $2 profit after Walmart's fee, the seller could keep the entire $102 if a fraudulent refund is obtained. Essentially, this creates a significant incentive to supplement, at the very least, some sales with fraudulent returns.

588.    Consider this alongside the fact that Walmart suppresses listings that are priced above the "competitive price," i.e., the price of the same good on other e-commerce platforms. The more egregious the mark up, the less visibility the product will receive. Sellers using this

supposed "drop-shipping" business model would find it nearly impossible to generate sales under such circumstances.

589.    These Fraudulent Sellers are not "drop-shippers." Walmart's own system does not make such a model feasible. Even if it did, the financial incentive to engage in a fraudulent return scheme far outweighs the minimal ROI from legitimate sales, given the high risk of loss.

590.    Again, Walmart's system already tracks "competitive prices," and is therefore aware when a seller is selling at a price point that would result in a negative ROI. Consequently, a Fraudulent Seller that (1) makes a sale on Walmart of a good at or below the competitive price of that good and (2) inputs tracking data indicating the product originated from a location unrelated to that seller, will inevitably lose money on that sale unless they engage in fraud.

591.    The Fraudulent Sellers depend upon all aspects of the ORC and operate it on a scale and in an intentional, calculated manner that serves their dual purposes of (i) ensuring ill-gotten profits from the Fraudulent Refund Requests and Product Returns; and (ii) trying to avoid detection by the Amazon Merchants.

(a)    First, by improperly bulk uploading from the Amazon Merchants' Amazon storefronts, the Fraudulent Sellers post an expanse of unique products onto their Fraudulent Seller StoreFronts on Walmart's Marketplace. Their high volume of Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace allows the Fraudulent Sellers to pick and choose on a rotating basis the products for which they will falsely claim non-delivery and file a Fraudulent Refund Request.  And, by not initiating a Fraudulent Refund Request on every Fraudulent Amazon Order, the Fraudulent Sellers try to avoid detection by the Amazon Merchants while still having ample Fraudulent Amazon Orders for which they will make and follow

through with their Fraudulent Refund Requests. This aspect of the ORC is evident from Plaintiffs' experiences where different Fraudulent Sellers were submitting Fraudulent Refund Requests for the same product proximate in time to each other.

(b)     Second, the wide array of unrelated products in the Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace is intended to and does produce a volume of Fraudulent Amazon Orders and Fraudulent Refund Requests that sustain the ORC even if a Legitimate Walmart Customer returns the product and gets a refund from the Fraudulent Seller. This aspect of the ORC is evident from Plaintiffs' experiences and the Fraudulent Sellers' resale of those returned products after effectuating the Fraudulent Product Returns.

(c)     In sum, the high volume of Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell by the Fraudulent Sellers on Walmart Marketplace, Purchases by Legitimate Walmart Customers, and then the subsequent Fraudulent Amazon Orders sustain the ORC, even if: (i) the Fraudulent Sellers do not initiate a Fraudulent Return Request on every item, or (ii) a Legitimate Walmart Customer returns the product.

**13.     <u>Walmart Has No Immunity For the Claims Asserted</u>**

592.     Walmart is entitled to no statutory immunity for the claims asserted in this Complaint.  Its Marketplace is not a social media site; it is a commercial digital platform created and operated by Walmart for the sole purpose of making a profit by the onboarding of merchants and for extracting a share of revenue generated on every transaction conducted by its merchants on the Marketplace.  Walmart professes that it fully controls the operation of its Marketplace by, among other things, allegedly thoroughly scrutinizing and vetting each merchant applying for approval to appear on the Marketplace and, further, by monitoring merchants' postings for

legitimacy, and possessing and using the power to remove illegal and inappropriate merchants and their content.  Walmart's representations of its allegedly taking such measures are grounded in its recognition that, absent these and related measures, its Marketplace would be a breeding ground for fraudulent conduct and criminal activity.

593.    By virtue of its control of all aspects of its Marketplace, its being a joint venturer and revenue-sharer with its Marketplace merchants, and the powers it has over merchants and merchant storefront content, Walmart is, and has been, as a matter of law:

(a)    A co-publisher of Marketplace merchants' postings and storefront content that are fraudulent, illegitimate or violative of federal criminal law, rendering Walmart accountable and liable for its and the Fraudulent Sellers' misconduct.

(b)    An active participant and co-conspirator in a scheme that has the effect of creating and operating an anticompetitive Marketplace that fosters brand hijacking, criminally-induced underpricing, fraudulent transactions, and causing harm to U.S. small businesses.

(c)    Operating the Marketplace in violation of its common law duty of care to take reasonable steps to not cause or to prevent harm to its customers who, as part of the Fraudulent Sellers' scheme, among other things, have their identities misappropriated and are falsely portrayed as not receiving delivery of, in fact, delivered goods, thereby causing such Marketplace customers to become unwitting pawns in the wrongdoers' criminal conduct.  Moreover, Walmart's common law duty of care extends to preventing its merchants from using its Marketplace as a means of harming another party or the public, including Plaintiffs and members of the Class.  Walmart has breached that common law duty by unreasonably creating an unsafe platform and by unreasonably failing to prevent

201

the Fraudulent Seller Defendants and Does 25-35 Conspiratorial Defendants from harming

the public.

## VII.   CLASS ACTION ALLEGATIONS

594.   Plaintiffs bring this action and seek to certify and maintain it as a class action under

Fed. R. Civ. P. 23, individually and on behalf of the following classes as defined below:

### A.  Nationwide Class

595.   The Nationwide Class is defined as:

> All Amazon Merchants[111] domiciled in the United States who fulfilled an order placed by a Fraudulent Seller that originated on Walmart Marketplace between January 1, 2021 to the present.

### B.  Florida Class

596.   As an alternative or in addition to the Nationwide Class, Plaintiff EZ-Step Mobility,

Inc. also brings this action and seeks to certify and maintain it as a class action under Fed. R. Civ.

P. 23, individually and on behalf of the following class ("Florida Class"):

> All Amazon Merchants domiciled in Florida who fulfilled an order placed by a Fraudulent Seller that originated on Walmart Marketplace, between January 1, 2021 to the present.

### C.  New York Class

597.   As an alternative or in addition to the Nationwide Class, Plaintiff Longstem

Organizers, Inc. also brings this action and seeks to certify and maintain it as a class action under

Fed. R. Civ. P. 23, individually and on behalf of the following class ("New York Class"):

> All Amazon Merchants domiciled in New York who fulfilled an order placed by a Fraudulent Seller that originated on Walmart Marketplace, between January 1, 2021 to the present.

---

[111] *See* ¶ 79(a) for definition of Amazon Merchant.

**D.  North Carolina Class**

598.    As an alternative or in addition to the Nationwide Class, Plaintiff Knight Distributing Co. also brings this action and seeks to certify and maintain it as a class action under Fed. R. Civ. P. 23, individually and on behalf of the following class ("North Carolina Class"):

> All Amazon Merchants domiciled in North Carolina who fulfilled an order placed by a Fraudulent Seller that originated on Walmart Marketplace, between January 1, 2021 to the present.

**E.  Utah Class**

599.    As an alternative or in addition to the Nationwide Class, Plaintiff Artistic Industries, LLC also brings this action and seeks to certify and maintain it as a class action under Fed. R. Civ. P. 23, individually and on behalf of the following subclass ("Utah Class"):

> All Amazon Merchants domiciled in Utah who fulfilled an order placed by a Fraudulent Seller that originated on Walmart Marketplace, between January 1, 2021 to the present.

600.    Excluded from the Classes are: (a) Defendants and any entities in which Defendants have a controlling interest; (b) any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants; (c) all current employees of Defendants; (d) all governmental entities; and (e) anyone who makes a timely election to be excluded from the Class.

601.    Plaintiffs reserve the right to modify or amend the definitions of any proposed Class, and/or to add subclasses (collectively, "the Class" as used herein), if necessary before the Court determine whether certification is appropriate and as the Court may otherwise allow.

602.    This case is properly brought as a class action under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and all requirements therein are met for the reasons set forth herein.

603.    The claims of all Class members derive directly from a single course of conduct by Defendants. Defendants have engaged and continue to engage in uniform and standardized conduct toward the Class members. Defendants do not differentiate, in degree of care or candor, in their actions or inactions, or the content of their statements or omissions, among individual Class members. Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all Amazon Merchants similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

604.    Certification of Plaintiffs' claims are appropriate because they can prove the elements of their claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

605.    **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Each proposed Class consists of thousands of FBM Amazon Merchants and is therefore sufficiently numerous to make joinder impracticable, if not impossible. The precise number of Class members is unknown to Plaintiffs at this time, but the Class Members are readily ascertainable and can be identified in or using Defendants' business records and other information, records of third parties, and/or by Plaintiffs and Class Members themselves.

606.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class.  The claims of Plaintiffs and the Class Members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendants, resulting in the same injury to the Plaintiffs and the respective Class. Plaintiffs and Class Members are similarly affected by Defendants' wrongful conduct and were damaged in the same way as set forth in this Complaint. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other Class Members.

607.   **Commonality and Predominance.** Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting only individual Class members. These common legal and factual questions include, without limitation:

(a)   Whether the Bogus Qualification Process, the Fraudulent, Deceptive, and Anticompetitive Postings and Offer to Sell on Walmart Marketplace, the Fraudulent Amazon Orders, Fraudulent Refund Requests, and the Fraudulent Product Returns, deployed and participated in by Defendants individually and collectively as part of the ORC, constituted unfair, unlawful, false, deceptive, misleading, and/or unconscionable practices and conduct.

(b)   The nature of the relationships between and among Defendants;

(c)   Defendants' role in and the creation and maintenance of the Fraudulent, Deceptive, and Anticompetitive Postings and Offer to Sell on Walmart Marketplace, and in the execution of Fraudulent Amazon Orders, Fraudulent Refund Requests, and the Fraudulent Product Returns;

(d)   Whether Defendant Walmart recklessly or knowingly permitted (and continued to permit) Fraudulent Sellers to become sellers on Walmart Marketplace, and to post Fraudulent, Deceptive, and Anticompetitive Postings and Offer to Sell on Walmart Marketplace, to the enrichment of Defendant Walmart and all Defendants;

(e)   Whether Defendants violated RICO through its role and participation in the ORC;

(f)   Whether Defendant Walmart had knowledge of, or should have had knowledge of, or recklessly disregarded facts that would have made it aware of, the ORC being committed on and through Walmart Marketplace;

(g)   Whether Defendant Walmart exercised reasonably diligence and/or was in a position to minimize or eliminate Fraudulent Sellers from operating the ORC on and through Walmart Marketplace;

(h)     Whether Defendants are engaged in an "enterprise," as that term is used by 18 U.S.C. § 1961(4);

(i)     Whether Defendants committed racketeering predicate acts of mail fraud in violation of in violation of 18 U.S. C. § 1341;

(j)     Whether Defendants committed racketeering predicate acts of wire fraud in violation of in violation of 18 U.S. C. § 1343;

(k)     Whether Defendant Walmart provided false and misleading information about its Seller qualification process;

(l)     Whether the Fraudulent, Deceptive, and Anticompetitive Postings and Offer to Sell on Walmart Marketplace, and on the Seller StoreFronts, Seller Catalogs and Product Pages for the Fraudulent Sellers on Walmart Marketplace contained false and misleading information;

(m)     Whether Defendants otherwise engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices;

(n)     Whether Defendants violated the applicable statutes and common law identified herein;

(o)     Whether Defendants financially benefitted from their conduct;

(p)     Whether Defendants were unjustly enriched by violations of the applicable statutes and common law herein;

(q)     The appropriate nature of class-wide equitable relief;

(r)     The appropriate measurement of restitution and/or measure of damages to Plaintiffs and members of the respective Class;

(s)     The appropriate measure of statutory and common law damages;

(t)     Whether Plaintiffs and the Class are entitled to punitive damages; and,

(u)     Whether Plaintiffs and the Class are entitled to reasonable attorneys' fees and costs.

608.   These and other questions of law or fact which are common to Plaintiffs and Class Members predominate over any questions affecting only individual members of the Class.

609.     **Adequacy.** Plaintiffs are adequate Class representatives because they have retained counsel competent and experienced in complex class action litigation. Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Class.  Plaintiffs are knowledgeable about the subject matter of this action and will assist counsel to vigorously prosecute this litigation.  The interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

610.     **Superiority** A class action is superior to all other available means for the fair and efficient adjudication of this matter. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if members of the Class themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.   CAUSES OF ACTION

### A.  Causes of Action Brought on Behalf of the Nationwide Class

### COUNT I
### Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO")
### 18 U.S.C. § 1962(c)
### (Against All Defendants On Behalf of the Nationwide Class)

611.     Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

612.     This claim is brought by Plaintiffs against all Defendants on behalf of themselves and the Nationwide Class under 18 U.S.C. § 1964, for violations of 18 U.S.C. § 1962(c).

613.     The federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964, provides a private right of action for plaintiffs to recover against defendants who harm them by conducting an enterprise through a pattern of racketeering activity, as well as defendants who conspire to do so.

614.     This claim is brought by Plaintiffs for themselves and for the members of the Nationwide Class against all Defendants for actual damages, treble damages, and equitable relief under 18 U.S.C. § 1964, for violations of 18 U.S.C. § 1962(c).

615.     Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c).

616.     Plaintiffs are each a "person," as that term is defined in 18 U.S.C. § 1961(3), and have standing to sue under 18 U.S.C. § 1964(c) as they were and are injured in their business and/or property "by reason of" RICO violations described herein.

617.     At all relevant times, each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3), because they are capable of holding "a legal or beneficial interest in property."

618.     Each Defendant conducted the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c), as described herein.

1) **Defendants are Engaged in, or Their Activities Affect, Interstate or Foreign Commerce**

619.    Section 1961(4) defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

620.    Defendant Walmart Inc. is a corporation organized and existing under the laws of the state of Delaware, is registered to do business in the state of California, has an office and principal place of business in the state of Arkansas, and conducts business throughout all 50 states of the United States and internationally. Defendant Wal-Mart.com USA, LLC is a California limited liability company. Walmart, Inc. is the ultimate parent company of subsidiary Wal-Mart.com USA, LLC. Defendants Walmart Inc. and Wal-Mart.com USA, LLC are collectively referred to herein as Defendant Walmart.

621.    The following Fraudulent Seller Defendants are identified on Walmart Marketplace seller pages to have business locations in the People's Republic of China, but also conduct business through return addresses associated with 2006 Rodman Rd, Wilmington, Delaware, United States: Defendant TaiYuanHaoTingDianZiShangWuYouXianGongSi (operating the Walmart Seller StoreFront "EasyHousewares"); Defendant Haikoushanqingmengmaomiyouxiangongsi (operating the Walmart Seller StoreFront "Judy OTTO"); Defendant HAIKOUYANBIHONGKEJIYOUXIANGONGSI (operating the Walmart Seller StoreFront "Joyfulmart" or "JoyfulMart"); and Defendant guangzhoucunbeimaoyiyouxiangongsi (operating the Walmart Seller StoreFront "Coey Trading Co. ltd.).

622.    The following Fraudulent Seller Defendants were previously identified on Walmart Marketplace as operators of Walmart Seller StoreFronts and, upon information and belief, have/had business locations in the People's Republic of China, but also conduct business through

209

return addresses associated with 2006 Rodman Rd, Wilmington, Delaware, United States: Defendant Doe 1 (operating the Walmart Seller StoreFront "Pengxichengqikeji."); Defendant Doe 2 (operating the Walmart Seller StoreFront "Guangzhounuoqikemaoyiyouxiangongsi"); and Defendant Doe 3 (operating the Walmart Seller StoreFront "Onenbary").

623. The following Fraudulent Seller Defendants are identified on Walmart Marketplace seller pages to have business locations in the People's Republic of China, but also conduct business through return addresses associated with 11172 Amarillo St, Rancho Cucamonga, California, United States: Defendant GuangZhouXiaJiaMaoYiYouXianGongSi (operating the Walmart Seller StoreFront "Whimsy Whirligig"); Defendant enshizhoujianshishuiyueshangmaoyouxiangongsi (operating the Walmart Seller StoreFront "xiangpiaopiaodedian"); Defendant shenzhenshinongjiayuancanyinyouxiangongsi (operating the Walmart Seller StoreFront "LuckyJiang"); and Defendant Taiyuantupankangwangluokejiyouxiangongsi (operating the Walmart Seller StoreFront "The Tech Loft.").

624. The following Fraudulent Seller Defendant is identified on Walmart Marketplace seller pages to have a business location in the People's Republic of China, but also conducts business through return addresses associated with 3608 Meadowlark St, El Monte, California, United States: Defendant guangzhouxunjiejidianyouxiangongsi (operating the Walmart Seller StoreFront "XUNJIE Jidian Co. Ltd.").

625. The following Fraudulent Seller Defendants were previously identified on Walmart Marketplace as operators of Walmart Seller StoreFronts and, upon information and belief, have/had business locations in China, but also conduct business through return addresses associated with 19919 Talbot Rd, Renton, Washington, United States: Defendant Doe 4 (operating

the Walmart Seller StoreFront "Windy Suk Co. Ltd."); and Defendant Doe 5 (operating the Walmart Seller StoreFront "Chen heng Home Store").

626.    The following Fraudulent Seller Defendants are identified on Walmart Marketplace seller pages to have a business location in the People's Republic of China but, upon information and belief, also conduct business through a United States-based return address that are presently unknown to Plaintiffs but known to Defendant Walmart: Defendant liaochengshengchinanbeidianzishangwuyouxiangongsi (operating the Walmart Seller StoreFront "shengyang Zhou"); Defendant Jinanhengyuanshangmaoxiaoshouyouxiangongsi (operating the Walmart Seller StoreFront "jinanhengyuanshangmao"), and Defendant Doe 6 (operating the Walmart Seller StoreFront "Weilashi").

627.    Does 7-24 are Fraudulent Seller Defendants that, upon information and belief, operate/operated Walmart Seller StoreFronts, Seller Catalogs, and Product Pages on Walmart Marketplace, participating in the ORC as alleged herein, under seller names as yet unknown to Plaintiffs, and have/had business locations in People's Republic of China, but also conduct business through United States-based return addresses.

628.    Does 25-35 are Conspiratorial Defendants that, upon information and belief, associate with, conduct business through and with, and/or have or currently direct, manage, coordinate, and/or organize the operations of the Fraudulent Seller Defendants, participating in the ORC as alleged herein, under names as yet unknown to Plaintiffs, and that have/had business locations in People's Republic of China, but also conduct business through United States-based addresses.

629.    Defendant Walmart, all Fraudulent Seller Defendants and all Conspiratorial Defendants are collectively referred to as Defendants.

630.   Together, Defendants meet the definition of "enterprise" under the RICO Act.

631.   Each of the Defendants controlled the "ORC Enterprise"—that is, they used the Walmart Marketplace seller platform as the vehicle through which an unlawful pattern of racketeering activity was committed. As set forth below, the Defendants controlled the resources and instrumentalities of the Walmart Marketplace and used that control to perpetrate the ORC, including the components of the ORC alleged here, which constitute a number of fraudulent schemes involving the use of mail and wires.

632.   For its part, in approximately 2021, Defendant Walmart devised, directed and engaged in a pattern of conduct whereby it knowingly or recklessly encouraged, and otherwise permitted, a network of third-party Fraudulent Sellers to become sellers on Walmart Marketplace, thereby utilizing Walmart Marketplace to establish and effectuate the ORC Enterprise. Such conduct by Defendant Walmart included employing a Bogus Qualification Process, whereby, as alleged herein, despite representations to the contrary about its Marketplace, Defendant Walmart permitted, and (at minimum) did not discourage or prevent, Fraudulent Seller Defendants from becoming retailers on Walmart Marketplace. Defendant Walmart's conduct was driven by the need to grow its Marketplace and bottom-lines, and to do that it needed to increase the number of sellers and products for sale on Walmart Marketplace. Defendant Walmart, also for its part in the ORC Enterprise, drives Legitimate Walmart Customers to the Walmart Marketplace who unknowingly are thrust into the ORC, make purchases from the Fraudulent Seller Defendants, and have their identities used to effectuate the ORC.

633.   For their part, the Fraudulent Seller Defendants add and provide two essential components to round out the ORC Enterprise. One: the Fraudulent Seller Defendants provide an unlimited supply of sellers, Product Pages, Seller Catalogs, products, and Fraudulent, Deceptive,

and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, by simply hijacking Plaintiffs' and Class Members' listings. Two: the Fraudulent Seller Defendants place the Fraudulent Amazon Order, Fraudulent Refund Claims, and Fraudulent Product Returns.

634.    The foregoing conduct is done over the mail and wires in furtherance of the ORC and its components.

635.    The ORC Enterprise is an enterprise that is engaged in and affects interstate commerce because it purports to sell, has sold, and continues to sell products across the United States, as alleged herein.

### 2)  "Conduct or Participate, Directly or Indirectly, in the Conduct of Such Enterprise's Affairs"

636.    "[T]o conduct or participate, directly or indirectly, in the conduct" of such an enterprise, "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

637.    As described herein, each RICO Defendant participated in the operation or management of the ORC Enterprise, and directed the affairs of the ORC Enterprise through a pattern of racketeering activity, including masterminding schemes to defraud that were carried out by and through Defendants using the mail and wires in furtherance of plans that were designed with specific intent to defraud.

### 3)  Mail and Wire Fraud Predicate Offenses

638.    Defendants knowingly participated in a scheme to exploit Plaintiffs and Class Members by fraudulently inducing them to deliver their goods to Legitimate Walmart Customers, with the promise of full payment, but all the while knowing that they would submit a False Refund Request, thereby resulting in Defendant Walmart getting is referral fee and the Fraudulent Seller

Defendants making out with ill-gotten monies and/or stolen property at the expense of the Plaintiffs and Class Members.

639.    In furtherance of this scheme, Defendants also knowingly caused Plaintiffs' and Class Members' goods to be placed or deposited with, or taken or received from, the post office, authorized depositories for mail, and/or any private or commercial carrier, in order to be sent and delivered to Walmart buyers, in violation of 18 U.S. C. § 1341.

640.    In furtherance of this scheme, Defendants also knowingly cause Legitimate Walmart Customers' returned goods to placed or deposited with, or taken or received from, the post office, authorized depositories for mail, and/or any private or commercial carrier, in order to be sent and delivered to the US-based addresses of the Fraudulent Seller Defendants and Conspiratorial Defendants in violation of 18 U.S. C. § 1341.

641.    In furtherance of this scheme, Defendants transmitted, or cause to be transmitted, by means of wire communication in interstate commerce, writing, signs, signals pictures, and/or sounds, in violation of 18 U.S.C. § 1343 by knowingly, falsely and deceptively communicating with Legitimate Walmart Customers by and through the Walmart Marketplace internet platform using "Contact Seller" messaging including the ability for questions and replies and/or by direct telephone calls.

642.    In furtherance of this scheme, Defendants transmitted, or cause to be transmitted, by means of wire communication in interstate commerce, writing, signs, signals pictures, and/or sounds, in violation of 18 U.S.C. § 1343 by knowingly, falsely and deceptively communicating with Plaintiffs and Class Members by and through the Amazon.com internet platform using a Buyer-Seller Messaging Center including the ability for questions and replies.

643.    As alleged herein, each fraudulent listing and sale encompasses a variety of instances of mail and wire fraud:

        (a)    Defendants commit wire fraud with each of the Fraudulent, Deceptive, and Anticompetitive Postings and Offer to Sell on Walmart Marketplace. This critical product information on each Walmart Marketplace posting is knowingly false. Defendants copied and listed, or allowed to be copied and listed, Plaintiffs' and Class Members' products for purported sale on bogus Walmart Marketplace storefronts knowing that the webpage listings were false Seller StoreFronts with false representations including the Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages;

        (b)    The Fraudulent Seller Defendants and/or Conspiratorial Defendants commit wire fraud with each Fraudulent Amazon Order on Amazon.com with, at the outset, the intent to deceive Plaintiffs and Class Members into delivering goods knowing that any payment made therefor will be falsely reclaimed;

        (c)    The Fraudulent Seller Defendants [and Conspiratorial Defendants?] commit mail fraud with each instance of causing Plaintiffs and Class Members to mail their Amazon.com goods to unsuspecting Legitimate Walmart customers; and

(d)     The Fraudulent Seller Defendants and/or Conspiratorial Defendants commit wire fraud with each Fraudulent Refund Request communicated through Amazon.com; and

(e)     The Fraudulent Seller Defendants and/or Conspiratorial Defendants commit mail fraud with each instance of a Fraudulent Product Return by causing a Legitimate Walmart Customer to mail their returns to the US-based addresses associated with the Fraudulent Seller Defendants and Conspiratorial Defendants, rather than return these goods to Plaintiffs and Class Members.

644.    The specific wirings and placing of goods into the mail in furtherance of the scheme to defraud Plaintiffs and Class Members include, but are not limited to, the following:

(a)     Wire Fraud – Statements That Are Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell: *see* ¶¶ 210, 219, 223, 236, 248, 260, 274, 286, 298-299, 312, 316, 331, 347-48, 378-80, 389-90, 404-05, 425-26, 437, 445-46, 457-58, 470-71, and Schedule 2.

(b)     Wire Fraud – Fraudulent Amazon Orders: *see* ¶¶ 205, 215, 224, 238, 249, 261, 272, 287, 300-01, 317, 332, 351, 358, 364, 372, 381, 391, 406, 427-28, 438, 447, 459, 475, 484, 493, 501, 510, 519, 528, 535.

(c)     Wire Fraud – Statements That Are Fraudulent Refund Requests: *see* ¶¶ 208, 213, 228-30, 232, 241-43, 254-56, 258, 265-66, 279-80, 293-96, 305-10, 314, 322-26, 336-42, 353-54, 360, 366, 368, 373, 396-98, 410-11, 430-32, 441-43, 456, 465, 477-79, 481, 486-88, 490, 495-97,

216

499, 503-05, 507, 512-14, 516, 521-23, 525, 530-32, 537-38, 540, and Schedule 3.

(d) Mail Fraud – Causing Plaintiffs and Class Members to Use Mail/Carrier to Deliver Fraudulently Acquired Goods to Legitimate Walmart Customers: *see* ¶¶ 206-07, 216-17, 225-27, 239-40, 244, 250-52, 253, 262-64, 268, 275-77, 288, 290-92, 302, 304, 313, 318-20, 333-35, 352, 359, 365, 383-85, 392, 393-95, 407-09, 429, 439-40, 448-52, 460-64, 466-68, 476, 485, 494, 502, 511, 520, 529.

(e) Mail Fraud – Causing Legitimate Walmart Customers to Use Mail/Carrier to Deliver Return of Plaintiffs' and Class Members Goods to Fraudulent Sellers: *see* ¶¶ 211-12, 220-21, 231, 245, 257, 269, 278, 328-29, 344-45, 387-88, 400-02, 414-16, 453-55.

645.    Over the course of this scheme, Defendants directly and indirectly committed or aided and abetted the numerous predicate acts of mail and wire fraud in furtherance of their scheme voluntarily and intentionally.

646.    Defendants intended Plaintiffs and Class Members to rely on their implied/express promises, representations and assurances of completed payment in exchange for delivery of goods, and in good faith Plaintiffs and Class Members did rely on them to their detriment. Based thereon, Plaintiffs and Class Members caused to be delivered goods in exchange for money that was never intended to be paid by Defendants.

647.    Defendants knew and could have reasonably foreseen that their promises, representations and assurances of payment would be relied upon by Plaintiffs and Class Members. Yet, Defendants each knew of and participated in numerous acts of mail and wire fraud in order

217

to take goods and money from Plaintiffs and Class Members. It was reasonably foreseeable that interstate mail and wire communications would be used in Defendants' scheme.

### 4) "Pattern of Racketeering Activity"

648.    Defendants did willfully or knowingly conduct or participate in, directly or indirectly, the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

649.    Specifically, Defendants – individually and collectively – have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (i.e., violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years, as described herein.

650.    The multiple acts of racketeering activity that the Defendants committed, or aided or abetted in the commission of, were related to each other, pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity."

651.    Defendants used, directed the use of, and/or caused to be used, hundreds of thousands of interstate mail and wire communications in service of the Enterprise's objectives through common misrepresentations, concealments, and material omissions.

652.    As described above, the Defendants devised and knowingly carried out hundreds of thousands, individual material schemes and/or artifices to defraud Plaintiffs and Class Members by (1) transmitting false and misleading advertisements for the sale of products on Walmart Marketplace that, *inter alia*, fraudulently and deceptively omitted any reference to the actual and lawful owner of the goods; (2) conducting sales on Amazon.com with Plaintiffs and Class Members and inducing them into the sale and delivery of their products with false promises for

payment of delivery of goods; (3) causing Plaintiffs' and Class Members' goods to be transmitted via mail, private or commercial courier; (4) transmitting false claims via wire of non-delivery of the items to intentionally dupe Plaintiffs and Class Members out of their goods and payment therefor.

653.     As described in those detailed factual allegations above, Defendants either directly approved certain fraudulent statements or set in motion schemes to defraud that would reasonably lead to such fraudulent statements being transmitted via the mail and wires. These mail and wire transmissions were made in furtherance of the Defendants' schemes and common course of conduct in order to defraud Plaintiffs and Class Members so that Fraudulent Seller Defendants and/or Conspiratorial Defendants could obtain their merchandise through false promises of payment, and Defendant Walmart would appear to legitimately sell a variety of products in order to obtain fees from these sales and to maintain or increase its ecommerce market share.

654.     Defendants committed these racketeering acts intentionally and knowingly, with the specific intent to defraud and to personally or directly profit from these actions.

655.     Defendants intended Plaintiffs and Class Members to rely on these false transmissions, and this scheme was therefore reasonably calculated to deceive persons of ordinary prudence and comprehension.

656.     Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities cannot be alleged without access to the Defendants' books and records. Plaintiffs have, however, described the types of predicate acts of mail and/or wire fraud, including the specific types of fraudulent statements upon which, through the mail and wires, the Defendants engaged in fraudulent activity in furtherance of their overlapping schemes.

657.    These were not isolated incidents. Instead, Defendants engaged in a pattern of racketeering activity by committing hundreds of thousands of related predicate acts, since 2021, in the form of mail and wire fraud, and there remains a threat that such conduct will continue or recur in the future. Moreover, Plaintiffs expect to uncover even more coordinated, predicate acts of fraud as discovery in this case continues.

**5)  Harm to Plaintiffs**

658.    On information and belief, Defendants have been and will continue to be enriched by their exploitation of Plaintiffs and Class Members, made possible by fraudulently obtained funds and goods, whereby Fraudulent Seller Defendants and/or Conspiratorial Defendants effectively get free product and the value thereof in Fraudulent Refund Requests and Fraudulent Product Returns and Defendant Walmart gets a percentage profit of the deceptive sale made between Fraudulent Seller Defendants and the Legitimate Walmart Customer.

659.    Defendants' unlawful actions directly, illegally, and proximately caused and continue to cause injuries to Plaintiffs' and Class Members' businesses and property. In furtherance of their scheme and through fraudulent acts, Defendants caused Plaintiffs and Class Members to provide goods to which they were not entitled and no bargained-for exchange was made. But for Defendants' knowing misrepresentations, Plaintiffs and Class Members would not have made such sales, and it was reasonably foreseeable to Defendants that their scheme would harm Plaintiffs and Class Members.

660.    Pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), Plaintiffs and Class Members are hereby entitled to recover treble damages they sustained, reasonable attorneys' fees, and costs of litigation, as well as any other relief as authorized by statute.

## COUNT II

**Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO")**
**18 U.S.C. § 1962(d)**
**(Against All Defendants On Behalf of the Nationwide Class)**

661.    Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

662.    This claim is brought by Plaintiffs against all Defendants on behalf of themselves and the Nationwide Class under 18 U.S.C. § 1964, for violations of 18 U.S.C. § 1962(d).

663.    This claim is brought by Plaintiffs for themselves and for the members of the Nationwide Class against all Defendants for actual damages, treble damages, and equitable relief under 18 U.S.C. § 1964, for violations of 18 U.S.C. § 1962(d).

664.    Defendants have undertaken the fraudulent acts described above as part of a common scheme. Defendants willfully, knowingly, and unlawfully conspired, confederated, and agreed together and with others to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). Defendants intentionally concealed their fraudulent conduct, which prevented Plaintiffs and Class Members from discovering their scheme, notwithstanding their exercise of due diligence.

665.    Defendants were aware of and persisted in the illegal activity. Defendant Walmart knew that it was attracting and not discouraging the Fraudulent Seller Defendants to become sellers on Walmart Marketplace. Defendant Walmart deployed the Bogus Qualification Process, and permitted the Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace. Defendant Walmart permitted Fraudulent Seller Defendants to operate on Walmart Marketplace to further the ORC Enterprise, despite the Fraudulent Seller Defendants being a sham, including their inability to meet Walmart's purported seller "qualifications", and their inability to supply the products they listed for sale absent the Fraudulent Amazon Orders and Fraudulent

Refund Requests inflicted on Plaintiffs and Class Members. Defendant Walmart also intended for traffic to be driven to and sales to be made from its Walmart Marketplace by unsuspecting Legitimate Walmart Customers in order to take its referral fee from each sale by the Fraudulent Seller Defendants. Using the personal information of the Legitimate Walmart Customers, secured through the order placed with Fraudulent Seller Defendants on Walmart Marketplace, the Fraudulent Seller Defendants complete the ORC by placing the Fraudulent Amazon Order with Plaintiffs and Class Members, causing  Plaintiffs and Class Members to ship their product to the Legitimate Walmart Customer, only for the Fraudulent Seller Defendants to then make a Fraudulent Refund Request, and in some instances, further make a Fraudulent Product Return. Defendant Walmart knew that its Legitimate Walmart Customers were receiving products from people not listed by or delivered by the sellers of those products on Walmart Marketplace and that it was a common enough issue that "item may have been stolen" or "my item was supplied by someone not listed on the seller page" are available options, *inter alia*, to report suspicious activity. At all relevant times, all Defendants knew of, should have known of, and/or agreed to facilitate the operation of the ORC Enterprise and/or Defendants' scheme.

666.    Defendants collectively directed and caused each other to engage in the racketeering activity alleged herein.

667.    Each Defendant understood that he/she/it was committing numerous RICO predicate acts and participating in a racketeering scheme, evidenced among other things, by his/her/their overt acts and involvement in: repeatedly promulgating false and/or misleading representations via wire transmissions (including email correspondence, website listings, and website sales); by use of the mail (including sending and receiving, or causing to be sent and received, goods based on fraudulently induced sales); receiving payments for, in whole or in part,

based on those fraudulent communications and sales. In addition, Defendant Walmart knew and understood they were facilitating and/or aiding and abetting Fraudulent Seller Defendants' and/or Conspiratorial Defendants' self-dealing and furthering the scheme by helping to conceal, by way of omissions, Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent conduct.

668.    The participation and agreement of each of the Defendants was necessary to the scheme. Defendants knew, or should have known, their predicate acts were part of a pattern of racketeering activity and agreed to the commission of or participation in those acts, either directly or by way of omission, to further the ORC Enterprise through a consistent and continual pattern of racketeering activity. Further evidence of the agreement among Defendants is peculiarly within the knowledge and control of Defendants.

669.    As a direct and proximate result of Defendants' conspiracy and violations of 18 U.S.C. § 1962(d), Plaintiffs and Class Members have been injured in their business and property, as alleged herein, and are entitled to treble damages, attorneys' fees, and costs of suit.

<u>COUNT III</u>
**Violation of the California Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*) (Sales and Marketing Practices)**
<u>**(Against All Defendants On Behalf of the Nationwide Class)**</u>

670.    Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

671.    This claim is brought by Plaintiffs against all Defendants on behalf of themselves and the Nationwide Class. Defendants are named as such in this Count by virtue of their conduct summarized below and herein.

672.    The UCL applies to the members of the Nationwide Class because each Defendant does business in the state of California, and in each of the 50 states, through Walmart Marketplace.

In addition, Defendant Wal-Mart.com USA, LLC, through which Defendant Walmart, Inc. runs and operates the Walmart Marketplace, is a California LLC and its principal place of business is in California.

673.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., proscribes acts of "unfair competition" including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

674.    Defendants are each a "person" under Cal. Bus. & Prof. Code § 17201.

675.    "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Intervest Mortg. Inv. Co. v. Skidmore*, 632 F. Supp. 2d 1005, 1008 (E.D. Cal. 2009) (internal quotations omitted).

676.    Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiffs' and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

677.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiffs' and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through

the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiffs' and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiffs and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiffs and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

678.    Fraudulent Seller Defendants never informed Plaintiffs and Class Members that their sale was related to a separate Legitimate Walmart Marketplace purchase. The Fraudulent Seller Defendants omitted material information to Plaintiffs and Class Members that (a) they were purporting to sell Plaintiffs' and Class Members' products as their own with Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, and (b) they would be lying about the delivery status and making a Fraudulent Refund Request.

679.    Defendants' false and misleading representations and/or omissions were unlawful, unfair, fraudulent, and deceptive, amounting to unfair competition, because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiffs and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiffs' and Class Members' sales on Amazon.com.

680.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was unfair, deceptive, untrue and misleading amounting to unfair competition because they induced Plaintiffs and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiffs and Class Members into believing that they would be paid for the goods Defendants claimed to be purchasing from them in Fraudulent Amazon orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiffs' and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."[112] Knowledge of these facts would have been a substantial factor in Plaintiffs' and Class Members' decisions to engage in sales to Defendants.

681.    Defendants owed consumers, Plaintiffs and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiffs and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiffs and Class Members; and Defendants intended for

---

[112] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

consumers including Plaintiffs and Class Members to rely on the misrepresentations and/or omissions.

682.    As set forth in the allegations concerning each Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiffs reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiffs and Class Members to rely on such misrepresentations and omissions.

683.    As a direct and legal result of its unlawful, unfair, and fraudulent conduct described above, Defendants have been unjustly enriched at Plaintiffs' and Class Members' expense and detriment. Specifically, Defendants have been unjustly enriched by the receipt of referral fees, monies from Legitimate Walmart Customers, and/or receipt of the ill-gotten products.

684.    Defendants' conduct actually and proximately caused damages to Plaintiffs and Class Members. Absent Defendants' conduct, Plaintiffs and Class Members would have behaved differently and would not have sold Defendants any goods. Defendants' misrepresentations and omissions induced Plaintiffs and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

685.    Pursuant to Section 17203, Plaintiffs and Class Members seek an Order of the Court:

> (a)    Compelling Defendants to make restitution to Plaintiffs and Class Members for all funds unlawfully, unfairly, or fraudulently obtained by Defendants as a result of their violations of section 17200 *et seq.*;

(b)    Declaring that Defendants violated the provisions of section 17200 and 17500; and,

(c)    Enjoining and restraining Defendants from the conduct described herein.

686.    Plaintiffs seek—on behalf of themselves and each member of the class—restitution, injunctive relief, and reasonable attorneys' fees, as well as any other relief the Court may deem just or proper.

687.    Defendants' conduct was also unlawful in that it violated the following statutes: Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*.; Cal. Bus. & Prof. Code § 17500 [false advertising]; Cal. Civ. Code § 1750, *et. seq.* [California Consumer Legal Remedies Act]; and the various state laws enumerated below.

<u>**COUNT IV**</u>
**Violation of the California Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq*.)**
<u>**(Against All Defendants On Behalf of the Nationwide Class)**</u>

688.    Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

689.    This claim is brought by Plaintiffs against all Defendants on behalf of themselves and the Nationwide Class. Defendants are named as such in this Count by virtue of their conduct summarized below and herein.

690.    California's Consumer Legal Remedies Act ("CLRA") makes it "unlawful" for any "person" to engage in "unfair methods of competition and unfair or deceptive acts or practices…in a transaction intended to result or that results in the sale…of goods…to any consumer." Cal. Civ. Code § 1770(a). These unlawful acts include, *inter alia*:

228

(1) Passing off goods or services as those of another; (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services. (3) Misrepresenting the affiliation, connection, or association with, or certification by, another. (4) Using deceptive representations or designations of geographic origin in connection with goods or services . . . [and] (9) Advertising goods or services with intent not to sell them as advertised." *Id.*

691.     Defendants are each "persons" under Cal. Civ. Code § 1761.

692.     Defendants engage in "transactions" for "goods" with "consumers" under Cal. Civ. Code § 1761.

693.     The CLRA "is to be liberally construed and applied to promote its underlying purposes, which are to protect consumer against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

694.     Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiffs' and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

695.     Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiffs' and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) the Fraudulent Seller Defendants never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) the Fraudulent Seller Defendants

would place Fraudulent Amazon Orders, purporting to purchase Plaintiffs' and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) the Fraudulent Seller Defendants intended to induce Plaintiffs and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) the Fraudulent Seller Defendants intended to deceive Plaintiffs and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

696.    Fraudulent Seller Defendants never informed Plaintiffs and Class Members that their sale was related to a separate Walmart Marketplace purchase. The Fraudulent Seller Defendants omitted material information to Plaintiffs and Class Members that (a) they were purporting to sell Plaintiffs' and Class Members' products as their own with Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, and (b) they would be lying about the delivery status and making a Fraudulent Refund Request.

697.    Defendants false and misleading representations and/or omissions were unlawful, unfair, fraudulent, and deceptive, amounting to unfair competition, because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants Defendants, and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiffs and Class Members; (c) deceived consumers into believing that they would get

230

good title to goods; and (d) was designed to undermine Plaintiffs' and Class Members' sales on Amazon.com.

698.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was unlawful, unfair, and deceptive, amounting to unfair competition because they induced Plaintiffs and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiffs and Class Members into believing that they would be paid for the goods Defendants claimed to be purchasing from them in Fraudulent Amazon orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiffs' and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."[113] Knowledge of these facts would have been a substantial factor in Plaintiffs' and Class Members' decisions to engage in sales to Defendants.

699.    Defendants owed consumers, Plaintiffs and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiffs and Class Members), who had exclusive and superior

---

[113] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiffs and Class Members; and Defendants intended for consumers including Plaintiffs and Class Members to rely on the misrepresentations and/or omissions.

700.    As set forth in the allegations concerning each Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiffs reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiffs and Class Members to rely on such misrepresentations and omissions.

701.    Defendants' conduct actually and proximately caused damages to Plaintiffs and Class Members. Absent Defendants conduct, Plaintiffs and Class Members would have behaved differently and would not have sold Defendants any goods. Defendants' misrepresentations and omissions induced Plaintiffs and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

702.    Pursuant to Cal. Civ. Code § 1780, Plaintiffs and Class Members seek an Order of the Court for injunctive relief as well as any other relief the Court may deem just or proper.

703.    Concurrently with the filing of this complaint, plaintiffs are filing an affidavit pursuant to Cal. Civ. Code § 1780(d).

## COUNT V
### Violation of the California False Advertising Law
### (Cal. Bus. & Prof. Code § 17500, et seq.)
### (Against All Defendants On Behalf of the Nationwide Class)

704.    Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

705.    This claim is brought by Plaintiffs against all Defendants on behalf of themselves and the Nationwide Class. Defendants are named as such in this Count by virtue of their conduct summarized below and herein.

706.    The FAL applies to the members of the Nationwide Class because each Defendant does business in the state of California, and in each of the 50 states, through Walmart Marketplace. In addition, Defendant Wal-Mart.com USA, LLC, through which Defendant Walmart, Inc. runs and operates the Walmart Marketplace, is a California LLC and its principal place of business is in California.

707.    Cal. Bus. & Prof. Code § 17500 makes it "unlawful for any person, firm, corporation or association":

> . . . with intent directly or indirectly to or to perform services to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or . . . any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, . . . or . . . not to sell that personal property or those services. . . as so advertised.

708.    Cal. Bus. & Prof. Code § 17505 further states that "…no person shall in any other manner misrepresent the character, extent, volume, or type of his business."

709.    Defendants caused to be made or disseminated through California and the United States, through Walmart Marketplace, statements that were untrue or misleading, and which were

233

known, or which by the exercise of reasonable care should have been known to Walmart Defendants and Fraudulent Sellers to be untrue and misleading.

710.    Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiffs' and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

711.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiffs' and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiffs' and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiffs and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiffs and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

712.    Defendants conduct was false and misleading because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants, and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiffs and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) were designed to undermine Plaintiffs' and Class Members' sales on Amazon.com.

713.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was false and misleading because they induced Plaintiffs and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiffs and Class Members into believing that they would be paid for the goods Defendants claimed to be purchasing from them in Fraudulent Amazon orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiffs' and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he

sale of stolen property violates the property rights of rightful owners and is illegal." Knowledge of these facts would have been a substantial factor in Plaintiffs' and Class Members' decisions to engage in sales to Defendants.

714.   Defendants never informed Plaintiffs and Class Members that their purchase was related to a separate Walmart Marketplace purchase. Defendants omitted material information that (a) they were purporting to sell Plaintiffs' and Class Members' products as their own on their phony Walmart Marketplace listings, and (b) they would be lying about the delivery status and claiming a refund.

715.   Defendants owed consumers, Plaintiffs and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiffs and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiffs and Class Members; and Defendants intended for consumers including Plaintiffs and Class Members to rely on the misrepresentations and/or omissions.

716.   As set forth in the allegations concerning each Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiffs reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiffs and Class Members to rely on such misrepresentations and omissions.

717.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated throughout the United States.

718.     Defendants' conduct actually and proximately caused damages to Plaintiffs and Class Members. Absent Defendants' conduct, Plaintiffs and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiffs and Class Members to fulfill the Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

719.     Plaintiffs and Class Member seek an Order of the Court for restitution and injunctive relief, as well as any other relief the Court may deem just or proper.

**COUNT VI**
**Violation of The Lanham Act § 43(a)**
**(15 U.S.C. § 1125(a))**
**(Against All Defendants On Behalf of the Nationwide Class:**

720.     Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

721.     This claim is brought by Plaintiffs against all Defendants on behalf of themselves and the Nationwide Class.

722.     The Lanham Act at 15 U.S.C. § 1125(a) imposes civil liability on:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's

goods, services, or commercial activities[.]

723.   Defendants violated the Lanham Act by using in commerce false designations origin, false or misleading descriptions of fact, and/or false or misleading representations of fact in Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell, Fraudulent Amazon Orders, and Fraudulent Refund Requests, which were likely to, and did, cause confusion and/or mistake and/or did deceive consumers on Walmart Marketplace as to the affiliation, connection, and/or association of such products as truly being Plaintiffs' and Class Members' goods, or as to the origin, sponsorship, or approval of such products.

724.   Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiffs' and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

725.   Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiffs' and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiffs' and Class Members goods, but request delivery to the unsuspecting Legitimate

238

Walmart Customer; (e) intended to induce Plaintiffs and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiffs and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

726.    Defendants false and misleading representations and/or omissions were likely to, and did, cause confusion and/or mistake and/or did deceive consumers because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants, and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiffs and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiffs' and Class Members' sales on Amazon.com.

727.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was false and misleading because they induced Plaintiffs and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiffs and Class Members into believing that they would be paid for the goods Defendants claimed to be purchasing from them in Fraudulent Amazon orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and

sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiffs' and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."[114] Knowledge of these facts would have been a substantial factor in Plaintiffs' and Class Members' decisions to engage in sales to Defendants.

728. Defendants owed consumers, Plaintiffs and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiffs and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiffs and Class Members; and Defendants intended for consumers including Plaintiffs and Class Members to rely on the misrepresentations and/or omissions.

729. As set forth in the allegations concerning each Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiffs reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their

---

[114] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

misrepresentations and/or omissions were false and misleading, and intended for Plaintiffs and Class Members to rely on such misrepresentations and omissions.

730.   Defendants' conduct actually and proximately caused damages to Plaintiffs and Class Members. Absent Defendants' conduct, Plaintiffs and Class Members would have behaved differently and would not have sold Defendants any goods. Defendants' misrepresentations and omissions induced Plaintiffs and Class Members into fulfilling Fraudulent Amazon Orders they would not otherwise have sold and enter into purchase contracts they would not otherwise have entered into. Plaintiffs and Class Members seek all profits, gains, and advantages obtained stemming from this improper conduct.

731.   As a direct and proximate result of Defendants' violations of the false and misleading statements and omissions described herein, Plaintiffs and Class Members have additionally sustained other irreparable injury, including loss of market position, loss of reputation, loss of goodwill, the ability to continue as a going concern, and other damage for which there is no adequate remedy at law.

732.   Plaintiffs and Class Members seek an Order of the Court for equitable relief enjoining Defendant from engaging in the conduct described herein, and other similarly deceptive, anticompetitive, and improper conduct, and mandating the cessation and reversal of all existing false advertising.

733.   Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover the costs of this action. Defendants' conduct was intentional, characterized by an evil motive, and with the design of deceiving the general public to unfairly reap profits at the expense of Plaintiffs and Class Members, entitling Plaintiffs to a statutory multiplier of actual damages, additional damages, and reasonable attorneys' fees and costs, as well as any other relief the Court may deem just or proper.

**B.**   **Causes of Action Brought on Behalf of the State Classes**

**i.**   **Florida**

**COUNT VII**
**Florida Deceptive and Unfair Trade Practices Act**
**(Fla. Stat. Ann. § 501.201,** *et seq.***)**
**(Against All Defendants On Behalf of Plaintiff EZ-Step Mobility, Inc.,**
**and the  Florida Class)**

734.    Plaintiffs incorporate each preceding allegation set forth above as if fully set forth herein.

735.    This claim is brought by Plaintiff EZ-Step Mobility against all Defendants on behalf of itself and the Florida Class.

736.    Pursuant to Fla. Stat. Ann. § 501.204, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

737.    Defendants engage in "trade and commerce" under Fla. Stat. Ann. § 501.203(8).

738.    The purpose of Florida's Deceptive and Unfair Trade Practices Act is, *inter alia*, to "protect the consuming public and legitimate business and enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of trade or commerce… ." Fla. Stat. Ann. § 501.202.

739.    Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

740.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller

StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

741.    Defendants' conduct was deceptive, unfair, and unconscionable because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to and being authorized to sell by Fraudulent Seller Defendants and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that

they would get good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

742.   Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was deceptive, unfair, and unconscionable because they induced Plaintiff and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that they would be paid for the goods Fraudulent Seller Defendants and/or Conspiratorial Defendants claimed to be purchasing from them in Fraudulent Amazon Orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."  Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

743.   Defendants owed consumers, Plaintiff and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material

to reasonable consumers including Plaintiff and Class Members; and Defendants intended for consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

744.   As set forth in the allegations concerning Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiff and Class Members to rely on such misrepresentations and omissions.

745.   Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

746.   Pursuant to Fla. Stat. Ann. § 501.211, Plaintiff and Class Members seek an Order of the Court for actual damages, injunctive relief, attorneys' fees, court costs, as well as any other relief the Court may deem just or proper.

## COUNT VIII
### Violation of the Florida False Advertising Law
### (Fla. Stat. Ann. § 817.06 and §§ 817.41 *et seq.*[115])
### (Against All Defendants On Behalf of Plaintiff EZ-Step Mobility, Inc.,
### and the Florida Class)

747.    Plaintiffs incorporate each preceding allegation set forth above as if fully set forth herein.

748.    This claim is brought by Plaintiff EZ-Step Mobility against all Defendants on behalf of itself and the Florida Class.

749.    Pursuant to Fla. Stat. Ann. § 817.06(1):

No person, persons, association, copartnership or institution shall, with intent to offer or sell or in anywise dispose of merchandise … directly or indirectly, to the public, for sale or distribution or issuance, or with intent to increase the consumption or use thereof, or with intent to induce the public in any manner to enter into any obligation relating thereto, acquire title thereto, or any interest therein, or ownership thereof, knowingly or intentionally make, publish, disseminate, circulate or place before the public, or cause, directly or indirectly, to be made, published, disseminated or circulated or placed before the public in this state in a newspaper or other publication…or in any other way, an advertisement of any sort regarding such…merchandise…, which advertisement contains any assertion, representation or statement which is untrue, deceptive, or misleading.

750.    Pursuant to Fla. Stat. Ann. § 817.41(1):

It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement.  Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

---

[115] *See, also*, Fla. Stat. Ann. § 817.02 that considers obtaining property by false personation criminal larceny as follows: "Whoever falsely personates or represents another person, and in such assumed character: (a) Receives any property intended to be delivered to that person, with intent to convert the same to his or her own use; or (b) … or otherwise causes harm to, the person whose identity has been assumed through the taking of property from any person… ."; Fla. Stat. Ann. § 817.037(1) that makes it a criminal misdemeanor of the second degree, for "[a]ny person who engages in a systematic, ongoing course of conduct to obtain a refund for merchandise from a business establishment by knowingly giving a false or fictitious name or address as his or her own or the name or address of any other person without that person's knowledge and approval."

751.    Defendants sold "merchandise" by way of "misleading advertising" under Fla. Stat. § 817.40(4) and (5).

752.    Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

753.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of or authorization to sell these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

247

754.    Defendants' conduct was deceptive, misleading, and false advertising because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

755.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was deceptive and designed to confuse and/or mislead Plaintiff and Class Members because they induced Plaintiff and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that they would be paid for the goods Fraudulent Seller Defendants and/or Conspiratorial Defendants claimed to be purchasing from them in Fraudulent Amazon Orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial

Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."[116] Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

756.   Defendants owed consumers, Plaintiff and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiff and Class Members; and Defendants intended for consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

757.   As set forth in the allegations concerning Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiff and Class Members to rely on such misrepresentations and omissions.

758.   Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants' conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants'

---

[116] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

759.    Pursuant to Fla. Stat. § 817.41(6), Plaintiff and Class Members seek actual damages, punitive damages, attorney's fees, and any other relief the Court may deem just or proper.

**COUNT IX**
**Common Law Fraud**
**(Against All Defendants On Behalf of Plaintiff EZ-Step Mobility, Inc.**
**and the Florida Class)**

760.    Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

761.    This claim is brought by Plaintiff EZ-Step Mobility against all Defendants on behalf of itself and the Florida Class.

762.    Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

763.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of or authorization to sell these products in order to make a sale to a Legitimate Walmart

250

Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

764.    Defendants' conduct was false and misleading because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

765.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was false and misleading because they induced Plaintiff and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that they would be paid for the goods Fraudulent Seller Defendants and/or Conspiratorial Defendants

claimed to be purchasing from them in Fraudulent Amazon Orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."[117] Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

766.    Defendants owed consumers, Plaintiff and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiff and Class Members; and Defendants intended for consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

767.    As set forth in the allegations concerning Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations

---

[117] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiff and Class Members to rely on such misrepresentations and omissions.

768.   Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

769.   Plaintiff and Class Members seek an Order of the Court for damages in an amount to be proven at trial, as well as any other relief the Court may deem just or proper.

## COUNT X
## UNJUST ENRICHMENT
### (Against All Defendants On Behalf of Plaintiff EZ-Step Mobility, Inc. and the Florida Class)

770.   Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

771.   This claim is brought by Plaintiff EZ-Step Mobility against all Defendants on behalf of itself and the Florida Class.

772.   Plaintiff and the Class Members conferred benefits:

    (a)    on Defendants by delivering goods on behalf of Defendants to Legitimate Walmart Customers; and

    (b)    on Fraudulent Seller Defendants and/or Conspiratorial Defendants by providing them the monetary value of these same goods, or fees from the sale of these goods, due to false claims of non-delivery.

773.    Defendants have been unjustly enriched in retaining the revenues derived from the fraudulent transactions as part of the overall ORC Enterprise victimizing Plaintiff and Class Members. Retention of those monies under these circumstances is unjust and inequitable because: (a) Fraudulent Seller Defendants and/or Conspiratorial Defendants have gotten both the benefit of the bargain of their Fraudulent Amazon Orders with Plaintiff and Class Members and have additionally and falsely received the monetary value of goods and/or the goods themselves by making Fraudulent Refund Requests, and (b) Defendant Walmart has been unjustly enriched in retaining the revenues derived from the Legitimate Walmart Customer orders that serve as the basis for the Fraudulent Amazon Orders between Plaintiff and Class Members and the Fraudulent Seller Defendants. Retention of those monies under these circumstances is unjust and inequitable because Defendant Walmart is making a profit off of a false, misleading and unlawful sales. Collectively, this unjust enrichment caused injuries to Plaintiff and Class Members.

774.    All Defendants knew, or should have known, that Plaintiff and Class Members conferred benefits on each of the Defendants, and that each Defendant accepted or retained those benefits.

775.    By and through Defendants' false, misleading, unfair and deceptive practices, Defendants unjustly received and retained benefits at the expense of Plaintiff and Class Members, specifically the loss of profits, gains, advantages obtained stemming from this improper conduct including loss of market position, loss of reputation, loss of goodwill, and the ability to continue as a going concern.

776.    By and through Defendants' false, misleading, unfair and deceptive practices, Defendants have received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and Class Members.

777.    Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members.

778.    Plaintiff and Class Members have suffered pecuniary harm as a direct and proximate result of Defendants' conduct.

779.    Plaintiff and Class Members have no adequate remedy at law. Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

**ii.    New York**

<u>**COUNT XI**</u>
**Violation of New York General Business Law § 349**
<u>**(Against All Defendants On Behalf of Plaintiff Longstem and the New York Class)**</u>

780.    Plaintiffs reallege and incorporate by reference herein all of the allegations contained in each preceding paragraph as if fully set forth herein.

781.    This claims is brought by Plaintiff Longstem against all Defendants on behalf of itself and the New York Class.

782.    Plaintiff and Defendants are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

783.    N.Y. Gen. Bus. Law § 349(a) proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce… ." N.Y. Gen. Bus. Law § 349(a).

784.    In the course of Defendants' business, trade and commerce, they willfully created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members' products under false

pretenses, failing to disclose and actively concealing, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

785.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, inter alia, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

786.    Defendants' deceptive acts or practices were unlawful, because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted material information including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants, and misrepresenting the

character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) mispresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

787.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was unfair, deceptive, untrue and misleading amounting to unfair competition because they induced Plaintiff and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that they would be paid for the goods Defendants claimed to be purchasing from them in Fraudulent Amazon orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."[118] Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

---

[118] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

788.   Defendants owed consumers, Plaintiff and Class Members a duty to disclose these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Subclass Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiff and Subclass Members; and Defendants intended for consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

789.   Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

790.   Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiff and Class Members seek and Order of the Court for actual damages or $50, whichever is greater, for each violation. Additionally, because Defendants acted willfully or knowingly, Plaintiff and Class Members are entitled to recover three times their actual damages, up to $1,000. Plaintiff and Class Members also seek all available injunctive relief, reasonable attorneys' fees, as well as any other relief the Court may deem just or proper.

## COUNT XII
### Violation of New York General Business Law § 350
### (Against All Defendants On Behalf of Plaintiff Longstem and the New York Class)

791.   Plaintiffs reallege and incorporate by reference herein all of the allegations contained in each preceding paragraph as if fully set forth herein.

792.  This claim is brought by Plaintiff Longstem against all Defendants on behalf of itself and the New York Class.

793.  N.Y. Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce…." N.Y. Gen. Bus. Law § 350.

794.  False advertising includes "advertising, including labeling, of a commodity…if such advertising is misleading in a material respect," taking into account "not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity…to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual." N.Y. Gen. Bus. Law § 350-a.

795.  Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

796.  Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through

the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

797.    Defendants' conduct was false and misleading because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

798.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was false and misleading because they induced Plaintiff and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that they would be paid for the goods Fraudulent Seller Defendants and/or Conspiratorial Defendants claimed to be purchasing from them in Fraudulent Amazon Orders. Reasonable purchasers of

goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."[119] Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

799.    Defendants owed consumers, Plaintiff and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiff and Class Members; and Defendants intended for consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

800.    As set forth in the allegations concerning Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or

---

[119] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

omissions were false and misleading, and intended for Plaintiff and Class Members to rely on such misrepresentations and omissions.

801.    Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

802.    Pursuant to N.Y Gen. Bus. Law § 350-e, Plaintiff and Class Members seek an Order of the Court for actual damages or $500, whichever is greater, for each violation. Additionally, because Defendants acted willfully or knowingly, Plaintiff and Class Members are entitled to recover three times their actual damages, up to $10,000. Plaintiff and Class Members also seek all available injunctive relief and reasonable attorneys' fees, as well as any other relief the Court may deem just or proper.

## COUNT XIII
### Common Law Fraud
### (Against All Defendants On Behalf of Plaintiff Longstem and the New York Class)

803.    Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

804.    This claim is brought by Plaintiff Longstem against all Defendants on behalf of itself and the New York Class.

805.    Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members'

products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

806.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

807.    Defendants' conduct was false and misleading because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants and misrepresenting the character, extent and type

of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

808.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was false and misleading because they induced Plaintiff and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that they would be paid for the goods Fraudulent Seller Defendants and/or Conspiratorial Defendants claimed to be purchasing from them in Fraudulent Amazon Orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."[120] Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

---

[120] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

809.    Defendants owed consumers, Plaintiff and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiff and Class Members; and Defendants intended for consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

810.    As set forth in the allegations concerning Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiff and Class Members to rely on such misrepresentations and omissions.

811.    Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

812.    Plaintiff and Class Members seek and Order of the Court for damages in an amount to be proven at trial, as well as any other relief the Court may deem just or proper.

## COUNT XIV
## UNJUST ENRICHMENT
### (Against All Defendants On Behalf of Plaintiff Lonstem and the New York Class)

813.    Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

814.    This claim is brought by Plaintiff Longstem against all Defendants on behalf of itself and the New York Class.

815.    Plaintiff and the Class Members conferred benefits:

816.    on Defendants by delivering goods on behalf of Defendants to Legitimate Walmart Customers; and

817.    on Fraudulent Seller Defendants and/or Conspiratorial Defendants by providing them the monetary value of these same goods, or fees from the sale of these goods, due to false claims of non-delivery.

818.    Defendants have been unjustly enriched in retaining the revenues derived from the fraudulent transactions as part of the overall Organized Retail Crime Enterprise between them and Plaintiff and Class Members. Retention of those monies under these circumstances is unjust and inequitable because: (a) Fraudulent Seller Defendants and/or Conspiratorial Defendants have gotten both the benefit of the bargain of their Fraudulent Amazon Orders with Plaintiff and Class Members and have additionally and falsely received the monetary value of goods and/or the goods themselves by making Fraudulent Refund Requests, and (b) Defendant Walmart has been unjustly enriched in retaining the revenues derived from the Legitimate Walmart Customer orders that serve as the basis for the Fraudulent Amazon Orders between Plaintiff and Class Members and the Fraudulent Seller Defendants. Retention of those monies under these circumstances is unjust and

inequitable because Defendant Walmart is making a profit off of a false, misleading and unlawful sales. Collectively, this unjust enrichment caused injuries to Plaintiff and Class Members.

819.    All Defendants knew, or should have known, that Plaintiff and Class Members conferred benefits on each of the Defendants, and that each Defendant accepted or retained those benefits.

820.    By and through Defendants' false, misleading, unfair and deceptive practices, Defendants unjustly received and retained benefits at the expense of Plaintiff and Class Members, specifically the loss of profits, gains, advantages obtained stemming from this improper conduct including loss of market position, loss of reputation, loss of goodwill, and the ability to continue as a going concern.

821.    By and through Defendants' false, misleading, unfair and deceptive practices, Defendants have received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and Class Members.

822.    Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members.

823.    Plaintiff and Class Members have suffered pecuniary harm as a direct and proximate result of Defendants' conduct.

824.    Plaintiff and Class Members have no adequate remedy at law.

825.    Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

    **iii.**    **North Carolina**

<u>**COUNT XV**</u>
**Violation of the North Carolina Unfair & Deceptive Trade Practices Act**
**(N.C. Gen. Stat. §§ 75-1.1, *et seq*.)**
<u>**(Against All Defendants On Behalf of Plaintiff Regency Cosmetics**</u>
<u>**and the North Carolina Class)**</u>

826.    Plaintiffs reallege and incorporate by reference herein all of the allegations contained in each preceding paragraph as if fully set forth herein.

827.    This claim is brought by Plaintiff Regency Cosmetics against all Defendants on behalf of itself and the North Carolina Class.

828.    N.C. Gen. Stat. § 75-1.1 makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce… ." N.C. Gen. Stat. § 75-1.1(a).

829.    "'[C]ommerce' includes all business activities… ." N.C. Gen. Stat. § 75-1.1(b).

830.    Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

831.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful

possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

832.    Defendants' conduct was false and misleading because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

833.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was false and misleading because they induced Plaintiff and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that

they would be paid for the goods Fraudulent Seller Defendants and/or Conspiratorial Defendants claimed to be purchasing from them in Fraudulent Amazon Orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."[121] Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

834.   Defendants' conduct, alleged herein, was in and affected commerce since each Defendant does business in each of the 50 states through their purchase and sale business activities on Walmart Marketplace and/or Amazon.com.

835.   Defendants owed consumers, Plaintiff and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiff and Class Members; and Defendants intended for

---

[121] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

836.    As set forth in the allegations concerning Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiff and Class Members to rely on such misrepresentations and omissions.

837.    Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

838.    Pursuant to N.C. Gen. Stat. § 75-16, Plaintiff and Class Members seek an order of the Court for three times damages, injunctive relief, and reasonable attorneys' fees, as well as any other relief the Court may deem just or proper.

**COUNT XVI**
**Common Law Fraud**
**(Against All Defendants On Behalf of Plaintiff Regency Cosmetics**
**and the North Carolina Class)**

839.    Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

840.    This claim is brought by Plaintiff Regency Cosmetics against all Defendants on behalf of itself and the North Carolina Class.

841.    Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

842.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

843.    Defendants' conduct was false and misleading because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of

Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

844.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was false and misleading because they induced Plaintiff and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that they would be paid for the goods Fraudulent Seller Defendants and/or Conspiratorial Defendants claimed to be purchasing from them in Fraudulent Amazon Orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful

owners and is illegal."[122] Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

845.    Defendants owed consumers, Plaintiff and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiff and Class Members; and Defendants intended for consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

846.    As set forth in the allegations concerning Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiff and Class Members to rely on such misrepresentations and omissions.

847.    Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

---

[122] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

848.    Plaintiff and Class Members seek and Order of the Court for damages in an amount to be proven at trial, as well as any other relief the Court may deem just or proper.

**COUNT XVII**
**UNJUST ENRICHMENT**
**(Against All Defendants On Behalf of Plaintiff Regency Cosmetics**
**and the North Carolina Class)**

849.    Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

850.    This claim is brought by Plaintiff Regency Cosmetics against all Defendants on behalf of itself and the North Carolina Class.

851.    Plaintiff and the Class Members conferred benefits:

(a)    on Defendants by delivering goods on behalf of Defendants to Legitimate Walmart Customers; and

(b)    on Fraudulent Seller Defendants and/or Conspiratorial Defendants by providing them the monetary value of these same goods, or fees from the sale of these goods, due to false claims of non-delivery.

852.    Defendants have been unjustly enriched in retaining the revenues derived from the fraudulent transactions as part of the overall Organized Retail Crime Enterprise between them and Plaintiff and Class Members. Retention of those monies under these circumstances is unjust and inequitable because: (a) Fraudulent Seller Defendants and/or Conspiratorial Defendants have gotten both the benefit of the bargain of their Fraudulent Amazon Orders with Plaintiff and Class Members and have additionally and falsely received the monetary value of goods and/or the goods themselves by making Fraudulent Refund Requests, and (b) Defendant Walmart has been unjustly enriched in retaining the revenues derived from the Legitimate Walmart Customer orders that serve as the basis for the Fraudulent Amazon Orders between Plaintiff and Class Members and the

275

Fraudulent Seller Defendants. Retention of those monies under these circumstances is unjust and inequitable because Defendant Walmart is making a profit off of a false, misleading and unlawful sales. Collectively, this unjust enrichment caused injuries to Plaintiff and Class Members.

853.    All Defendants knew, or should have known, that Plaintiff and Class Members conferred benefits on each of the Defendants, and that each Defendant accepted or retained those benefits.

854.    By and through Defendants' false, misleading, unfair and deceptive practices, Defendants unjustly received and retained benefits at the expense of Plaintiff and Class Members, specifically the loss of profits, gains, advantages obtained stemming from this improper conduct including loss of market position, loss of reputation, loss of goodwill, and the ability to continue as a going concern.

855.    By and through Defendants' false, misleading, unfair and deceptive practices, Defendants have received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and Class Members.

856.    Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members.

857.    Plaintiff and Class Members have suffered pecuniary harm as a direct and proximate result of Defendants' conduct.

858.    Plaintiff and Class Members have no adequate remedy at law. Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

iv.     **Utah**

**COUNT XVIII**
**Violation of the Utah Consumer Sales Practices Act**
**(Utah Code Ann. §§ 13-11-1,** *et seq.***)**
**(Against All Defendants On Behalf of Plaintiff Artistic Industries and the Utah Class)**

859.    Plaintiffs incorporate each preceding allegation set forth above as if fully set forth herein.

860.    This claim is brought by Plaintiff Artistic Industries against all Defendants on behalf of itself and the Utah Class.

861.    Utah Code Ann. § 13-11-4 proscribes any "deceptive act or practice by a supplier in connection with a consumer transaction…whether it occurs before, during or after the transaction." Utah Code Ann. § 13-11-4(1).

862.    Plaintiff and Class Members are "persons" under Utah Code Ann. § 13-11-3(5).

863.    Defendants are "persons" and "suppliers" under Utah Code Ann. § 13-11-3(5) and (6).

864.    The purpose of Utah's Consumer Sales Practices Act is, *inter alia*, to "protect consumers from suppliers who commit deceptive and unconscionable sales practices; [and] … to encourage the development of fair consumer sales practices…". Utah Code Ann. § 13-11-2(2).

865.    Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

866.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller

StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

867.    Defendants' conduct was deceptive, unfair, and unconscionable because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that they would get

good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

868.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was deceptive, unfair, and unconscionable because they induced Plaintiff and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that they would be paid for the goods Fraudulent Seller Defendants and/or Conspiratorial Defendants claimed to be purchasing from them in Fraudulent Amazon Orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."  Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

869.    Defendants owed consumers, Plaintiff and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material

to reasonable consumers including Plaintiff and Class Members; and Defendants intended for consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

870.    As set forth in the allegations concerning Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiff and Class Members to rely on such misrepresentations and omissions.

871.    Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

872.    Pursuant to Utah Code Ann. § 13-11-17.5, Plaintiff and Class Members seek an Order of the Court for actual damages as well as restitution, injunctive relief, attorneys' fees, court costs, costs of investigation, as well as any other relief the Court may deem just or proper.

### COUNT XIX
### Violation of the Utah Truth in Advertising Law
### (Utah Code Ann. §§ 13-11a-1, *et seq.*)
### (Against All Defendants On Behalf of Plaintiff Artistic Industries and the Utah Class)

873.    Plaintiffs incorporate each preceding allegation set forth above as if fully set forth herein.

874.    This claim is brought by Plaintiff Artistic Industries against all Defendants on behalf of itself and the Utah Class.

875.   Utah Code Ann. § 13-11(a)-3(1) proscribes:

[d]eceptive trade practices [that] occur when, in the course of a person's business, vocation or occupation that person" (a) passes off goods or services as those of another; (b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another; (d) uses deceptive representations or designations of geographic origin in connection with goods or services; (e) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; … (i) advertises goods or services or the price of goods and services with intent not to sell them as advertised; … (t) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

876.   Plaintiff and Subclass Members are "persons" under Utah Code Ann. § 13-11a-2(7).

877.   Defendants are "persons" and "suppliers" of "goods" that enter into "sales transactions" under Utah Code Ann § 13-11a-2(4), (7), (15) and (17).

878.   The purpose of Utah's Truth In Advertising Law "is to prevent deceptive, misleading, and false advertising practices and forms in Utah." Utah Code Ann. § 13-11a-1.

879.   Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

880.   Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and

delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members' goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

881.    Defendants' conduct was deceptive, misleading, and false advertising because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

882.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was deceptive and designed to confuse and/or mislead Plaintiffs' and Class Members because they

induced Plaintiffs and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that they would be paid for the goods Fraudulent Seller Defendants and/or Conspiratorial Defendants claimed to be purchasing from them in Fraudulent Amazon Orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful owners and is illegal."[123] Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

883.    Defendants owed consumers, Plaintiff and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiff and Class Members; and Defendants intended for

---

[123] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

884.    As set forth in the allegations concerning Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiff and Class Members to rely on such misrepresentations and omissions.

885.    Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

886.    Pursuant to Utah Code Ann. § 13-11a-4, Plaintiff and Class Members seek actual damages or $2,000, whichever is greater, for each violation, and statutory damages, as well as restitution, injunctive relief, attorney's fees, costs, and any other relief the Court may deem just or proper.

## COUNT XX
## Common Law Fraud
## (Against All Defendants On Behalf of Plaintiff Artistic Industries and the Utah Class)

887.    Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

888.    This claim is brought by Plaintiff Artistic Industries against all Defendants on behalf of itself and the Utah Class.

889.    Defendants created and implemented the ORC Enterprise, listing and operating Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace, but fulfilling these sales by placing Fraudulent Amazon Orders of Plaintiff's and Class Members' products under false pretenses, misrepresenting or omitting key facts concerning their ability and/or willingness to pay.

890.    Defendant Walmart allowed Fraudulent Seller Defendants to copy and list Plaintiff's and Class Members' products for purported sale on bogus Walmart Marketplace Seller StoreFronts, Seller Catalogs and Product Pages containing abjectly false information and omitting material information notwithstanding that: (a) these listings were Fraudulent Seller StoreFronts containing false information as to, *inter alia*, actual seller, the Brand Names for the products, and delivery; (b) the Fraudulent Seller Defendants did not have and/or would not obtain lawful possession of these products in order to make a sale to a Legitimate Walmart Customer; (c) never intended to have the goods sold to the Legitimate Walmart Customer be delivered by and through the Fraudulent Seller Defendants; (d) would place Fraudulent Amazon Orders, purporting to purchase Plaintiff's and Class Members' goods, but request delivery to the unsuspecting Legitimate Walmart Customer; (e) intended to induce Plaintiff and Class Members into reasonably relying on Defendants' payment in order to deliver the items where requested; and (e) intended to deceive Plaintiff and Class Members by making a False Refund Request with the untruthful representation of non-delivery of the goods when, in actuality, the Legitimate Walmart Customer did receive his or her product.

891.    Defendants' conduct was false and misleading because they put forth Fraudulent, Deceptive, and Anticompetitive Postings and Offers to Sell on Walmart Marketplace that: (a) misrepresented and omitted key details including false Seller StoreFronts and false information of

Sold By, Fulfilled By, View Seller Information, Brand, Business Name, Business Address, Business Phone, and Shop All Seller Items Pages, thereby deceptively passing off these goods as those belonging to Fraudulent Seller Defendants and misrepresenting the character, extent and type of business Fraudulent Seller Defendants were engaging in; (b) misrepresenting the affiliation, connection and association of these goods in not attributing these goods to Plaintiff and Class Members; (c) deceived consumers into believing that they would get good title to goods; and (d) was designed to undermine Plaintiff's and Class Members' sales on Amazon.com.

892.    Fraudulent Seller Defendants' and/or Conspiratorial Defendants' conduct was false and misleading because they induced Plaintiff and Class Members to sell them their goods with false promise of payment. Fraudulent Seller Defendants and/or Conspiratorial Defendants had the capacity to, were likely to, and did in fact, deceive Plaintiff and Class Members into believing that they would be paid for the goods Fraudulent Seller Defendants and/or Conspiratorial Defendants claimed to be purchasing from them in Fraudulent Amazon Orders. Reasonable purchasers of goods from Walmart Marketplace and reasonable sellers of goods on Amazon.com would have found it material to their purchase and sales decisions that Fraudulent Seller Defendants were setting up sham storefronts on Walmart Marketplace with Plaintiff's and Class Members' products for purported sale when, in fact, Fraudulent Seller Defendants and/or Conspiratorial Defendants did not intend to lawfully acquire possession of these goods. Fraudulent Seller Defendants' and/or Conspiratorial Defendants' fraudulent and deceptive conduct was refund process manipulation, which resulted in, effectively, free merchandise to be kept and/or re-sold for a profit. As stated in Walmart's own policies, "[t]he sale of stolen property violates the property rights of rightful

owners and is illegal."[124] Knowledge of these facts would have been a substantial factor in Plaintiff's and Class Members' decisions to engage in sales to Defendants.

893.    Defendants owed consumers, Plaintiff and Class Members a duty to disclose all of these facts because: they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties, other than Plaintiff and Class Members), who had exclusive and superior knowledge of the facts; Defendants actively concealed these facts; these facts would be material to reasonable consumers including Plaintiff and Class Members; and Defendants intended for consumers including Plaintiff and Class Members to rely on the misrepresentations and/or omissions.

894.    As set forth in the allegations concerning Plaintiff, in making sales to Fraudulent Seller Defendants, Plaintiff reasonably and justifiably relied on the misrepresentations and/or omissions. Reasonable persons would have been expected to have relied on the misrepresentations and/or omissions. Fraudulent Seller Defendants knew that their misrepresentations and/or omissions were false and misleading, and intended for Plaintiff and Class Members to rely on such misrepresentations and omissions.

895.    Defendants' conduct actually and proximately caused damages to Plaintiff and Class Members. Absent Defendants conduct, Plaintiff and Class Members would have behaved differently and would not have fulfilled the Fraudulent Amazon Orders. Defendants' misrepresentations and omissions induced Plaintiff and Class Members into fulfilling Fraudulent Amazon Orders, selling goods they would not otherwise have sold.

---

[124] https://www.walmart.com/help/article/report-marketplace-seller-activity/86786249dc1140cbb2cfc19a3a188967 (last visited Aug. 29, 2024)

896.     Plaintiff and Class Members seek and Order of the Court for damages in an amount to be proven at trial, as well as any other relief the Court may deem just or proper.

## COUNT XXI
## UNJUST ENRICHMENT
### (Against All Defendants On Behalf of Plaintiff Artistic Industries and the Utah Class)

897.     Plaintiffs reallege and incorporate by reference all of the allegations contained in each preceding paragraph as if fully set forth herein.

898.     This claim is brought by Plaintiff Artistic Industries against all Defendants on behalf of itself and the Utah Class.

899.     Plaintiff and the Class Members conferred benefits:

(a)     on Defendants by delivering goods on behalf of Defendants to Legitimate Walmart Customers; and

(b)     on Fraudulent Seller Defendants and/or Conspiratorial Defendants by providing them the monetary value of these same goods, or fees from the sale of these goods, due to false claims of non-delivery.

900.     Defendants have been unjustly enriched in retaining the revenues derived from the fraudulent transactions as part of the overall Organized Retail Crime Enterprise between them and Plaintiff and Class Members. Retention of those monies under these circumstances is unjust and inequitable because: (a) Fraudulent Seller Defendants and/or Conspiratorial Defendants have gotten both the benefit of the bargain of their Fraudulent Amazon Orders with Plaintiff and Class Members and have additionally and falsely received the monetary value of goods and/or the goods themselves by making Fraudulent Refund Requests, and (b) Defendant Walmart has been unjustly enriched in retaining the revenues derived from the Legitimate Walmart Customer orders that serve as the basis for the Fraudulent Amazon Orders between Plaintiff and Class Members and the

Fraudulent Seller Defendants. Retention of those monies under these circumstances is unjust and inequitable because Defendant Walmart is making a profit off of a false, misleading and unlawful sales. Collectively, this unjust enrichment caused injuries to Plaintiff and Class Members.

901.    All Defendants knew, or should have known, that Plaintiff and Class Members conferred benefits on each of the Defendants, and that each Defendant accepted or retained those benefits.

902.    By and through Defendants' false, misleading, unfair and deceptive practices, Defendants unjustly received and retained benefits at the expense of Plaintiff and Class Members, specifically the loss of profits, gains, advantages obtained stemming from this improper conduct including loss of market position, loss of reputation, loss of goodwill, and the ability to continue as a going concern.

903.    By and through Defendants' false, misleading, unfair and deceptive practices, Defendants have received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and Class Members.

904.    Defendants should not be permitted to retain the money belonging to Plaintiff and Class Members.

905.    Plaintiff and Class Members have suffered pecuniary harm as a direct and proximate result of Defendants' conduct.

906.    Plaintiff and Class Members have no adequate remedy at law. Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

# **REQUEST FOR RELIEF**
.

WHEREFORE, Plaintiffs, individually and on behalf of other members of each Class proposed in this Action, respectfully request that the Court enter judgment in Plaintiffs' favor and against all Defendants as follows:

A.  Declaring that this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Class requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel.

B.  Entry of a Declaratory Judgment that declares the misconduct alleged in this Complaint and adduced through discovery a violation of applicable statutory and common law and further orders that Walmart must operate Walmart Marketplace in a manner consistent with all applicable protections to assure that only legitimate merchants be allowed to appear and conduct business transactions thereon.

C.  Ordering injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful, unfair and deceptive business practices as set forth herein, and requiring it to implement systemic controls to prevent the same from continuing to occur;

D.  Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and Class Members as a result of Defendants' unlawful, unfair and deceptive business practices;

E.  Awarding actual damages, compensatory damages, and punitive damages in an amount to be determined at trial;

290

F.   Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiffs and Class Members;

G.   Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

H.   Ordering such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: September 17, 2024

Respectfully submitted,

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**

*By: /s/ Scott M. Tucker*
Robert J. Kriner (Del. Bar No. 2546)
Scott M. Tucker (Del. Bar No. 4925)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
2711 Centerville Rd., Suite 201
Wilmington, DE 19808
Phone: 302-656-2500
Fax:  302-656-9053
smt@chimicles.com

Nicholas E. Chimicles *(pro hac vice forthcoming)*
Kimberly M. Donaldson-Smith *(pro hac vice forthcoming)*
Beena M. McDonald *(pro hac vice forthcoming)*
Mariah Heinzerling *(pro hac vice forthcoming)*
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
*nec@chimicles.com*
*kds@chimicles.com*
*bmm@chimicles.com*
*mh@chimicles.com*

***Counsel for Plaintiffs and the Proposed Class***

291